**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re:<br><br>**FIRST NBC BANK HOLDING COMPANY,**<br><br>Debtor. | Case No. 17-11213 (EWM)<br><br>Section "A"<br><br>Chapter 11 |

**MOTION FOR ENTRY OF ORDER PURSUANT TO**
**BANKRUPTCY RULE 9019(a) APPROVING SETTLEMENT AGREEMENT**

First NBC Bank Holding Company (the "Debtor"), hereby files this motion (the "Motion") for entry of an order, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for approval of the Settlement Agreement (as defined below) resolving the (i) *Order Granting Motion of Federal Deposit Insurance Corporation as Receiver for First NBC Bank for Reconsideration (ECF #106), and Modifying in Part, Vacating in Part the Order (ECF #98) Granting Debtor's* Ex Parte *Motion for Turnover (ECF #91)* (ECF #153) (the "Reconsideration Order"); (ii) *Objection by the Federal Deposit Insurance Corporation as Receiver for First NBC Bank to Debtor's Motion for Turnover of Property of the Estate* (ECF #225) (the "Zurich Turnover Objection"); (iii) *Motion of Federal Deposit Insurance Corporation as Receiver for First NBC Bank for Relief from Stay under 11 U.S.C. § 362(d)(1)* (ECF #226) (the "Stay Relief Motion"); (iv) *Proof of Claim Number 82* (the "FDIC-R Claim"); and, (v) all other matters currently open as between the FDIC-R and the Debtor. In support of this Motion, the Debtor respectfully represents as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory predicates for the relief requested herein are section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), along with Bankruptcy Rule 9019.

**BACKGROUND**

**A. Bankruptcy Case**

3. On April 28, 2017 (the "Bank Closing Date"), the Louisiana Office of Financial Institutions closed the Bank and named the Federal Deposit Insurance Corporation as Receiver for the Bank. On that same date, the FDIC-R accepted the receivership appointment.

4. On May 11, 2017 (the "Petition Date"), the Debtor, the owner of the Bank, commenced this Case No. 17-11213 (EWM) (the "Bankruptcy Case") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this honorable United States Bankruptcy Court for the Eastern District of Louisiana (the "Bankruptcy Court").

5. On May 23, 2017, the Office of the U.S. Trustee appointed an Official Committee of Unsecured Creditors (the "Committee"). Since the appointment, the Committee, through its counsel, has remained active in this Bankruptcy Case.

6. Throughout this case, the Debtor and the FDIC-R have attempted to work cooperatively with one another and others to resolve issues of property ownership, including employee trust funds, insurance proceeds and tax refunds.

**B.       Reconsideration Order**

7.      The Debtor, in its capacity as sponsor of the First NBC Holding Company Deferred Compensation Trust (the "Trust"), and the Trust Department of First NBC Bank, in its capacity as trustee, were party to that certain First NBC Bank Holding Company Deferred Compensation Trust Agreement (the "Trust Agreement"), effective as of June 30, 2012. A true and correct copy of the Trust Agreement was attached as an exhibit to the FDIC-R Claim.

8.      On August 18, 2017, the Debtor filed its *Ex Parte Motion for Turnover of Property of the Estate* (ECF #91) (the "Trust Fund Turnover Motion"), seeking turnover of $593,686.84 held by Whitney Bank (the "Trust Funds"), as successor trustee of the Trust. On August 22, 2017, the Court entered an order granting the Trust Fund Turnover Motion (the "Trust Fund Turnover Order").

9.      On August 29, 2017, the FDIC-R filed the *Motion of Federal Deposit Insurance Corporation as Receiver for First NBC Bank for Reconsideration Pursuant to Bankruptcy Rule 9024 or Modification Pursuant to Bankruptcy Rule 9023 of the Order (ECF #98) Granting Debtor's Ex Parte Motion for Turnover of Property of the Estate (ECF #91)* (ECF #106) (the "Reconsideration Motion").

10.     Following a hearing on September 12, 2017, this Court granted the Reconsideration Motion, memorialized in the Reconsideration Order, which, among other things, directed the Debtor to place the Trust Funds into a segregated, non-estate interest-bearing account in a form acceptable to the FDIC-R, which funds may not be accessed, transferred or withdrawn until their ownership has been determined by and between the Debtor and the FDIC-R or by a final judgment of a court of competent jurisdiction.

