**Exhibit B**

# SETTLEMENT AGREEMENT

This settlement agreement (this "Settlement Agreement") is made and entered into as of this __th day of November, 2017, by and between the Federal Deposit Insurance Corporation, solely in its capacity as receiver ("FDIC-R") for First NBC Bank (the "Bank"), and First NBC Bank Holding Company (the "Debtor"). For purposes of this Settlement Agreement, the FDIC-R and the Debtor are referred to as the "Parties."

## PURPOSE

The purpose of this Settlement Agreement is to resolve several issues in dispute between the Parties, and to allocate certain funds in the manner and for the consideration set forth herein.

## EFFECTIVE DATE

This Settlement Agreement will become effective upon entry of a Final Order approving this Settlement Agreement and all of its terms (the "Effective Date"). "Final Order" means an order or judgment of the Bankruptcy Court (or any other court or adjudicative body of competent jurisdiction) entered on the docket of such court (1) which has not been timely appealed and is not the subject of a timely motion for a new trial, reargument or rehearing and (2), even if a timely appeal has been taken, is not subject to a stay pending appeal.

## RECITALS

**WHEREAS** the Debtor owns 100% of the equity interest in the Bank;

**WHEREAS**, on April 28, 2017 (the "Bank Closing Date"), the Louisiana Office of Financial Institutions closed the Bank and named the FDIC-R as Receiver for the Bank, which appointment the FDIC-R accepted;

**WHEREAS**, on May 11, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Louisiana

105834389\V-1

(the "Bankruptcy Court"), thereby commencing Case No. 17-11213 (EWM) (the "Bankruptcy Case");

WHEREAS, throughout the Bankruptcy Case, the Debtor has sought to obtain and utilize Trust Funds (as defined below) and a Reimbursement Claim (as defined below), which the FDIC-R has contested and claimed a competing interest, and conversely, the FDIC-R has asserted ownership of Tax Refunds (as defined below) which the Debtor has contested;

### THE TRUST FUND RESOLUTION

WHEREAS the Debtor, in its capacity as sponsor of the First NBC Holding Company Deferred Compensation Trust (the "Trust"), and the Trust Department of First NBC Bank, in its capacity as trustee, were party to that certain First NBC Bank Holding Company Deferred Compensation Trust Agreement, effective as of June 30, 2012;

WHEREAS, on August 18, 2017, the Debtor filed its *Ex Parte Motion for Turnover of Property of the Estate* (ECF #91), seeking turnover of $593,684.84 held at Whitney Bank in the Trust account (the "Trust Funds");

WHEREAS, on August 22, 2017, the Court entered the *Order Granting Debtor's* Ex Parte *Motion for Turnover of Property of the Estate* (ECF #98);

WHEREAS, on August 29, 2017, the FDIC-R filed the *Motion of Federal Deposit Insurance Corporation as Receiver for First NBC Bank for Reconsideration Pursuant to Bankruptcy Rule 9024 or Modification Pursuant to Bankruptcy Rule 9023 of the Order (ECF #98) Granting Debtor's* Ex Parte *Motion for Turnover of Property of the Estate (ECF #91)* (ECF #106);

WHEREAS, on September 15, the Bankruptcy Court entered the *Order Granting Motion of Federal Deposit Insurance Corporation as Receiver for First NBC Bank for Reconsideration*

*(ECF #106), and Modifying in Part, Vacating in Part the Order (ECF #98) Granting Debtor's* Ex Parte *Motion for Turnover (ECF #91)* (ECF #153) (the "Reconsideration Order");

**WHEREAS**, pursuant to the Reconsideration Order, the Debtor deposited the Trust Funds into an escrow account, number 80336221, at Regions Bank (the "Escrow Account");

**WHEREAS** the Debtor and the FDIC-R have determined to settle and compromise their issues regarding ownership of the Trust Funds by agreeing that the Debtor shall take 75% of the Trust Funds and the FDIC-R shall take 25% of the Trust Funds;

## THE INSURANCE DEFENSE COST REIMBURSEMENT RESOLUTION

**WHEREAS** the former directors and officers of both the Debtor and of the Bank are insureds under that certain insurance policy, DOP 9311203-04, (the "Zurich Policy") issued by Zurich American Insurance Company ("Zurich");

**WHEREAS**, on August 25, 2017, the FDIC-R made a demand for civil money damages in an amount of at least $250 million on the Bank's former board of directors and four former senior executive officers for gross negligence and breach of fiduciary duty in connection with the business and affairs of the Bank;