11. In accordance with, and subsequent to the entry of, the Reconsideration Order, the Debtor deposited the Trust Funds into an escrow account, number 80336221, at Regions Bank (the "Escrow Account").

**C.     Zurich Turnover Objection**

12. The former directors and officers of both the Debtor *and* of the Bank are insureds under that certain insurance policy, DOP 9311203-04, (the "Zurich Policy") issued by Zurich American Insurance Company ("Zurich"). On August 25, 2017, the FDIC-R made a demand for civil money damages in an amount of at least $250 million on the Bank's former board of directors and four former senior executive officers for gross negligence and breach of fiduciary duty in connection with the business and affairs of the Bank. The FDIC-R subsequently made a demand on Zurich pursuant to the Louisiana Direct Action Statute, La. R.S. Sec. 22:1269.

13. On October 13, 2017, the Debtor filed a Motion for Turnover of Property of the Estate (ECF #183) (the "Zurich Turnover Motion"), seeking recovery of $2,069,359.11 from Zurich American Insurance Company ("Zurich") as reimbursement for certain pre-Petition Date litigation expenses covered under the Zurich Policy ("Reimbursement Claim").

14. On November 7, 2017, the FDIC-R filed the Zurich Turnover Objection, objecting to the Zurich Turnover Motion, and alleging, *inter alia*, that, as claimant under the direct action statute, the FDIC-R is entitled to the preservation of the limits of the Zurich Policy.

15. A hearing on the Zurich Turnover Motion and the Zurich Turnover Objection is currently scheduled for December 15, 2017 at 9:00 a.m.

**D.     Stay Relief Motion**

16. As is common among banks and parent holding companies, prior to the Bank Closure Date and the Petition Date, the Bank and the Debtor filed consolidated federal income tax

returns as members of an affiliated group within the meaning of Section 1504(a) of the Internal Revenue Code. The FDIC-R avers that the procedures for the preparation and filing of tax returns were memorialized in an Amended and Restated Tax Sharing Agreement signed by both entities on or about October 31, 2014 (the "TSA"). A copy of the TSA, referenced by the FDIC-R, was filed with this Court as an exhibit to the FDIC-R Claim.

17. Treasury Regulations authorize the FDIC, as receiver for an insured depository institution, to file a loss year return and request a refund. 26 C.F.R. § 301.6402-7(e)(3).

18. On or about June 22, 2017, the FDIC-R filed a consolidated federal income tax return (the "Return"), an excerpt of which was filed with this Court as an exhibit to the FDIC-R Claim.

19. In relevant part, the Return shows a combined loss of $129,337,216 and tax payments of $2,414,547, including estimated payments made in 2016 and payments carried over from 2015. The Return requests a refund of the entire sum of payments, $2,414,547. As shown in the attachments to the Return, the Bank had a net operating loss of approximately $125 million in 2016. The Debtor also reported a loss of $7 million. The FDIC-R asserts that the anticipated refund (with any other related refund, the "Tax Refunds") is allocable, in its entirety, to the Bank.

20. On November 10, 2017, the FDIC-R filed the Stay Relief Motion, requesting that this Court, pursuant to section 362(d)(1) of the Bankruptcy Code, modify the automatic stay to permit the FDIC-R to file and pursue a declaratory judgment regarding ownership of the Tax Refunds in the United States District Court for the Eastern District of Louisiana.

**E.     The FDIC-R Claim**

21. On November 7, 2017, the FDIC-R filed the FDIC-R Claim, catalogued in the official Bankruptcy Case claims register as claim number 82. The FDIC-R Claim comprises all

105756002\V-2

claims (and, to the extent applicable, all administrative expenses), including: (a) return of amounts owed for conversion of the assets of the First NBC Bank receivership, if and to the extent that the Debtor receives and retains any Tax Refunds derived from the tax payments and losses of the Bank (the "Tax Refund Claim"); (b) reimbursement of $3.45 million transferred by the Bank to the Debtor between November 2016 and January 2017 on account of purported tax benefits (the "Tax Benefit Transfer Claim"); (c) ownership of the Trust Funds (the "Trust Fund Claim"); (d) waste, breach of contract and breach of duty of care in an undetermined amount (the "Corporate Claim"); and, any (e) interest, bankruptcy related legal fees and costs, damages, post-petition amounts and other amounts that may be due and payable (the "Catch-all Claim").