**WHEREAS** the FDIC-R subsequently made a demand on Zurich pursuant to the Louisiana Direct Action Statute, La. R.S. Sec. 22:1269;

**WHEREAS**, on October 13, 2017, the Debtor filed a *Motion for Turnover of Property of the Estate* (ECF #183), seeking recovery of $2,069,359.11 of the insurance policy limits (the "Reimbursement Claim") from Zurich as reimbursement for certain pre-Petition Date litigation expenses allegedly covered under the Zurich Policy;

3

**WHEREAS**, on November 7, 2017, the FDIC-R filed the *Objection by the Federal Deposit Insurance Corporation as Receiver for First NBC Bank to Debtor's Motion for Turnover of Property of the Estate* (ECF #225) (the "Zurich Turnover Objection");

**WHEREAS**, the Debtor and the FDIC-R have determined to settle and compromise their issues regarding the Reimbursement Claim by agreeing that the Debtor shall take $1,500,000.00 in full satisfaction and compromise of the Insurance Defense Cost Reimbursement (the "Debtor Settled Reimbursement Claim"), and the Debtor's, on behalf of itself and its estate, waives any right to or claim in the remaining balance of the Reimbursement Claim which currently totals approximately $569,359.11 (the "Non-Debtor Reimbursement Claim Portion"). The Non-Debtor Reimbursement Claim Portion will remain with Zurich and is subject to demand by the FDIC-R and other non-Debtor claimants;

**THE TAX REFUNDS RESOLUTION**

**WHEREAS**, prior to the Bank Closure Date and the Petition Date, the Bank and the Debtor filed consolidated federal income tax returns as members of an affiliated group within the meaning of Section 1504(a) of the Internal Revenue Code;

**WHEREAS** the Parties are party to that certain Amended and Restated Tax Sharing Agreement executed on or about October 31, 2014;

**WHEREAS**, on or about June 22, 2017, the FDIC-R filed a consolidated federal income tax return for the year ending December 31, 2016, which (a) shows a combined loss of $129,337,216 and tax payments of $2,414,547, including estimated payments made in 2016 and payments carried over from 2015, and (b) requests a refund of the entire sum of payments,

4

105834389\V-1

$2,414,547 (with any other related refund, including any refund derived from amendments to prior tax returns, the "Tax Refunds");

**WHEREAS**, on November 10, 2017, the FDIC-R filed the *Motion of Federal Deposit Insurance Corporation as Receiver for First NBC Bank for Relief from Stay under 11 U.S.C. § 362(d)(1)* (ECF #226) (the "Stay Relief Motion"), requesting that the Bankruptcy Court, pursuant to section 362(d)(1) of the Bankruptcy Code, modify the automatic stay to permit the FDIC-R to file and pursue a declaratory judgment regarding ownership of the Tax Refunds in the United States District Court for the Eastern District of Louisiana;

**WHEREAS** the Debtor and the FDIC-R have determined to settle their issues regarding ownership of the Tax Refunds by agreeing that the Tax Refunds are solely the property of the FDIC-R;

**WHEREAS**, the Debtor and the FDIC-R have further determined to settle between them that the FDIC-R will not oppose any plan proposed by any party that preserves the Debtor's access to tax attributes, including tax credit carryforwards and net operating loss carryforwards ("Tax Attributes"), on the basis of such plan's proposed preservation of access to Tax Attributes, provided, however, that nothing herein shall be deemed to be an assignment of or an agreement to assign tax credits owned by the FDIC-R, the Bank, or any subsidiary of the Bank or to limit the FDIC-R's discretion to utilize Tax Attributes or other tax assets attributed to the Bank in such amounts as may be determined to be necessary in order to offset income or to seek additional refunds of tax payments made by the Bank;

**THE FDIC-R CLAIM RESOLUTION**

**WHEREAS**, on November 7, 2017, the FDIC-R filed a proof of claim (the "FDIC-R Claim"), catalogued in the official Bankruptcy Case claims register as claim number 82, in an undetermined amount, asserting priority under section 507(a)(2) of the Bankruptcy Code, comprising all claims (and, to the extent applicable, all administrative expenses), including: (a) return of amounts owed for conversion of the assets of the First NBC Bank receivership, if and to the extent that the Debtor receives and retains any Tax Refunds derived from the tax payments and losses of the Bank (the "Tax Refund Claim"); (b) reimbursement of $3,450,000 transferred by the Bank to the Debtor between November 2016 and January 2017 on account of purported tax benefits (the "Tax Benefit Reimbursement Claim"); (c) ownership of the Trust Funds (the "Trust Fund Claim"); (d) waste, breach of contract and breach of duty of care in an undetermined amount (the "Corporate Claim"); and any (e) interest, bankruptcy related legal fees and costs, damages, post-petition amounts and other amounts that may be due and payable (the "Catch-all Claim");