## RELIEF REQUESTED

22. By this Motion, the Debtor seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to Bankruptcy Rule 9019, approving the Settlement Agreement. A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit B**.

## THE SETTLEMENT AGREEMENT

23. After multiple contested matters before this Court and arm's-length negotiations, the Parties have agreed, subject to the Court's approval, to enter into the Settlement Agreement to consensually resolve the Reconsideration Order, the Zurich Turnover Objection, the Stay Relief Motion, the FDIC-R Claim and any other matters currently between the Parties.

24. The following briefly summarizes the Settlement Agreement:[1]

---

[1] This summary is qualified in its entirety by the terms of the Settlement Agreement. To the extent of any inconsistency between this summary and the Settlement Agreement, the terms of the Settlement Agreement will control. All terms not otherwise defined in this paragraph shall be given the meanings ascribed to the Settlement Agreement.

105756002\V-2

- <u>Trust Funds</u>: The Trust Funds shall be split, with 75% of the Trust Funds ($445,263.63) wired to the Debtor's bank account, and 25% of the Trust Funds ($148,421.21) wired to the FDIC-R's bank account, with a corresponding split of the interest accrued since entry of the Reconsideration Order (if any), within five (5) business days of entry of any order granting the Settlement Agreement.

- <u>Zurich Reimbursement Claim</u>: The Reimbursement Claim shall be split, with $1.5 million payable to the Debtor, and the balance remaining in the Zurich Policy. This Agreement resolves the Zurich Turnover Objection.

- <u>Tax Refunds</u>: The Tax Refunds belong, in full, to the FDIC-R. The Debtor waives any and all claims to the Tax Refunds on behalf of itself and its estate, and will take all necessary steps to effectuate the Parties' agreement with respect to the Tax Refunds. This agreement nullifies the relief sought in, and thereby resolves, the Stay Relief Motion.

- <u>FDIC-R Claim</u>: The Tax Benefit Reimbursement Claim shall be allowed in full for all purposes as a general unsecured claim in the principal amount of $3.45 million; and the Catch-all Claim is allowed only with respect to interest on the Tax Benefit Reimbursement Claim, and only to the extent any other general unsecured claims are entitled to interest. (together, the "<u>Allowed FDIC-R Claim</u>"). The Settlement Agreement resolves the Tax Refund Claim and the Trust Fund Claim, and the FDIC-R waives the Corporate Claim. The Allowed FDIC-R Claim shall be entitled to the treatment provided for in any eventual chapter 11 plan filed in this Bankruptcy Case ("<u>Plan</u>") for Allowed General Unsecured Claims.

- <u>Plan Support</u>: The FDIC-R agrees not to oppose any Plan proposed by any party that would prohibit the Debtor from using any Tax Attributes available to the Debtor; provided that such position does not affect the FDIC-R's ability to recover the Tax Refunds or administer its Receivership.

- <u>Releases by the FDIC-R and the Debtor.</u> The FDIC-R and the Debtor each will provide a release and waiver of claims as to the above matters, as set forth in the Settlement Agreement. All other rights are reserved.

**CAUSE EXISTS TO APPROVE THE SETTLEMENT AGREEMENT
PURSUANT TO BANKRUPTCY RULE 9019(a)**

25. Bankruptcy Rule 9019(a) authorizes a court, after notice and a hearing, to approve a compromise or settlement of a controversy, providing, in relevant part, that "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or

settlement." Fed. R. Bankr. P. 9019(a). Settlements and compromises are "a normal part of the process of reorganization." *Matter of Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980) (quoting *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 130 (1939)); *see also Matter of Cajun Elec. Power Co-op., Inc.*, 119 F.3d 349, 354 (5th Cir. 1997). The Fifth Circuit has a "strong policy favoring compromise and settlement of litigation in bankruptcy." *See In re LMCHH PCP LLC*, No. 17-10353, 2017 WL 4408162, at *5 (Bankr. E.D. La. Oct. 2, 2017) (citing In re Tex. Extrusion Corp., 844 F.2d 1142 (5th Cir. 1988); *see also Matter of Triple E Transp., Inc.*, 169 B.R. 368, 374 (E.D. La. 1994).