**WHEREAS** the Debtor and the FDIC-R have determined to settle and compromise the FDIC-R Claim by allowing the Tax Benefit Reimbursement Claim in full, as a general, unsecured claim, resolving the Tax Refund Claim and Trust Fund Claim as set forth in this Settlement Agreement, and waiving the remainder of the claim.

**THE PARTIES' INTEREST IN SETTLEMENT**

**WHEREAS** the Debtor has concluded that the settlement and terms set forth herein are in the best interests of the Debtor, its estate and its creditors, considering, among other things, the cost, delay and uncertainty associated with pursuing litigation with the FDIC-R;

WHEREAS the FDIC-R has concluded that the settlement and terms set forth herein are in its best interests, considering, among other things, the cost, delay and uncertainty associated with pursuing litigation against the Debtor; and

WHEREAS the Parties to this Settlement Agreement desire to memorialize their agreement through this writing;

NOW, THEREFORE, in consideration of the premises, the mutual releases, obligations and undertakings set forth hereunder, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned parties hereby agree as follows:

1. **Incorporation of Recitals**. The foregoing terms, definition and recitals are material parts of this Settlement Agreement.

2. **Ownership and Distribution of Trust Funds**. The Debtor is deemed to own and is entitled to receive 75% of the Trust Funds, which equals $445,263.63 before interest if any (the "Debtor's Trust Fund Portion") and the FDIC-R is deemed to own and is entitled to receive 25% of the Trust Funds, which equals $148,421.21 before interest if any (the "FDIC-R's Trust Fund Portion"). The Parties will request that the Bankruptcy Court enter an order that authorizes and directs payment of the Debtor's Trust Fund Portion to the Debtor's estate, and the FDIC-R's Trust Fund Portion to the FDIC-R, with a corresponding 75/25 split of any interest accrued in the Escrow Account, within five (5) business days of the Effective Date to the following respective accounts of the Parties:

*To the Debtor:*

BANK: Regions Bank
ROUTING #: 062005690
ACCOUNT#: 0080335284
REFERENCE: First NBC Bank Holding Company Debtor-in-Possession (the "Debtor Payment Account")

*To the FDIC-R:*

BANK:  Federal Home Loan Bank of New York
ROUTING #:  026-009-739
FOR CREDIT TO:  FDIC National Receivership Account
ACCOUNT #:  1076010
REFERENCE: First NBC Bank – In Receivership, FIN 10526
(the "<u>FDIC-R Payment Account</u>")

This paragraph resolves the Reconsideration Order.

3. **<u>Partial Distribution and Partial Waiver of Zurich Limits</u>**.  The Debtor is deemed to own and is entitled to receive the Debtor Settled Reimbursement Claim.  The Parties will request that the Bankruptcy Court enter an order authorizing Zurich to wire the Debtor Settled Insurance Defense Cost to the Debtor at the Debtor Payment Account within five (5) business days of the Effective Date.  The Non-Debtor Reimbursement Claim Portion and all remaining Zurich limits will remain with Zurich for usage unrelated to the Debtor's Settled Reimbursement Claim.  The Debtor waives and hereby releases any right to any further Zurich limits attributable to the Reimbursement Claim beyond the one-time $1,500,000.00 Debtor's Settled Reimbursement Claim distribution.  This paragraph resolves the Zurich Turnover Objection.

4. **<u>Tax Refunds Belong to the FDIC-R</u>**.  The FDIC-R owns and is entitled to receive the Tax Refunds.  The Debtor will take all steps necessary in furtherance of the Parties' agreement on the Tax Refunds, including providing assistance with any necessary filings, and making any necessary communications with taxing authorities.  Should the Tax Refunds be distributed to the Debtor, the Debtor will wire such funds to the FDIC-R at the FDIC-R Payment Account, within ten (10) days of receipt.  The Debtor waives any and all claims to the Tax Refunds on behalf of itself, any of its representatives and successors in interest and the estate.  The Debtor will cooperate with the FDIC-R in any dispute with respect to the Tax Refunds.  This paragraph resolves the Stay Relief Motion.