26. Pursuant to Bankruptcy Rule 9019, bankruptcy courts can approve a compromise or settlement if it is "'fair and equitable' and 'in the best interest of the estate.'" *Jackson Brewing*, 624 F.2d at 602 (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)); *see also Cajun Elec.*, 119 F.3d at 355. "In deciding whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well-informed decision, 'compar[ing] the terms of the compromise with the likely rewards of litigation.'" *Cajun Elec.*, 119 F.3d at 356 (quoting *Jackson Brewing*, 624 F.2d at 602). The following factors are generally considered in determining whether to approve a settlement:

> (1) [T]he probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise. These "other" factors—the so-called Foster Mortgage factors—include: (i) "the best interests of the creditors, 'with proper deference to their reasonable views'"; and (ii) "'the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.'"

*In re Age Ref., Inc.*, 801 F.3d 530, 540 (5th Cir. 2015) (citing *Jackson Brewing*, 624 F.2d at 602; quoting *Cajun Elec.*, 119 F.3d at 356). While a judge must "apprise himself of the relevant facts and law so that he can make an informed and intelligent decision," there is no requirement for the

court to conduct a "mini-trial" of the claims being settled or a full independent investigation. *See Cajun Elec.*, 119 F.3d at 356 (quoting *La Salle Nat'l Bank v. Holland (In re Am. Reserve Corp.)*, 841 F.2d 159, 163 (7th Cir.1987)).

### A. Probability of Success in Litigation

While the Debtor believes it would likely prevail if the Zurich Turnover Objection and Trust Funds dispute proceeded to trial, given the challenges surrounding reconstruction of historical accounting and other business records and the numerous objections lodged by the FDIC-R, the Debtor believes that the expense and delay anticipated for such trials compared to the amounts to be received by the estate through settlement do not warrant ongoing litigation.

### B. Complexity and Likely Duration of the Litigation and Any Attendant Expense, Inconvenience and Delay

Litigation of the disputes with the FDIC-R are expected to be lengthy and drawn out over significant time given the complex nature of the factual and legal issues involved in the Tax Refund and Tax Attribute matters. Considering the inherent uncertainty of litigation, the expected litigations costs involved in bringing these matters to trial, and the tax-related interests proposed for each Party, the proposed Settlement Agreement resulted from the exercise of sound business judgment and is in the best interests of the Debtor and its estate and creditors.

### C. The Settlement is in the Best Interests of Creditors and is the Product of Arm's-Length Negotiations

The Settlement is in the best interests of the creditors of the estate of the Debtor. If a reasonable settlement is not promptly achieved, assets of the estate will necessarily be diluted by costs associated with continued litigation. Moreover, the Settlement provides not only a source of immediate funds to the estate, but also removes certain potential hurdles the Debtor may have otherwise been faced with in the development of a chapter 11 plan. Absent this Settlement,

creditors will likely receive a reduced distribution. Given the probability that assets of the estate will be negatively impacted by litigation between the Parties and the contrary impact that would be achieved through the Settlement, the terms of the Settlement serve the best interest of the Debtor's creditors. Finally, the Settlement Agreement was negotiated at arms' length by counsel for each party to the Settlement.

## CONCLUSION

The Settlement Agreement readily satisfies the standards for approval. Absent settlement, lengthy and costly litigation would be required to resolve issues regarding the ownership of the Trust Funds, Zurich Reimbursement Claim and Tax Refunds, as well as the remainder of the FDIC-R Claim. Given the current posture of the pending matters involving the Debtor and the FDIC-R, the Parties determined that it was mutually beneficial to enter into the Settlement Agreement to avoid the substantial cost, delay and uncertainty of further litigation. The Debtor, in consultation with its counsel, has carefully and comprehensively analyzed the FDIC-R Claim and the other matters between the Parties before this Court. This settlement allows the Debtor to resolve material issues of contention against the estate, without undue litigation and delay. The Debtor has agreed to the Settlement Agreement, and granted its consent to the filing of this Motion, believing it is in the best interest of the estate and creditors to resolve the issues with the FDIC-R as set forth in the Settlement Agreement. Accordingly, the Settlement Agreement should be approved under Rule 9019(a) as a valid exercise of the Debtor's reasonable business judgment and as being in the best interests of the estate and all parties in interest.