5. **Allowed Tax Benefit Reimbursement Claim**. The Tax Benefit Reimbursement Claim will be allowed in full for all purposes as a general unsecured claim in the principal amount of $3,450,000. The Catch-all Claim is allowed only with respect to interest on the Tax Benefit Reimbursement Claim, and only to the extent any other general unsecured claims are entitled to interest (together with the Tax Benefit Reimbursement Claim, the "Allowed FDIC-R Claim"). The FDIC-R agrees that it has no other claims against the Debtor for any liabilities arising before the commencement of the Bankruptcy Case that are not addressed in this Settlement Agreement. The FDIC-R further agrees that, as of the date of this Settlement Agreement, it has no claims, entitled to priority under 11 U.S.C. §507, against the Debtor that are not addressed in this Settlement Agreement.

6. **Tax Attributes Usage**. The FDIC-R will not oppose or otherwise hinder and will cooperate, including responding to reasonable discovery requests concerning Tax Attributes, with the Debtor or any other party proposing a Chapter 11 Plan in the potential allocation to the estate and preservation of any Tax Attributes available under previously filed tax returns or future tax returns; provided that such allocation does not interfere with the FDIC-R's ability to recover the Tax Refunds, or any loss carry-back to recover additional tax refunds. The Debtor will not oppose or otherwise hinder the FDIC-R's use of the Tax Refunds, or any loss carry-back to recover additional tax refunds by using or permitting usage of any Tax Attributes.

7. **Duty to Cooperate**. The Parties hereto expressly agree to execute such other documents in a timely manner and to take such other timely action as may be reasonably necessary to further the purpose of this Agreement.

8. **Release by the FDIC-R**. Other than the Allowed FDIC-R Claim and the rights retained by or granted to and the obligations owed to the FDIC-R as set forth in the paragraphs

9

105834389\V-1

above, the FDIC-R hereby releases, acquits, and forever discharges the Debtor, the estate and their past or present attorneys, directors, employees, officers, principals, and agents, solely in their capacity as representatives of the Debtor (collectively, the "Debtor Releasees") from all claims, demands, indebtedness, agreements, promises, causes of action, obligations, damages, or liabilities of any nature whatsoever, in law or in equity, whether or not known, suspected or claimed, that the FDIC-R ever had, has claimed to have, now has, or may hereafter have or claim to have against the Debtor Releasees solely related to the Debtor's Trust Fund Portion, the Debtor's Settled Reimbursement Claim and any portion of the FDIC-R Claim that does not constitute the Allowed FDIC-R Claim (the "FDIC-R's Released Claims"). The FDIC-R further covenants and agrees never to institute or cause to be instituted any suit or other form of action or proceeding of any kind or nature whatsoever against the Debtor Releasees based upon the FDIC-R's Released Claims.

9. **Release by Debtor:** Other than the rights retained by or granted to and the obligations owed to the Debtor as set forth in the paragraphs above, the Debtor hereby releases, acquits, and forever discharges the Federal Deposit Insurance Corporation, the Bank and their past or present attorneys, directors, employees, officers, principals, and agents (collectively, the "FDIC Releasees") from any and all claims, demands, indebtedness, agreements, promises, causes of action, obligations, damages, or liabilities of any nature whatsoever, in law or in equity, whether or not known, suspected or claimed, that the Debtor ever had, has claimed to have, now has, or may hereafter have or claim to have against the FDIC Releasees solely related to the FDIC-R's Trust Fund Portion, the Reimbursement Claim, , and the Tax Refunds (the "Debtor's Released Claims" and, together with the FDIC-R's Released Claims, the "Released Claims"). The Debtor further covenants and agrees never to institute or cause to be instituted any suit or other form of

10

105834389\V-1

action or proceeding of any kind or nature whatsoever against the FDIC Releasees based upon the Debtor's Released Claims.

10. **Reservation of Rights**. All other rights and claims other than the Released Claims, including any rights to any (a) insurance proceeds other than the Reimbursement Claim or (b) funds other than the Trust Funds, Tax Refunds and Tax Benefit Reimbursement Claim, are reserved. For the avoidance of doubt, the Parties further reserve their rights to object to any future loss payments, including defense fees, under the Zurich Policy.