## NOTICE

27. Notice of this Motion will be given to all creditors and parties in interest in this chapter 11 proceeding.

105756002\V-2

WHEREFORE, the Debtor respectfully requests that this Court: (a) enter the Proposed Order granting the relief requested herein; and (b) grant such other and further relief as this Court may deem proper and just.

Respectfully submitted by:

/s/ Barbara B. Parsons
WILLIAM E. STEFFES (#12426)
BARBARA B. PARSONS (#28714)
**STEFFES, VINGIELLO & McKENZIE, L.L.C**.
13702 Coursey Boulevard, Bldg. 3
Baton Rouge, Louisiana 70817
Telephone: (225) 751-1751
Fax: (225) 751-1998
Email: bparsons@steffeslaw.com

*Counsel for Debtor*

105756002\V-2

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE:

| | |
|---|---|
| **FIRST NBC BANK HOLDING COMPANY** | **CASE NO. 17-11213** |
| | **SECTION A** |
| **DEBTOR** | **CHAPTER 11** |

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing *Motion for Entry of Order Pursuant to Bankruptcy Rule 9019 Approving Settlement Agreement With FDIC-R* has been served via Email through this Court's CM/ECF Electronic Notification System to the following parties:

Sam J. Alberts on behalf of Interested Party Federal Deposit Insurance Corporation (FDIC) as Receiver for First NBC Bank sam.alberts@dentons.com

Serajul Ferdows Ali on behalf of United States of America/Treasury serajul.ali@usdoj.gov

A. Brooke Watford Altazan on behalf of Creditor Committee Official Unsecured Creditors' Committee baltazan@stewartrobbins.com

Brian M. Ballay on behalf of Interested Party Directors and Former Directors Group bballay@bakerdonelson.com

Jerry A. Beatmann on behalf of Interested Party Federal Deposit Insurance Corporation (FDIC) as Receiver for First NBC Bank jay.beatmann@dentons.com

Nicholas H. Berg on behalf of Interested Party Lawrence Blake Jones nberg@reasonoverllc.com

Christopher T. Caplinger on behalf of Creditor Lead Plaintiffs in Securities Class Action ccaplinger@lawla.com

Robin B. Cheatham on behalf of Florida Parishes Bank cheathamrb@arlaw.com

Leo D. Congeni on behalf of Doug Smith, derivatively and on behalf of First NBC Bank Holding Company leo@congenilawfirm.com

Nancy Scott Degan on behalf of Interested Party Directors and Former Directors Group ndegan@bakerdonelson.com

Jonathan Edwards on behalf of Interested Party Marsha Crowle Jonathan.Edwards@alston.com

Elizabeth J. Futrell on behalf of Creditor David W. Anderson efutrell@joneswalker.com

Amanda Burnette George on behalf of U.S. Trustee Office of the U.S. Trustee amanda.b.george@usdoj.gov

Aaron Benjamin Greenbaum on behalf of Mary Beth Verdigets aaron.greenbaum@pbgglaw.com

105756002\V-2

Jan Marie Hayden on behalf of Interested Party Directors and Former Directors Group jhayden@bakerdonelson.com

John M. Landis on behalf of Creditor Gregory St. Angelo jlandis@stonepigman.com

Alysson Leigh Mills on behalf of Ryan J. Ashton amills@fishmanhaygood.com

Ryan James Richmond on behalf of Official Unsecured Creditors' Committee rrichmond@stewartrobbins.com

Lacey E Rochester on behalf of Interested Party Directors and Former Directors Group lrochester@bakerdonelson.com

David Rubin on behalf of Other Prof. Interested Party drubin@kswb.com

Susan R. Sherrill-Beard on behalf of U.S. Securities and Exchange Commission sherrill-beards@sec.gov

Paul Douglas Stewart, Jr. on behalf of Official Unsecured Creditors' Committee dstewart@stewartrobbins.com

Office of the U.S. Trustee USTPRegion05.NR.ECF@usdoj.gov

R. Patrick Vance on behalf of Creditor David W. Anderson pvance@joneswalker.com

I hereby further certify that a copy of the motion has been served upon the Debtor, the Office of the US Trustee, members of and counsel for the Unsecured Creditors' Committee; and, all parties requesting notice, as shown on the attached mailing list, by depositing same in the US Mail, postage prepaid and properly addressed.

Baton Rouge, Louisiana, this 30th day of November, 2017.

/s/ Ashley D. Kujawa
Ashley D. Kujawa