11. **Attorneys' Fees and Expenses**. The Debtor and the FDIC-R shall each bear their respective costs, expenses and attorneys' fees incurred in connection with the settlement negotiations and implementation of this Settlement Agreement. However, if any action is commenced by any party hereto to enforce the provisions of this Settlement Agreement, the prevailing party shall be entitled to an award, in addition to any other claims or damages, of its costs and expenses including attorneys' fees, in connection with said action.

12. **Execution**. This Settlement Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original, but all of which together will constitute one and the same agreement. This Settlement Agreement may be executed and delivered by facsimile or other electronic transmission, the parties hereto intending that facsimile or other electronic signatures shall constitute original signatures.

13. **Binding Effect**. The Debtor and the FDIC-R, and their undersigned representatives, have the authority to bind their respective estates to the agreements set forth herein. Whenever in this Settlement Agreement any party is named or referred to, the heirs, executors, legal representatives, successors, successors-in-title and assigns of such parties shall be included, and all covenants and agreements contained in this Settlement Agreement shall bind and

11

105834389\V-1

inure to the benefit of their respective heirs, executors, legal representatives, successors, successors-in-title and assigns, regardless of whether so expressed.

14. **Construction of Agreement**. The Debtor and the FDIC-R, and each of them, acknowledge: (i) that each of them has participated in the negotiation of this Settlement Agreement and that no provision of this Settlement Agreement shall be construed against or interpreted to the disadvantage of any party hereto by any court or other governmental or judicial authority by reason of such party's having, or being deemed to have, structured, dictated or drafted such provision; (ii) that each of them has at all times had access to an attorney in the negotiation of the terms of and in the preparation and execution of this Settlement Agreement, and that each of them has had the opportunity to review and analyze this Settlement Agreement for a sufficient period of time prior to the execution and delivery of this Settlement Agreement; (iii) that no representations or warranties have been made by any party hereto or relied upon by any party hereto pertaining to this settlement, other than those that are expressly set forth in this Settlement Agreement, and that all prior statements, representations and warranties, if any, are totally superseded and merged into this Settlement Agreement, which Settlement Agreement represents the final and sole unambiguous agreement of the Parties with respect to the settlement which is the subject hereof; and (iv) that all of the terms of this Settlement Agreement were negotiated at arms' length, and

that this Settlement Agreement was prepared and executed without fraud, duress, mistake, undue influence or coercion of either kind exerted by any of the Parties upon the other.

15. **Headings**. The headings of the articles, paragraphs and subparagraphs of this Settlement Agreement are for the convenience of reference only, are not to be considered a part hereof, and shall not limit or otherwise affect any of the terms hereof.

16. **No Admissions**. This Settlement Agreement has been negotiated and entered into as a settlement and compromise of claims, which shall inure to the benefit of both Parties but shall not constitute or be construed as an admission by either Party of the validity, invalidity or extent of any such claims, or a waiver or admission of either Party as to any other matter. Evidence of this settlement, including negotiations, shall not be admissible in any proceeding for any purpose whatsoever.

17. **Modifications**. The terms of this Settlement Agreement may not be changed, waived, discharged or terminated orally, but only by an instrument or instruments in writing, signed by the Party against which enforcement of the change, waiver, discharge or termination is asserted.

18. **Jurisdiction and Venue**. The Bankruptcy Court shall retain exclusive jurisdiction and venue (and the Parties consent to such retention of jurisdiction and waive any objections to venue) over the Debtor, its estate and the FDIC-R with respect to the interpretation and implementation and the subject matter of this Settlement Agreement.

**IN WITNESS WHEREOF**, the Debtor, on behalf of itself and its estate, and the FDIC-R, on behalf of itself and its estate, have either executed this Settlement Agreement or caused their respective authorized representatives to execute this Settlement Agreement on their behalf as of the date first set forth above.

105834389\V-1

**FIRST NBC BANK HOLDING COMPANY**

_____
By: [William E. Steffes / Barbara B. Parsons]
STEFFES, VINGIELLO, MCKENZIE, LLC
13702 Coursey Boulevard Building 3
Baton Rouge, LA 70817
Telephone: (225) 751-1751
Facsimile: (225) 751-1998
Email: bparsons@steffeslaw.com

**THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR FIRST NBC BANK**

_____
Alex Greenberg
Post-Closing Asset Manager
Federal Deposit Insurance Corporation
1601 Bryan Street
Dallas, TX 75201
Telephone: (972) 761-8548
Email: agreenberg@fdic.gov