# EXHIBIT A

## <u>THE PLAN</u>

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FIRST NBC BANK HOLDING COMPANY | ) | Case No. 17-11213 |
| | ) | |
| Debtor | ) | |
| | ) | |

## CHAPTER 11 PLAN OF REORGANIZATION
## FOR FIRST NBC BANK HOLDING COMPANY

Dated:  March 14, 2018

**STEFFES VINGIELLO & McKENZIE, LLC**
William E. Steffes, Esq.
bsteffes@steffeslaw.com
Barbara B. Parsons
bparsons@steffeslaw.com
13702 Coursey Blvd., Bldg. 3
Baton Rouge, Louisiana 70817
(225) 751-1751
(225) 751-1998  Facsimile
*Counsel to the Debtor*

# TABLE OF CONTENTS

**Page**

INTRODUCTION.............................................................................................................1
**ARTICLE I. <u>DEFINITIONS; RULES FOR INTERPRETATION</u>**........................................ 3

   1.1    Definitions.................................................................................... 3

   1.2    Rules for Interpretation.................................................................. 11

   1.3    Computation of Time.................................................................... 11

   1.4    Appendices and Plan Documents..................................................... 11

**ARTICLE II. <u>TREATMENT OF ADMINISTRATIVE,  PRIORITY TAX, AND UNCLASSIFIED CLAIMS</u>**........................................................................................ 12

   2.1    Treatment of Administrative Expense Claims....................................... 12

   2.2    Treatment of Quarterly Fees. ......................................................... 13

   2.3    Treatment of Priority Tax Claims. ................................................... 13

**ARTICLE III. <u>CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS</u>**.............. 144

   3.1    General. .................................................................................. 14

   3.2    Classification of Claims and Equity Interests ...................................... 14

   3.3    Treatment of Claims and Equity Interests in the Debtor. ......................... 14

**ARTICLE IV. <u>IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND EQUITY INTERESTS</u>** ................................................................................... 15

   4.1    Unimpaired Classes of Claims and Equity Interests................................ 15

   4.2    Impaired Classes of Claims and Equity Interests. ................................. 15

   4.3    Impairment Controversies.............................................................. 15

**ARTICLE V. <u>ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS</u>**166

   5.1    Classes Entitled to Vote. ............................................................. 166

   5.2    Acceptance by an Impaired Class of Claims. ...................................... 16

   5.3    Confirmability and Severability of this Plan. ...................................... 16

**ARTICLE VI. <u>MEANS FOR IMPLEMENTATION OF THE PLAN</u>**............................. 177

   6.1    Exit Facility............................................................................. 177

   6.2    Corporate Action....................................................................... 177

   6.3    Preservation of Causes of Action..................................................... 17

   6.4    Establishment of the Litigation and Distribution Trust and Appointment of the Litigation and Distribution Trustee............................................... 20

   6.5    Revesting of the Tort Claims and Insurance Policies ............................. 20

   6.6    Sources of Cash for Plan Distributions. ............................................ 20

6.7     Cancellation of Instruments. ........................................................................ 20

6.8     Continued Corporate Existence and Vesting of Assets of the Reorganized Debtor…..20

6.9     Dissolution of the Committee. .................................................................... 21

**ARTICLE VII. <u>THE LITIGATION AND DISTRIBUTION TRUST</u>**.............. 21

7.1     Establishment of Litigation and Distribution Trust. .................................... 21

7.2     Execution of the Litigation and Distribution Trust Agreement. ................ 222

7.3     Litigation and Distribution Trust Assets....................................................... 22

7.4     Governance of Litigation and Distribution Trust.......................................... 22

7.5     Litigation and Distribution Trustee.............................................................. 233

7.6     Oversight Committee. ................................................................................. 25

7.7     Indemnification. ......................................................................................... 26

7.8     LT Reserves. .............................................................................................. 277

7.9     Discharge of Litigation and Distribution Trustee and Dissolution............. 27

7.10    Taxes. ......................................................................................................... 27

**ARTICLE VIII. <u>INJUNCTIONS, EXCULPATION AND LIMITATIONS ON</u>**

**<u>LIABILITY</u>** ..................................................................................................... 299

8.1     Term of Bankruptcy Injunction or Stays. .................................................. 299

8.2     Discharge……………………………………………………………..……………30

8.3     Injunction. .................................................................................................. 30

8.4     Exculpation. ............................................................................................... 30

8.5     Limitation on Liability of Litigation and Distribution Trustee................... 311

8.6     D&O Claims and D&O Policies...……………………………………………..31

**ARTICLE IX. <u>PLAN DISTRIBUTION PROVISIONS</u>**................................. 31

9.1     Plan Distributions........................................................................................ 31

9.2     Timing of Plan Distributions. ..................................................................... 31

9.3     Delivery of Plan Distributions and Undeliverable or Unclaimed Distributions. ........ 322

9.4     Plan Distributions Subjec to Withholding and Reporting Requirements. ................... 32

9.5     Manner of Payment Under the Plan.............................................................. 33

9.6     Minimum Distributions................................................................................ 33

9.7     Rounding..................................................................................................... 33

9.8     Settlement of Claims and Controversies……………………………………………33

9.9     Setoffs and Recoupments............................................................................ 34

9.10    Claims Paid or Payable by Third Parties………………………………...…34

**ARTICLE X. <u>PROCEDURES FOR RESOLVING AND TREATING CONTESTED</u>**

**<u>CLAIMS</u>**.......................................................................................................... 355

10.1 Claim Objection Deadline.................................................................................. 355

10.2 Prosecution of Contested Claims. ..................................................................... 355

10.3 Claims Settlement. ............................................................................................. 35

10.4 Entitlement to Plan Distributions upon Allowance. ......................................... 35

10.5 Estimation of Claims......................................................................................... 35

**ARTICLE XI. <u>CONDITIONS PRECEDENT TO  CONFIRMATION OF THE PLAN AND THE OCCURRENCE OF THE EFFECTIVE DATE</u>** ................................................ 366

11.1 Conditions Precedent to Confirmation............................................................. 366

11.2 Conditions Precedent to the Occurrence of the Effective Date. ...................... 36

11.3 Waiver of Conditions......................................................................................... 377

11.4 Effect of Non-Occurrence of the Effective Date. ............................................ 37

**ARTICLE XII. <u>TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>** .............................................................................................................. 37

12.1 Assumption and Rejection of Executory Contracts and Unexpired Leases. ............... 37

12.2 Claims Arising from Rejection, Expiration or Termination. ..................................... 388

**ARTICLE XIII. <u>RETENTION OF JURISDICTION</u>** ............................................................ 38

**ARTICLE XIV. <u>MISCELLANEOUS PROVISIONS</u>** .............................................................. 40

14.1 Satisfaction of Claims. ...................................................................................... 40

14.2 Special Provisions Regarding Insurance Policies and Insured Claims. ......................... 40

14.3 Third Party Agreements; Subordination. .......................................................... 41

14.4 Service of Documents. ....................................................................................... 41

14.5 Headings. ........................................................................................................... 41

14.6 Governing Law. ................................................................................................. 422

14.7 Exemption from Transfer Taxes. ....................................................................... 422

14.8 Notice of Entry of Confirmation Order and Relevant Dates. ......................... 42

14.9 Interest and Attorneys' Fees. ............................................................................ 42

14.10 Modification of the Plan. ................................................................................... 42

14.11 Revocation of Plan............................................................................................. 433

14.12 Compliance with Tax Requirements.................................................................. 43

14.13 Binding Effect.................................................................................................... 43

14.14 Rates................................................................................................................... 43

14.15 Extensions of Time. ........................................................................................... 43

14.16 No Admissions................................................................................................... 444

## INTRODUCTION

First NBC Bank Holding Company (the "Plan Proponent") hereby proposes the following chapter 11 plan of reorganization for the resolution of all outstanding Claims against and Equity Interests in all of the Debtor in this Chapter 11 Case.

Reference is made to the Disclosure Statement for a discussion of the Debtor's history, business, properties and operations, risk factors, a summary and analysis of this Plan, and certain related matters. Subject to certain restrictions and requirements set forth herein, including, without limitation, Sections 14.11 and 14.12 of this Plan, and in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Proponent reserves the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation in accordance with the terms hereof, the Confirmation Order, and the Bankruptcy Code.

**TRANSMITTED WITH THIS PLAN IS A COPY OF THE DISCLOSURE STATEMENT REQUIRED BY SECTION 1125 OF THE BANKRUPTCY CODE (TOGETHER WITH ITS EXHIBITS, AND AS AMENDED FROM TIME TO TIME, THE "DISCLOSURE STATEMENT") THE PLAN PROPONENT URGES ALL CLAIMANTS AND OTHER PARTIES IN INTEREST TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY. NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND ANY DOCUMENTS, SCHEDULES, EXHIBITS OR LETTERS ATTACHED THERETO OR REFERENCED THEREIN HAVE BEEN AUTHORIZED BY THE PLAN PROPONENT OR THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THIS PLAN IS 5:00 P.M., CENTRAL TIME, _____, 2018 UNLESS EXTENDED BY ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF LOUISIANA.**

**THE PLAN PROPONENT BELIEVES THAT THIS PLAN WILL ENABLE THE LITIGATION AND DISTRIBUTION TRUST TO RECEIVE AND EFFICIENTLY LIQUIDATE CERTAIN ASSETS OF THE DEBTOR AS WELL AS THE GUARANTEED CASH PAYMENT AMOUNT FOR THE BENEFIT OF ITS CREDITORS WHILE PRESERVING ITS EQUITY INTERESTS AND THE DEBTOR ITSELF AS AN ONGOING VIABLE BUSINESS ENTITY AS THE REORGANIZED DEBTOR, THEREBY ACCOMPLISHING THE OBJECTIVES OF CHAPTER 11. ADDITIONALLY, THE PLAN PROPONENT BELIEVES THE PLAN PRESENTS THE MOST ADVANTAGEOUS OUTCOME FOR ALL THE DEBTOR'S CREDITORS AND EQUITY INTERESTS AND THAT, THEREFORE, CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF THE ESTATE. THE PLAN PROPONENT RECOMMENDS THAT CREDITORS VOTE TO ACCEPT THE PLAN.**

**BY ORDER DATED _____, 2018, THE BANKRUPTCY COURT APPROVED THE DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION TO PERMIT THE HOLDERS OF CLAIMS AGAINST THE DEBTOR TO MAKE REASONABLY INFORMED DECISIONS IN EXERCISING THEIR RIGHT**

1

TO VOTE ON THE PLAN. APPROVAL OF THE DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT, HOWEVER, DOES NOT CONSTITUTE A DETERMINATION ON THE MERITS OF THIS PLAN.

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT OR THIS PLAN EXCEPT AS EXPRESSLY INDICATED THEREIN. THE DISCLOSURE STATEMENT AND PLAN WERE COMPILED FROM INFORMATION OBTAINED BY THE PLAN PROPONENT FROM NUMEROUS SOURCES AND ARE BELIEVED TO BE ACCURATE TO THE BEST OF ITS KNOWLEDGE, INFORMATION AND BELIEF. HOLDERS OF CLAIMS AND EQUITY INTERESTS MUST RELY ON THEIR OWN EXAMINATION OF THE DEBTOR AND THE TERMS OF THIS PLAN, INCLUDING WITH RESPECT TO THE MERITS AND RISKS INVOLVED. FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND EQUITY INTERESTS, THE DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THIS PLAN. IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE TERMS OF THIS PLAN ARE CONTROLLING. THE DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE TO ACCEPT OR REJECT THIS PLAN. NOTHING STATED IN THE DISCLOSURE STATEMENT SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THIS PLAN ON THE DEBTOR OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED IN THE DISCLOSURE STATEMENT, BY THEIR NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

SUMMARIES OF PROVISIONS OF AGREEMENTS REFERRED TO IN THIS PLAN AND THE DISCLOSURE STATEMENT DO NOT PURPORT TO BE COMPLETE, AND ARE SUBJECT TO AND QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO, THE FULL TEXT OF THE APPLICABLE AGREEMENT, INCLUDING THE DEFINITIONS OF TERMS CONTAINED IN SUCH AGREEMENT.

HOLDERS OF CLAIMS OR EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS PLAN OR THE DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THIS PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

HOLDERS OF CLAIMS OR EQUITY INTERESTS AND OTHER THIRD PARTIES SHOULD BE AWARE THAT THIS PLAN CONTAINS INJUNCTIONS AND RELEASES THAT MAY MATERIALLY AFFECT THEIR RIGHTS.

# ARTICLE I.

## DEFINITIONS; RULES FOR INTERPRETATION

**1.1** **Definitions.**

As used herein, capitalized terms shall have the respective meanings set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1.1    Administrative Expense Claim means a Claim (other than a Claim included in a Class under this Plan) that is entitled to priority in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code or Order of the Bankruptcy Court, including, without limitation, (i) Claims incurred by the Debtor (or its Estate) on or after the Petition Date and before the Effective Date for the actual, necessary costs and expenses of preserving the Estate, including, without limitation, Fee Claims.

1.1.2    Affiliate shall have the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

1.1.3    Allowed, when used

a.    with respect to any Claim, means such Claim to the extent it is not a Contested Claim or a Disallowed Claim; and

b.    with respect to Equity Interests in the Debtor, means the Equity Interests in such Debtor as reflected in the stock ledger or similar register of the Debtor as of the Effective Date.

For the avoidance of doubt, to the extent a Claim is not Allowed, such Claim is still subject to objection based upon any potentially applicable rights of avoidance, setoff, or subordination, and any other grounds or defenses.

For the further avoidance of doubt, any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an Order of the Bankruptcy Court shall not be considered "Allowed" under this Plan absent further Order of the Bankruptcy Court.  Unless otherwise specified in this Plan or by Order of the Bankruptcy Court, "Allowed" Claims shall not, for the purposes of computation of distributions under the Plan, include interest on such Claims from and after the Petition Date.

1.1.4    Assumed Contracts means the contracts, if any, assumed by the Debtor under section 365 of the Bankruptcy Code pursuant to an Order of the Bankruptcy Court.

1.1.5    Avoidance Actions means all Causes of Action of the Estate that arise under chapter 5 of the Bankruptcy Code, including under section 502, 542, 544, 545, 547, 548, 549, 550, 551, 552 and/or 553 of the Bankruptcy Code, and any other avoidance actions under the

Bankruptcy Code or applicable non-bankruptcy law and the proceeds thereof and property received thereby whether by judgment, settlement, or otherwise.

1.1.6    <u>Bankruptcy Code</u> means the Bankruptcy Reform Act of 1978, as codified at title 11 of the United States Code, as amended from time to time and applicable to the Chapter 11 Case.

1.1.7    <u>Bankruptcy Court</u> means the United States Bankruptcy Court for the Eastern District of Louisiana.

1.1.8    <u>Bankruptcy Rules</u> means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code and any local rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

1.1.9    <u>Bar Dates</u> means the General Bar Date, the Administrative Claim Bar Date, and any other applicable deadline to file a proof of claim in the Chapter 11 Case.

1.1.10    <u>Bar Date Order</u> means the Order [Docket No. 119], which set the General Bar Date.

1.1.11    <u>Business Day</u> means any day other than a Saturday, a Sunday, a "legal holiday" (as defined by Bankruptcy Rule 9006(a)), or any other day on which commercial banks are required or authorized to close for business in New York, New York.

1.1.12    <u>Cash</u> means legal tender of the United States of America or equivalents thereof, including, without limitation, payment in such tender by check, wire transfer or any other customary payment method.

1.1.13    <u>Causes of Action</u> means all claims, actions, causes of action, choses in action, liabilities, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, foreseen, unforeseen, asserted, assertable directly or derivatively, arising in law, equity or otherwise, that are or may be pending on the Effective Date or that may be instituted or prosecuted by the Litigation and Distribution Trustee on behalf of the Estate, or by the Debtor , against any Person, whether asserted or unasserted as of the Effective Date, including, without limitation: (i) the right to object to Class 2 Claims; (ii) all avoidance powers, actions (including all claims and causes of action arising under chapter 5 of the Bankruptcy Code), rights, remedies or affirmative defenses under the Bankruptcy Code and state law; and (iii) all Tort Claims. Any and all Causes of Action are preserved under the Plan.

1.1.14    <u>Chapter 11 Case</u> means the case commenced on the Petition Date by the Debtor in the Bankruptcy Court under chapter 11 of the Bankruptcy Code as Case No. 17-11213.

1.1.15    <u>Claim</u> shall have the meaning ascribed to such term in section 101(5) of the Bankruptcy Code.  For the avoidance of doubt, "Claim" includes, without limitation, a right to

4

payment, or equitable relief that gives rise to a right to payment, that has or has not accrued under non-bankruptcy law that is created by one or more acts or omissions of the Debtor if: (a) the act(s) or omission(s) occurred before or at the time of the Effective Date; (b) the act(s) or omission(s) may be sufficient to establish liability when injuries/damages are manifested; and (c) at the time of the Effective Date, the Debtor have received one or more demands for payment for injuries or damages arising from such acts or omissions.

1.1.16     Claim Objection Deadline means the deadline for filing objections to Claims as set forth in Section 10.1 of this Plan.

1.1.17     Class means a category of Claims or Equity Interests set forth in Article III of this Plan, as such term is used and described in section 1122 and section 1123(a)(1) of the Bankruptcy Code.

1.1.18     Committee means the official committee of unsecured creditors appointed in the Chapter 11 Case by the U.S. Trustee pursuant to section 1102(a) of the Bankruptcy Code.

1.1.19     Confirmation Date means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

1.1.20     Confirmation Hearing means the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be continued from time to time.

1.1.21     Confirmation Order means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.1.22     Contested, when used

    a.     with respect to a Claim, means such Claim

        i.     to the extent it is listed in the Schedules as disputed, contingent, or unliquidated, in whole or in part, and as to which no proof of claim has been filed;

        ii.     if it is listed in the Schedules as undisputed, liquidated, and not contingent and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent (A) the proof of claim amount exceeds the amount indicated in the Schedules, or (B) the proof of claim priority differs from the priority set forth in the Schedules, in each case as to which an objection was filed on or before the Claim Objection Deadline, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court or the Plan;

        iii.     if it is not listed in the Schedules or was listed in the Schedules as disputed, contingent or unliquidated, in whole or in part, but as to which a proof of claim has been filed with the Bankruptcy Court, in each case as to which an objection was filed on or before the Claim Objection Deadline, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court or the Plan; or

iv. as to which an objection has been or may be filed on or before the Claim Objection Deadline; provided, that a Claim that is fixed in amount and priority pursuant to the Plan or by Final Order on or before the Effective Date shall not be a Contested Claim; and

b. with respect to an Equity Interest, means such Equity Interest to the extent it is not reflected on the applicable Debtor's stock transfer register as of the Effective Date.

1.1.23    D&O Claims means any and all rights and claims against the Debtor's current and/or former directors and officers for, *inter alia*, breach of fiduciary duty and the proceeds of any such claims, including any Insurance Policies associated therewith.

1.1.24    D&O Policies means, collectively, any "Directors and Officers" and other fiduciary liability insurance policies in which the Debtor has an interest or under which the Debtor is named as an insured or additional insured.

1.1.25    Debtor means First NBC Bank Holding Company prior to the occurrence of the Effective Date.

1.1.26    Debtor in Possession means the Debtor, in its capacity as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

1.1.27    Disallowed, when used with respect to a Claim, means all or such part of a Claim that has been disallowed or released by a Final Order, operation of law, written release or settlement, the provisions of this Plan, or otherwise, or withdrawn by the holder of the Claim.

1.1.28    Disclosure Statement means the disclosure statement filed with respect to the Plan, as it may be amended, supplemented or otherwise modified from time to time, and the exhibits and schedules thereto.

1.1.29    Disclosure Statement Order means the order entered by the Bankruptcy Court (a) approving the Disclosure Statement as containing adequate information required under section 1125 of the Bankruptcy Code, and (b) authorizing the use of the Disclosure Statement for soliciting votes on the Plan.

1.1.30    Effective Date means a date selected by the Debtor which shall be a Business Day that is no later than three (3) days after all of the conditions specified in Section 11.2 have been satisfied or waived in accordance with Section 11.3 of this Plan.

1.1.31    Equity Interest means (i) any outstanding ownership interest in any of the Debtor, including, without limitation, interests evidenced by common or preferred stock, membership interests, options, stock appreciation rights, restricted stock, restricted stock units or their equivalents, or other rights to purchase or otherwise receive any ownership interest in any Debtor and any right to payment or compensation based upon any such interest, whether or not such interest is owned by the holder of such right to payment or compensation, and (ii) any Claim against the Debtor that is subordinated and has the same priority as common or preferred stock by operation of the Bankruptcy Code or any order entered by the Bankruptcy Court.

1.1.32    Estate means the estate of the Debtor created under section 541 of the Bankruptcy Code.

1.1.33    Estate Cash means, all Cash of the Debtor and the Estate as of the Effective Date remaining after payment (or reserve for payment) of all Unclassified Claims as set forth in Article II of this Plan and Allowed Class 1 Claims as set forth in Article III of this Plan.

1.1.34    Exculpated Parties means all Persons that are or were at any time on or after the Petition Date, and whether or not any such Person currently retains such capacity or position, (i) the Debtor; (ii) the Committee or a member of the Committee; or (iii) Professional Persons, to the extent such parties are or were acting in such capacity on behalf of any of the Persons identified in (i) or (ii) above on or after the Petition Date.

1.1.35    Fee Application means an application for allowance and payment of a Fee Claim.

1.1.36    Fee Claim means a Claim of a Professional Person.

1.1.37    Final Order means an order or judgment of the Bankruptcy Court (or any other court or adjudicative body of competent jurisdiction) entered on the docket of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, motion for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or any other court or adjudicative body) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; provided, however, no order or judgment shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order.

1.1.38    FNBC means First NBC Holding Company.

1.1.39    General Bar Date means October 20, 2017, the general deadline to file proofs of claim in the Chapter 11 Case (or November 7, 2017, with respect to governmental units) established by the Bar Date Order.

1.1.40    General Unsecured Claim means any Claim against the Debtor that is not an Administrative Expense Claim (including Fee Claims), a fee payable pursuant to section 1930 of title 28 of the United States Code, a Priority Tax Claim, and Insured Claim, or a Priority NQDC Claim, and shall not include Disallowed Claims.

1.1.41    Guaranteed Minimum Payment means no less than $4,000,000 in Cash to be provided under the Exit Facility to the Reorganized Debtor and paid by the Reorganized Debtor to the Litigation and Distribution Trust under this Plan.

7

1.1.42    Insider means a Person that would fall within the definition ascribed to such term in section 101(31) of the Bankruptcy Code.

1.1.43    Insurance Policies means, collectively, any policies of insurance coverage of any kind (including any and all amendments, endorsements, renewals, and extensions thereof) that at any time belonged or belong to or included or include the Debtor as a named insured, additional insured, or beneficiary, including, without limitation, the D&O Policies.

1.1.44    Insured Claim means any Claim against the Debtor for which the Debtor is entitled to indemnification, reimbursement, contribution or other payment under a policy of insurance wherein the Debtor is an insured or beneficiary of the coverage of the Debtor or any other Person.

1.1.45    Internal Revenue Code means the Internal Revenue Code of 1986, as amended, codified at title 26 of the United States Code, together with any applicable rulings, regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, and notices, announcements and other releases of the United States Treasury Department or the IRS.

1.1.46    IRS means the Internal Revenue Service.

1.1.47    Litigation and Distribution Trust means the trust established pursuant to Article VII of the Plan.

1.1.48    Litigation and Distribution Trust Agreement means the agreement, in a form reasonably acceptable to the Debtor and the Committee, to be dated as of the Effective Date establishing the terms and conditions of the Litigation and Distribution Trust, which shall be substantially in the form filed with the Bankruptcy Court as a Plan Document.

1.1.49    Litigation and Distribution Trust Assets means the Debtor's and the Estate's right, title and interest in the Guaranteed Minimum Payment,  all Causes of Action, the Estate Cash, the D&O Claims, the D&O Policies, the Avoidance Actions, and the proceeds of any Tort Claims and Insurance Policies applicable thereto.

1.1.50    Litigation and Distribution Trust Beneficiaries means all individuals and entities entitled to a Plan Distribution from the Litigation and Distribution Trust.

1.1.51    Litigation and Distribution Trust Expenses means all reasonable costs and expenses incurred on or after the Effective Date by the Litigation and Distribution Trustee and the Oversight Committee associated with the implementation and administration of the Litigation and Distribution Trust and the Plan.

1.1.52    Litigation and Distribution Trust Indemnified Parties has the meaning set forth in Section 7.7 of this Plan.

1.1.53    Litigation and Distribution Trustee means the trustee (and any successor trustee) selected to serve trustee pursuant to Article VII of this Plan and under the Litigation and Distribution Trust Agreement.  The identity of the initial trustee shall be filed with the Bankruptcy

Court as a Plan Document no later than three (3) Business Days after entry of the Bankruptcy Court's order approving the adequacy of the Disclosure Statement.

1.1.54    LT Reserve means any reserve established by the Litigation and Distribution Trustee on account of Contested Claims held by any Litigation and Distribution Trust Beneficiary that, if Allowed, would entitle such Litigation and Distribution Trust Beneficiary to a Plan Distribution.

1.1.55    Notice of Confirmation means the notice of entry of the Confirmation Order to be filed with the Bankruptcy Court and mailed by the Noticing Agent to holders of Claims and Equity Interests.

1.1.56    Oversight Committee means the committee consisting of members selected by the Committee that are or represent Litigation and Distribution Trust Beneficiaries, as set forth in Section 7.6 of this Plan, established pursuant to Article VII of this Plan to advise and assist the Litigation and Distribution Trustee in the implementation and administration of the Litigation and Distribution Trust pursuant to the Litigation and Distribution Trust Agreement and this Plan. A list of the proposed members of the Oversight Committee shall be filed with the Bankruptcy Court as a Plan Document.

1.1.57    Person means an individual, corporation, partnership, limited liability company, limited liability partnership, joint stock company, joint venture, trust, estate, unincorporated association, unincorporated organization, or any government, governmental entity, or political subdivision, department, agency, or instrumentality thereof, or any other entity.

1.1.58    Petition Date means May 11, 2017, the date on which the Debtor commenced the Chapter 11 Case.

1.1.59    Plan means this chapter 11 plan for the Debtor filed in the Chapter 11 Case, including all supplements, appendices and schedules hereto, either in their present form or as same may be amended, supplemented or otherwise modified from time to time in accordance with the Bankruptcy Code and the terms hereof.

1.1.60    Plan Distribution means the payment or distribution under the Plan of Cash, Assets, securities or instruments evidencing an obligation under the Plan to the holder of an Allowed Claim.

1.1.61    Plan Distribution Date means (i) with respect to any Claim other than a General Unsecured Claim, (a) if such Claim is Allowed on the Effective Date, a date that is as soon as reasonably practicable after the Effective Date, or (b) if such Claim is not Allowed on the Effective Date, a date that is as soon as reasonably practicable after the date such Claim becomes Allowed, and (ii) with respect to any General Unsecured Claim, such date(s) that the Litigation and Distribution Trustee determines in its reasonable discretion.

1.1.62    Plan Documents means the compilation of documents and forms of documents, schedules and exhibits to the Plan that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Section 1.4 of the Plan including, without limitation, the Litigation and Distribution Trust Agreement. Plan Documents shall be filed

9

in the record of the Bankruptcy Case no later than five (5) calendar days in advance of the Confirmation hearing.

1.1.63    <u>Plan Proponent</u> means the Debtor.

1.1.64    <u>Priority NQDC Claim</u> means any Claim to the extent such Claim is entitled to priority in right of payment under section 507(a)(5) of the Bankruptcy Code, other than Administrative Expense Claims and Tax Claims.

1.1.65    <u>Priority Tax Claim</u> means any secured or unsecured Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.1.66    <u>Professional Person</u> means a Person retained or to be compensated for services rendered or costs incurred on or after the Petition Date and on or prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in the Chapter 11 Case.

1.1.67    <u>Pro Rata Share</u> means the proportion that an Allowed Claim or an Allowed Equity Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Equity Interests in such class, including Contested Claims, but excluding Disallowed Claims, (a) as calculated by the Litigation and Distribution Trustee; or (b) as determined or estimated by the Bankruptcy Court.

1.1.68    <u>Reorganized Debtor</u> means the Debtor after the occurrence of the Effective Date.

1.1.69    <u>Schedules</u> means, unless otherwise stated, the schedules of assets and liabilities and list of Equity Interests and the statements of financial affairs filed by the Debtor with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and in conformity with the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be amended or supplemented by the Debtor from time to time in accordance with Bankruptcy Rule 1009.

1.1.70    <u>Securities Act</u> means the Securities Act of 1933, 15 U.S.C. §§ 77a, et seq.

1.1.71    <u>Series D Preferred</u> means 37,935 shares of Series D Preferred Stock issued on August 4, 2011 by FNBC to U.S. Department of the Treasury under the Small Business Lending Fund program.

1.1.72    <u>Series E Preferred</u> means 1,725 shares of Series E Preferred Stock issued on April 27, 2017 by FNBC to certain members of the FNBC Board of Directors in accordance with FNBC's amendment to the articles of incorporation dated April 25, 2017.

1.1.73    <u>Tort Claims</u> means any and all claims of the Debtor based on any tort, including, but not limited to D&O Claims.

1.1.74    <u>Voting Deadline</u> means the deadline established by an Order of the Bankruptcy Court for voting to accept or reject the Plan.

10

**1.2     Rules for Interpretation.**

For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural and terms denoting one gender shall include the other gender; (b) the Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous; (c) any reference in this Plan to a contract, instrument, release, or other agreement or document attached as an Exhibit to this Plan or included in the Plan Documents being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (d) any reference in this Plan to an existing document, schedule or exhibit filed or to be filed means such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (e) any reference to a Person as a holder of a Claim or Equity Interest includes that Person's successors and assigns; (f) all references in this Plan to Sections and Articles are references to Sections and Articles of or to this Plan or the Plan Documents, as the same may be amended, waived or modified from time to time; (g) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular Section, subsection or clause contained in this Plan; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (i) unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Louisiana, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents; (j) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (k) the term "including" shall be construed to mean "including, but not limited to," "including, without limitation," or words of similar import.

**1.3     Computation of Time.**

In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. In the event that any payment, distribution, act or deadline under this Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, and if so made, performed or completed by such next succeeding Business Day shall be deemed to have been completed or to have occurred as of the required date.

**1.4     Appendices and Plan Documents.**

All appendices to this Plan and the Plan Documents are incorporated into and are a part of this Plan as if set forth in full herein.  Except as otherwise provided herein, all Plan Documents shall be filed with the Bankruptcy Court not less than five (5) days prior to the Voting Deadline. Holders of Claims and Equity Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to:

**STEFFES VINGIELLO & McKENZIE, LLC**
13702 Coursey Blvd., Bldg. 3
Baton Rouge, Louisiana 70817
Attn: Barbara B. Parsons
(225) 751-1998 Facsimile

## ARTICLE II.

## TREATMENT OF ADMINISTRATIVE, PRIORITY TAX, AND UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified for purposes of this Plan or for the purposes of sections 1123, 1124, 1125, 1126 or 1129 of the Bankruptcy Code, respectively. All Administrative Expense Claims and Priority Tax Claims shall instead be treated separately as unclassified Claims along with certain other unclassified Claims under the terms set forth in this Article II.

**2.1** **Treatment of Administrative Expense Claims.**

2.1.1 General Provisions.

Except as provided below for Professionals and non-tax liabilities incurred in the ordinary course of business by the Debtor in Possession, requests for payment of Administrative Claims must be filed and properly noticed for hearing no later than thirty (30) days after the Effective Date. **Holders of Administrative Claims (including, without limitation, any governmental units asserting claims for federal, state, or local taxes) that are required to file a request for payment of such claims and that do not file and properly notice for hearing such requests by such bar date shall be forever barred from asserting such claims against the Debtor, Reorganized Debtor, any other Person, or any of their respective property.**

Except to the extent any Person entitled to payment of an Allowed Administrative Expense Claim has received payment on account of such Claim prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Administrative Expense Claim shall receive, in full satisfaction of its Allowed Administrative Expense Claim, Cash in an amount equal to the amount of such Allowed Administrative Expense Claim on the later of (i) the Effective Date or (ii) the date of entry of a Final Order determining and allowing such Claim as an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; provided, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Administrative Expense Claim.

For the avoidance of doubt, no Administrative Expense Claim that remains subject to objection on or before the Claim Objection Deadline (i.e., such Administrative Expense Claim is Contested) shall receive a distribution under this Plan unless and until the Reorganized Debtor, in consultation with the Litigation and Distribution Trustee, determines that no objection will be filed with respect to such Claim. Upon such a determination or agreement between the Reorganized

12

Debtor, the Litigation and Distribution Trustee and the holder of any Administrative Expense Claim, any such Administrative Expense Claim shall become Allowed and paid by the Reorganized Debtor from the reserve established by the Debtor from Estate Cash for that purpose.

Holders of Allowed Administrative Claims shall not be entitled to interest on their Administrative Claims.

### 2.1.2 Fee Claims of Professionals.

All Fee Claims of Professionals or other entities requesting compensation or reimbursement of expenses under sections 327, 328, 330, 331, 503(b), 506 and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including any compensation requested by any professional for any other entity for making a substantial contribution in the Chapter 11 Case) shall file and serve on the Reorganized Debtor an application and associated notice of hearing for final allowance of the Fee Claim no later than thirty (30) days after the Effective Date.

### 2.1.3 Ordinary Course Liabilities.

Holders of Administrative Claims based on liabilities incurred in the ordinary course of business of the Debtor in Possession prior to the Effective Date (other than professionals or other entities described in Section 3.3.2 above, and governmental units that hold claims for taxes or claims and/or penalties related to such taxes) shall not be required to file any request for payment of such claims; however, **all such claims must be submitted to the Debtor within 30 days of the Effective Date via _____; and, failure to timely submit such claims in the foregoing manner shall result in that Claim being forever barred and discharged, and no distribution shall be made under the Plan on account of any such barred and discharged Claim.** Such Administrative Claims shall be paid by the Reorganized Debtor upon the later of (a) 30 days of receipt of such Claim or (b) in the ordinary course of business under the terms and conditions of the particular transaction giving rise to such Administrative Claim, without any further action by the Holders of such claims.

## 2.2 Treatment of Quarterly Fees.

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtor on or before the Effective Date. All such fees arising after the Effective Date shall be an administrative expense of the Litigation and Distribution Trust and shall be paid by the Litigation and Distribution Trustee from the Litigation and Distribution Trust Assets.

## 2.3 Treatment of Priority Tax Claims.

Each holder of an Allowed Priority Tax Claim will receive in full satisfaction of such Allowed Priority Tax Claim payment in Cash on the Plan Distribution Date.

# ARTICLE III.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**3.1** **General.**      Pursuant to sections 1122 and 1123 of the Bankruptcy Code, all Claims and Equity Interests are classified for all purposes, including, without express or implied limitation, voting, confirmation and distribution pursuant to this Plan, as set forth herein. A Claim or Equity Interest shall be deemed classified in a particular class only to the extent that the Claim or Equity Interest qualifies within the description of that class, and shall be deemed classified in a different class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different class. A Claim or Equity Interest is in a particular class only to the extent that such Claim or Equity Interest is Allowed in that class and has not been paid or otherwise satisfied prior to the Effective Date. In no event shall any holder of an Allowed Claim be entitled to receive payments that in the aggregate exceed the Allowed amount of such holder's Claim.

**3.2**      **Classification of Claims and Equity Interests**

The following chart assigns a number and name to each class against the Debtor for purposes of identifying each separate class:

| Class | Claim or Equity Interest |
|-------|--------------------------|
| 1 | Priority NQDC Claims |
| 2 | General Unsecured Claims |
| 3 | Equity Interests (Common Stock) |
| 4 | Series D Preferred Equity Interests |
| 5 | Series E Preferred Equity Interests |

**3.3**      **Treatment of Claims Against and Equity Interests in the Debtor.**

The classes of Claims against and Equity Interests in the Debtor shall be treated under the Plan as follows:

(a)      Class 1 – Priority NQDC Claims.

Each holder of an Allowed Priority NQDC Claim shall be unimpaired under the Plan and, pursuant to section 1124 of the Bankruptcy Code, all legal, equitable and contractual rights of each holder of an Allowed Priority NQDC Claim with respect to such Claim shall remain unaltered, except as provided in sections 1124(2)(A)-(E) of the Bankruptcy Code, and such holder of an Allowed Priority NQDC Claim shall be paid Cash by the Reorganized Debtor from the Estate Cash in an amount equal to its Allowed Priority NQDC Claim on the Plan Distribution Date.

(b)      <u>Class 2 – General Unsecured Claims</u>.

Each holder of an Allowed General Unsecured Claim shall receive on the Plan Distribution Date, in satisfaction of its Allowed General Unsecured Claim, Cash in an amount equal to such holder's Pro Rata Share of the Litigation and Distribution Trust.

(c)      <u>Class 3 – Equity Interests (Common Stock)</u>.

Holders of Interests in the Debtor shall have left unaltered the legal, equitable, and contractual rights to which each such Holder is entitled on account of such Interest.

(d)      <u>Class 4 – Series D Preferred Equity Interests</u>

Holders of Interests in the Debtor shall have left unaltered the legal, equitable, and contractual rights to which each such Holder is entitled on account of such Interest.

(e)      <u>Class 5 – Series E Preferred Equity Interests</u>

Holders of Interests in the Debtor shall have left unaltered the legal, equitable, and contractual rights to which each such Holder is entitled on account of such Interest.

## ARTICLE IV.

## IDENTIFICATION OF IMPAIRED
## CLASSES OF CLAIMS AND EQUITY INTERESTS

**4.1**    <u>Unimpaired Classes of Claims and Equity Interests.</u>

The following Classes are not impaired under the Plan:

(a)      Class 1 – Priority NQDC Claims, Class 3- Equity Interests (Common Stock), Class 4 – Series D Preferred Equity Interests, and Class 5 – Series E Preferred Equity Interests.

**4.2**    <u>Impaired Classes of Claims and Equity Interests.</u>

The following Class is impaired under the Plan:

(a)      Class 2 – General Unsecured Claims.

**4.3**    <u>Impairment Controversies.</u>

If a controversy arises as to whether any Claim or Equity Interest, or any class of Claims or Equity Interests, is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

# ARTICLE V.

## ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS

### 5.1 Classes Entitled to Vote.

Classes 1, 3, 4 and 5 are not impaired under the Plan, and the holders of Claims and Interests in such classes are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

Class 2 is impaired under the Plan, and the holders of Claims in such class are entitled to vote to accept or reject the Plan.

### 5.2 Acceptance by an Impaired Class of Claims.

5.2.1    Pursuant to section 1126(c) of the Bankruptcy Code, an impaired class of Claims shall have accepted the Plan if, after excluding any Claims held by any holder designated pursuant to section 1126(e) of the Bankruptcy Code, (a) the holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims actually voting in such class have voted to accept such Plan.

### 5.3 Confirmability and Severability of this Plan.

5.3.1    Reservation of Rights.  Subject to Sections 14.11 and 14.12 of this Plan, the Plan Proponent reserves the right to modify or withdraw this Plan, in its entirety or in part, for any reason.  In addition, and also subject to Sections 14.11 and 14.12 of this Plan, should this Plan fail to be accepted by the requisite number and amount of Claims voting, as required to satisfy section 1129 of the Bankruptcy Code, and notwithstanding any other provision of this Plan to the contrary, the Plan Proponent reserves the right to reclassify Claims or Equity Interests or otherwise amend, modify or withdraw this Plan in its entirety or in part.

5.3.2    Severability of Plan Provisions. If any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

# ARTICLE VI.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**6.1**     **Exit Facility**

Prior to the occurrence of the Effective Date, the Debtor shall have secured a commitment from one or more lenders to provide it, as the Reorganized Debtor, with the necessary funding to pay the Guaranteed Minimum Payment to the Litigation and Distribution Trust as required for the Effective Date to occur and to provide whatever other "re-start" funding the Debtor's current management deems necessary to assure that it remain in business after the occurrence of the Effective Date for an indefinite period of time. The Litigation and Distribution Trust and its assets shall have no liability for the Exit Facility, such liability being the sole responsibility of the Reorganized Debtor.

**6.2**     **Corporate Action.**

The entry of the Confirmation Order shall constitute authorization for the Debtor and the Litigation and Distribution Trustee, as applicable, to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and the Plan Documents prior to and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including, without limitation, (a) the incurrence of all obligations contemplated by the Plan and the making of Plan Distributions, (b) the implementation of all settlements and compromises as set forth in or contemplated by the Plan (c) the execution, delivery, filing and/or recording of any contracts, agreements, instruments or other documents contemplated by the Plan Documents (or necessary or desirable to effectuate the transactions contemplated by the Plan Documents); and, (d) the execution of any such documentation necessary for the Debtor to enter into the Exit Facility in order to obtain the Guaranteed Minimum Payment to be paid to the Litigation and Distribution Trust.

**6.3**     **Preservation of Causes of Action**

Except as otherwise provided in the Plan, each Cause of Action of the Debtor shall be preserved and, along with the exclusive right to commence, pursue, and enforce such Cause of Action in any appropriate court or tribunal, shall be deemed transferred to the Liquidation and Distribution Trust/ Litigation and Distribution Trustee as of the Effective Date, and shall vest exclusively in the Litigation and Distribution Trust /Litigation and Distribution Trustee (as applicable) as of the Effective Date. In addition, each Cause of Action to which the Committee, pursuant to Bankruptcy Court Order [Doc.261] was granted standing to assert, commence, prosecute, and, if appropriate, settle (with Court approval), against the Debtor's officers and directors, on behalf of and for the benefit of the Debtor's estate, shall vest exclusively in the Litigation and Distribution Trust /Litigation and Distribution Trustee (as applicable) as of the Effective Date.

Unless a claim or Cause of Action against a creditor or other Person is expressly waived, relinquished, released, compromised, settled or transferred in the Plan or any other Final Order,

the Debtor, Committee and the Litigation and Distribution Trustee, as applicable, expressly reserve such claim or Cause of Action for later pursuit by the Litigation and Distribution Trustee and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon, after, or as a result of the Confirmation Date or Effective Date of the Plan, the Disclosure Statement, the Plan or the Confirmation Order.  In addition, the Debtor and the Litigation and Distribution Trustee, as applicable, expressly reserve the right to pursue or adopt any claims (and any defenses) or Causes of Action of the Debtor, as trustees or representatives for or on behalf of the creditors, not so specifically and expressly waived, relinquished, released, compromised, settled or transferred that are alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any Person, including, without limitation, the plaintiffs or codefendants in such lawsuits.

Any Person to whom the Debtor has incurred an obligation (whether on account of services, purchase or sale of goods, tort, breach of contract or otherwise), or who has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor should assume that such obligation, transfer, or transaction may be reviewed by the Litigation and Distribution Trustee subsequent to the Effective Date and may, to the extent not theretofore waived, relinquished, released, compromised, settled or transferred, be the subject of an action or claim or demand after the Effective Date, whether or not (a) such Person has filed a proof of claim against the Debtor in the Chapter 11 Case, (b) such Person's proof of claim has been objected to, (c) such Person's Claim was included in the Debtor's Schedules, or (d) such Person's scheduled Claim has been objected to by the Debtor, the Litigation and Distribution Trustee or has been identified by the Debtor as disputed, contingent, or unliquidated.

**No Person may rely on the absence of a specific reference in the Plan or this Disclosure Statement to any Cause of Action against them as any indication that the Debtor or the Litigation and Distribution Trustee will not pursue any and all available Causes of Action against them.  The Debtor and the Litigation and Distribution Trustee, and the Estate expressly reserve all rights to prosecute any and all Causes of Action against any Person, <u>except</u> as otherwise explicitly provided in the Plan**.

The retained claims and Causes of Action, include, without limitation:

• Causes of Action, including Avoidance Actions, as defined in the Plan;

• Objections to Claims under the Plan;

• Any and all litigation, claims, or Causes of Action of the Debtor and any rights, suits, damages, remedies, or obligations, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, relating to or arising from the acts, omissions, activities, conduct, claims, or Causes of Action listed or described in the Plan, Disclosure Statement, or the Confirmation Order;

• Any other litigation, claims or Causes of Action, whether legal, equitable or statutory in nature, arising out of, or in connection with the Debtor's businesses, assets or operations or otherwise affecting the Debtor.

• Actions against insurance carriers relating to coverage, indemnity or other matters;

• Counterclaims and defenses relating to notes or other obligations;

• Contract, tort, or equitable claims which may exist or subsequently arise;

• Any claims of the Debtor arising under Section 362 of the Bankruptcy Code;

• Equitable subordination claims arising under Section 510 of the Bankruptcy Code or other applicable law;

• Any and all claims arising under chapter 5 of the Bankruptcy Code and all similar actions under applicable law, including, but not limited to, preferences under Section 547 of the Bankruptcy Code, turnover Claims arising under Sections 542 or 543 of the Bankruptcy Code, and fraudulent transfers under Section 548 of the Bankruptcy Code, including but not limited, to any transfers listed the Debtor's Statements of Financial Affairs;

• Any derivative Causes of Action, of the Debtor pursuant to the Bankruptcy Code or any other statute or legal theory or theory under equity.

• Any and all claims against Ernst & Young, LLP, its insurer(s), and against any other entities which provided professional services to the Debtor prior to the Petition Date.

Without limiting, and in addition to, the foregoing reservations of claims and Causes of Actions, the Liquidating Trust/Liquidating Trustee expressly reserves and retains any and all past, present and future legal and equitable claims and Causes of Action (including any derivative Causes of Action) against any former or current director or officer of the Debtor, as well as direct action or other claims against its liability insurers, arising under state or other non-bankruptcy law or arising under the Bankruptcy Code, in this Chapter 11 Case, or in any way related to this Chapter 11 Case, or under and/or pursuant to any statute or legal or equitable theory that is in any manner arising from, connected with or related to any act or omission of such director or officer that occurred prior to the Petition Date, including but not limited to, claims and Causes of Action for breach of fiduciary duty, violations of applicable federal or state securities law, negligence, gross negligence, willful misconduct, misrepresentation, omission, mismanagement, waste, fraud, bad faith, tortious interference with contract, detrimental reliance, including but not limited to, any damages allowed by law or equity, including compensatory, punitive and anticipated future damages, plus all costs including attorney's fees, court costs, and expert witness fees. Such claims and Causes of Action include those arising in connection with or relating to any of the following:

• *To be supplemented*

Due to the size and scope of the Debtor's business operations, there may be numerous other claims and Causes of Action that currently exist or may subsequently arise, in addition to the claims and Causes of Action identified above. The Debtor and Committee are also continuing to investigate and assess which claims and Causes of Action may be pursued. The Debtor and the Litigation and Distribution Trustee do not intend, and it should not be assumed that because any existing or potential claims or Causes of Action have not yet been pursued or do not fall within the list above, that any such claims or Causes of Action have been waived.

19

**THIS PLAN SHALL BE INTERPRETED SO AS TO AFFORD, FOR THE BENEFIT OF ALL HOLDERS OF ALLOWED CLAIMS, THE GREATEST OPPORTUNITY FOR MAXIMUM RECOVERY BY THE LIQUIDATION AND DISTRIBUTION TRUSTEE ON THE ASSETS, TORT CLAIMS, AND RIGHTS IN AND PROCEEDS OF ANY INSURANCE POLICIES**.

**6.4** **Establishment of the Litigation and Distribution Trust and Appointment of the Litigation and Distribution Trustee.**

The Litigation and Distribution Trust shall be established and the Litigation and Distribution Trustee shall be appointed as set forth below in Article VII.

**6.5** **Revesting of the Tort Claims and Insurance Policies.**

On the Effective Date, the Estate's interest in any Tort Claims and rights in and proceeds of any Insurance Policies necessary for the prosecution of all such Claims shall be transferred to and vest in the Litigation and Distribution Trust. The Litigation and Distribution Trustee shall have standing and be authorized to institute and prosecute through final judgment or settle the Tort Claims. Upon entry of a final judgment or settlement, the relevant proceeds of the Tort Claims and relevant Insurance Policies shall be property of the Litigation and Distribution Trust for the benefit of holders of Allowed Class 2 claims in accordance with the provisions of this Plan. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan shall not discharge, impair or otherwise affect or other obligations of the Insurance Policies such that the full benefits of all such policies can be realized for Creditors herein.

**6.6** **Sources of Cash for Plan Distributions.**

All Cash necessary to make payments and Plan Distributions under the Plan by the Debtor shall be made (or reserved) from Estate Cash prior to the transfer of the remaining Estate Cash to the Litigation and Distribution Trust. All Plan Distributions to be made by the Litigation and Distribution Trust shall be obtained from the liquidation of Litigation and Distribution Trust Assets (including the proceeds of any Tort Claims and related Insurance Policies).

**6.7** **Cancellation of Instruments.**

Except as otherwise provided herein, all notes, bonds, indentures or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor, other than Equity Interests, shall be deemed cancelled on the Effective Date but only as to the Debtor itself and the Litigation and Distribution Trust.

**6.8** **Continued Corporate Existence and Vesting of Assets of the Debtor**

On and after the Effective Date, the Reorganized Debtor will continue to exist as a corporation and shall retain all of the powers of corporations under applicable non- bankruptcy law, and without prejudice to any right to amend its charter, dissolve, merge or convert into another form of business entity, or to alter or terminate its existence. As of the Effective Date, the Debtor's Articles of Incorporation shall be deemed amended to conform to the requirements

20

of Section 1123(a)(6) of the Bankruptcy Code. Furthermore, as of the Effective Date, the Debtor shall have taken such steps as may be necessary to delist and deregister its common stock under the Securities Exchange Act of 1934

Except as otherwise provided in the Plan, on and after the Effective Date, all Distributable Assets and property of the Debtor and its Estate, including any "net operating losses" or similar tax attributes and any other Assets of the Debtor other than the Litigation and Distribution Trust Assets, will re-vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances and Interests.

On and after the Effective Date, the Reorganized Debtor shall be permitted to conduct its business without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules. The Reorganized Debtor shall be authorized, without limitation, to use and dispose of Assets of the Debtor other than the Litigation and Distribution Trust Assets, as the representative of Debtor's Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, to acquire and dispose of other property, and to otherwise administer its affairs. It is anticipated that the Holders of Equity lnterests in the Reorganized Debtor will contribute capital to the Reorganized Debtor to enable the Reorganized Debtor to acquire assets after the Effective Date and that the Reorganized Debtor will have future business operations.

**6.9**     **Dissolution of the Committee.**

Upon the Effective Date, the Committee shall be deemed to have transferred and conveyed to the Litigation and Distribution Trust/Litigation and Distribution Trustee all of its rights, interests, and standing to assert the D&O Claims; and, shall thereafter dissolve automatically, whereupon its members, professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except with respect to applications for Fee Claims or reimbursement of expenses incurred as a member of the Committee.

## ARTICLE VII.

## THE LITIGATION AND DISTRIBUTION TRUST

**7.1**     **Establishment of Litigation and Distribution Trust.**

On the Effective Date, the Litigation and Distribution Trust shall be established pursuant to the Litigation and Distribution Trust Agreement for the purposes of administering the Litigation and Distribution Trust Assets and making all distributions to Litigation and Distribution Trust Beneficiaries as provided for under this Plan. The Litigation and Distribution Trust Agreement shall be substantially in the form provided in the Plan Documents.

The beneficial interests in the Litigation and Distribution Trust shall not be certificated, unless otherwise provided in the Litigation and Distribution Trust Agreement. The issuance of any beneficial interests of the Litigation and Distribution Trust satisfies the requirements of section 1145 of the Bankruptcy Code and, therefore, such issuance is exempt from registration under the Securities Act of 1933, as amended, and any state or local law requiring registration.

**7.2**      **Execution of the Litigation and Distribution Trust Agreement.**

The Litigation and Distribution Trust Agreement, in a form reasonably acceptable to the Debtor, shall be executed on or before the Effective Date, and all other necessary steps shall be taken to establish the Litigation and Distribution Trust and the beneficial interests therein, which shall be for the benefit of holders of Allowed Class 2 Claims as set forth herein. This Article VII sets forth certain of the rights, duties and obligations of the Litigation and Distribution Trustee. In the event of any conflict between the terms of this Article VII and the terms of the Litigation and Distribution Trust Agreement, the terms of the Litigation and Distribution Trust Agreement shall govern.

**7.3**      **Litigation and Distribution Trust Assets.**

7.3.1      Except as otherwise provided herein, on the Effective Date, in accordance with section 1141 of the Bankruptcy Code, all of the Litigation and Distribution Trust Assets, as well as the rights, privileges (including, but not limited to, the attorney-client privilege), and powers of the Debtor and its Estate applicable to the Litigation and Distribution Trust Assets, shall automatically vest in the Litigation and Distribution Trust, free and clear of all Claims and Equity Interests for the benefit of the Litigation and Distribution Trust Beneficiaries. For the avoidance of doubt, (i) in no event shall the term "Litigation and Distribution Trust Assets" be deemed to include any released claims against any Exculpated Parties, and (ii) the Litigation and Distribution Trust shall not have the right to assert any released claims against any Exculpated Parties. Upon the transfer of Litigation and Distribution Trust Assets to the Litigation and Distribution Trust, the Litigation and Distribution Trust shall succeed to all of the Debtor's and Estate's rights, title and interest in such Litigation and Distribution Trust Assets, and the Debtor shall have no further interest in or with respect to such Litigation and Distribution Trust Assets.

Notwithstanding the foregoing, the Plan Proponent reserves the right to modify the Plan to exclude certain assets from transfer to the Litigation and Distribution Trust. The Confirmation Order shall constitute a determination that the transfers of Assets to the Litigation and Distribution Trust are legal and valid and consistent with the laws of the State of Louisiana.

All parties shall execute any documents or other instruments necessary to cause title to the Litigation and Distribution Trust Assets to be transferred to the Litigation and Distribution Trust. The Litigation and Distribution Trust Assets will be held in trust for the benefit of all holders of Allowed Class 2 Claims pursuant to the terms of the Plan and Litigation and Distribution Trust Agreement.

7.3.2      As more fully set forth in Section 7.10 hereof, the transfer of each of the Litigation and Distribution Trust Assets to the Litigation and Distribution Trust shall be treated for U.S. federal income tax purposes as a transfer of the Litigation and Distribution Trust Assets to the Litigation and Distribution Trust Beneficiaries, who will immediately thereafter be deemed to have automatically transferred all such Assets to the Litigation and Distribution Trust.

**7.4**      **Governance of Litigation and Distribution Trust.**

The Litigation and Distribution Trust shall be governed and administered by the Litigation and Distribution Trustee, with the advice and assistance of the Oversight Committee, as provided

under this Plan and the Litigation and Distribution Trust Agreement. Notwithstanding anything to the contrary herein, the Oversight Committee shall act in furtherance of, and consistent with, the purpose of the Litigation and Distribution Trust and shall act in the best interests of the Litigation and Distribution Trust Beneficiaries.

**7.5**     **Litigation and Distribution Trustee.**

The Litigation and Distribution Trustee shall be authorized to exercise and perform the rights, powers, and duties held by the Debtor and the Estate with respect to the Litigation and Distribution Trust Assets upon their transfer to the Litigation and Distribution Trust, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting in the capacity of a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee or any similar official who has been appointed to take control of, manage, and to provide for the prosecution, settlement, adjustment, retention, and enforcement of the Litigation and Distribution Trust Assets.

    7.5.1     <u>Responsibilities of Litigation and Distribution Trustee.</u>

The responsibilities of the Litigation and Distribution Trustee shall include, but shall not be limited to: (a) prosecuting through judgment and/or settling the Litigation and Distribution Trust Assets and any defense asserted by the Litigation and Distribution Trust in connection with any counterclaim or crossclaim asserted against the Litigation and Distribution Trust; (b) calculating and making distributions required under the Plan to be made from the Litigation and Distribution Trust Assets; (c) filing all required tax returns, and paying obligations on behalf of the Litigation and Distribution Trust from the Litigation and Distribution Trust Assets; (d) otherwise administering the Litigation and Distribution Trust; (e) filing quarterly reports with the Bankruptcy Court with respect to the expenditures, receipts, and distributions of the Litigation and Distribution Trust and paying any fees due as result of same; and (f) such other responsibilities as may be vested in the Litigation and Distribution Trustee pursuant to the Litigation and Distribution Trust Agreement, the Confirmation Order, or as may be necessary and proper to carry out the provisions of the Plan relating to the Litigation and Distribution Trust.

The Litigation and Distribution Trustee shall maintain good and sufficient books and records of account relating to the Litigation and Distribution Trust Assets, the management thereof, all transactions undertaken by the Litigation and Distribution Trustee, all expenses incurred by or on behalf of the Litigation and Distribution Trustee, and all distributions to Litigation and Distribution Trust Beneficiaries contemplated or effectuated under the Plan.

    7.5.2     <u>Authority and Powers of Litigation and Distribution Trustee.</u>

The powers of the Litigation and Distribution Trustee are set forth in full in the Litigation and Distribution Trust Agreement and shall include, among other things, the right, without any further approval from the Bankruptcy Court, to: (a) sell, lease, license, abandon or otherwise dispose of all Litigation and Distribution Trust Assets subject to the terms of this Plan; (b) invest the Litigation and Distribution Trust Assets in short term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as treasury bills, and withdraw funds of the Litigation and Distribution Trust for that purpose; (c) employ Persons to assist the

Litigation and Distribution Trustee in carrying out his duties under the Plan and Litigation and Distribution Trust Agreement; (d) pay from the Litigation and Distribution Trust Assets all obligations of the Litigation and Distribution Trust and all costs and expenses of administering the Litigation and Distribution Trust and Litigation and Distribution Trust Assets, including fees and expenses of the Litigation and Distribution Trustee, and Persons employed by the Litigation and Distribution Trustee in carrying out his duties under the Plan and Litigation and Distribution Trust Agreement, taxes, and other obligations of the Litigation and Distribution Trust; (e) implement the Plan, including by making distributions to Class 2 Claimants pursuant to the Plan; (f) evaluate and determine strategy with respect to the Litigation and Distribution Trust Assets, and prosecute, compromise, release, abandon and/or settle or otherwise resolve any Litigation and Distribution Trust Assets, including any and all Avoidance Actions, Causes of Action, or other claims of the Debtor or it Estate; (g) liquidate any Litigation and Distribution Trust Assets and provide for distributions therefrom in accordance with the provisions of the Plan; (h) otherwise administer the Litigation and Distribution Trust; (i) participate in any post-Effective Date motions to amend or modify this Plan or the Litigation and Distribution Trust Agreement, or appeals from the Confirmation Order; (j) participate in actions to enforce or interpret the Plan; (k) bind the Litigation and Distribution Trust; (l) continue any motions, defenses, or appeals initiated by the Debtor or the Committee prior to the Effective Date relating to any Litigation and Distribution Trust Asset; (m) exercise such other powers and authority as may be vested in or assumed by the Litigation and Distribution Trustee by any Final Order, or as may be necessary and proper to carry out the provisions of the Plan relating to the Litigation and Distribution Trust; (n) dissolve the Litigation and Distribution Trust in accordance with Section 7.9 of the Plan; and (o) administer the closure of the Chapter 11 Case.

The authority of the Litigation and Distribution Trustee will commence as of the Effective Date and will remain and continue in full force and effect until all of the Litigation and Distribution Trust Assets have liquidated in accordance with the Plan, the funds in the Litigation and Distribution Trust have been completely distributed in accordance with the Plan, all tax returns and any other required filings or reports have been filed with the appropriate state or federal regulatory authorities, and the Order closing the Chapter 11 Case is a Final Order.

7.5.3    Litigation and Distribution Trustee as Successor in Interest to the Debtor and Committee.

Solely with respect to the Litigation and Distribution Trust Assets, the Litigation and Distribution Trustee is the successor in interest to the Debtor and the Committee, and thus, after the Effective Date, to the extent the Plan requires an action by the Debtor or the Committee with respect to any of the Litigation and Distribution Trust Assets, the action shall be taken by the Litigation and Distribution Trustee on behalf of the Debtor or the Committee, as applicable.

7.5.4    Retention of Professionals by Litigation and Distribution Trustee.

As set forth in Section 7.5.2 of this Plan and the Litigation and Distribution Trust Agreement, the Litigation and Distribution Trustee may, without further order of the Bankruptcy Court, employ various Persons on behalf of the Litigation and Distribution Trust, including, but not limited to, attorneys, consultants and financial advisors, as needed to assist him/her in fulfilling his/her obligations under the Litigation and Distribution Trust Agreement and this Plan, and on

whatever fee arrangement he/she deems appropriate, including, without limitation, contingency fee arrangements. For the avoidance of doubt, the Litigation and Distribution Trustee may retain professionals who represented parties in interest in the Chapter 11 Case.

Professionals engaged by the Litigation and Distribution Trustee shall not be required to file applications with the Bankruptcy Court in order to receive compensation for services rendered and reimbursement of actual out-of-pocket expenses incurred, and all such compensation and reimbursement shall be paid from the Litigation and Distribution Trust with Litigation and Distribution Trust Assets. Notwithstanding the foregoing, all invoices for such Professionals will be submitted to the Litigation and Distribution Trustee and the Oversight Committee for review prior to payment. If the Litigation and Distribution Trustee and a majority of the members of the Oversight Committee do not object to a submitted invoice, the invoice will be paid. If the Litigation and Distribution Trustee or a majority of the members of the Oversight Committee object to the invoice, the parties will work in good faith to resolve the objection. If the parties cannot resolve the objection, one or more of the parties may raise the dispute to the Bankruptcy Court for resolution.

       7.5.5     <u>Compensation of Litigation and Distribution Trustee</u>.

In addition to reimbursement for actual out-of-pocket expenses incurred by the Litigation and Distribution Trustee, the Litigation and Distribution Trustee shall be entitled to receive reasonable compensation for services rendered on behalf of the Litigation and Distribution Trust on terms to be set forth in the Litigation and Distribution Trust Agreement, and all such compensation and reimbursement shall be paid from the Litigation and Distribution Trust using Litigation and Distribution Trust Assets and their proceeds.

All invoices for the Litigation and Distribution Trustee will be submitted to the Oversight Committee for review prior to payment. If a majority of the members of the Oversight Committee do not object to a submitted invoice, the invoice will be paid. If a majority of the members of the Oversight Committee object to the invoice, the parties will work in good faith to resolve the objection. If the parties cannot resolve the objection, one or more of the parties may raise the dispute to the Bankruptcy Court for resolution.

**7.6**     **<u>Oversight Committee.</u>**

       7.6.1     <u>Appointment of the Oversight Committee</u>.

On the Effective Date, the Oversight Committee shall be formed. The Oversight Committee shall advise and assist the Litigation and Distribution Trustee in the implementation and administration of the Litigation and Distribution Trust pursuant to the Litigation and Distribution Trust Agreement and this Plan. A list of the proposed members of the Oversight Committee, whose appointment shall become effective as of the Effective Date of this Plan, shall be filed with the Bankruptcy Court as a Plan Document.

The Oversight Committee shall consist of not less than three (3) Persons that are Litigation and Distribution Trust Beneficiaries. The Oversight Committee may also include such other Persons (including ex officio members) as may be requested by the Oversight Committee, which Person shall have agreed to participate in the performance of the Oversight Committee's functions

as set forth in the Plan. The members of the Oversight Committee shall serve without compensation, but may be reimbursed for reasonable expenses incurred in the performance of their duties as members of the Oversight Committee.

 7.6.2 _Duties of the Oversight Committee_.

 The Oversight Committee shall have the functions, duties and rights provided in the Litigation and Distribution Trust Agreement. No other Litigation and Distribution Trust Beneficiary shall have any consultation rights whatsoever in respect of management and operation of the Litigation and Distribution Trust.

## 7.7 **Indemnification.**

 From and after the Effective Date, the Litigation and Distribution Trustee and the members of the Oversight Committee and all Persons retained by the Litigation and Distribution Trust (collectively, the "Litigation and Distribution Trust Indemnified Parties" and each a "Litigation and Distribution Trust Indemnified Party") shall be, and hereby are, indemnified by the Litigation and Distribution Trust, to the fullest extent permitted by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, causes of action, bonds, covenants, judgments, damages, attorneys' fees, defense costs, and other assertions of liability arising out of any such Litigation and Distribution Trust Indemnified Party's good faith exercise of what such Litigation and Distribution Trust Indemnified Party reasonably understands to be its powers or the discharge of what such Litigation and Distribution Trust Indemnified Party reasonably understands to be its duties conferred by the Litigation and Distribution Trust Agreement, the Plan, or any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law, or otherwise (except only for actions or omissions to act to the extent determined by a Final Order to be due to its own fraud, self-dealing, intentional misrepresentation, gross negligence or willful misconduct), including but not limited to, acts or omissions concerning pursuing or not pursuing the Litigation and Distribution Trust Assets, on and after the Effective Date. The foregoing indemnification shall also extend to matters directly or indirectly in connection with, arising out of, based on, or in any way related to (a) the Plan; (b) the Litigation and Distribution Trust Agreement; (c) the services to be rendered pursuant to the Plan or Litigation and Distribution Trust Agreement; (d) any document or information, whether verbal or written, referred to herein or supplied to the Litigation and Distribution Trustee; or (e) proceedings by or on behalf of any creditor or Debtor. The Litigation and Distribution Trust shall, on demand, advance or pay promptly out of the Litigation and Distribution Trust Assets, on behalf of each Litigation and Distribution Trust Indemnified Party, reasonable and documented attorneys' fees and other expenses and disbursements to which such Litigation and Distribution Trust Indemnified Party would be entitled pursuant to the foregoing indemnification obligation; provided, however, that any Litigation and Distribution Trust Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance if a court of competent jurisdiction ultimately determines that such Litigation and Distribution Trust Indemnified Party is not entitled to indemnification hereunder due to the fraud, self-dealing, intentional misrepresentation, gross negligence or willful misconduct of such Litigation and Distribution Trust Indemnified Party. In any matter covered by the first two sentences of this subsection, any Person entitled to indemnification shall have the right to employ such Person's own separate counsel reasonably acceptable to the Litigation and Distribution

26

Trustee, at the Litigation and Distribution Trust's expense, subject to the foregoing terms and conditions.

**7.8    LT Reserves.**

The Litigation and Distribution Trustee may establish one or more LT Reserves on account of Contested Claims, the holders of which would be Litigation and Distribution Trust Beneficiaries were such Contested Claims ultimately Allowed. The amount held back in the LT Reserve(s) shall be equal to the amount necessary to satisfy the Plan Distributions to which the holders of the relevant Contested Claims would be entitled if all such Contested Claims were to be subsequently Allowed.

**7.9    Discharge of Litigation and Distribution Trustee and Dissolution.**

The Litigation and Distribution Trustee and the Litigation and Distribution Trust shall be discharged or dissolved, as the case may be, at such time as (i) all assets of the Litigation and Distribution Trust have been liquidated and (ii) all distributions required to be made by the Litigation and Distribution Trustee under the Plan have been made, but in no event shall the Litigation and Distribution Trust be dissolved later than five (5) years from the Effective Date; provided, however, that the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Litigation and Distribution Trust for a finite period if (i) such extension is necessary to the purpose of the Litigation and Distribution Trust, (ii) the Litigation and Distribution Trustee receives an opinion of counsel or a ruling from the IRS stating that such extension would not adversely affect the status of the Litigation and Distribution Trust as a liquidating trust for federal income tax purposes, and (iii) such extension is obtained within the six (6) month period prior to the Litigation and Distribution Trust's fifth (5th) anniversary or the end of the immediately preceding extension period, as applicable. Upon dissolution of the Litigation and Distribution Trust, any remaining Cash on hand and other assets, with the exception of any Causes of Action will be distributed to the Litigation and Distribution Trust Beneficiaries in accordance with the Litigation and Distribution Trust Agreement. Upon the dissolution of the Litigation and Distribution Trust, all remaining Causes of Action shall be deemed void and abandoned and no Litigation and Distribution Trust Beneficiary shall have any right, title or interest in or to any such Cause of Action.

At such time as the Litigation and Distribution Trust has been fully administered (i.e., when all things requiring action by the Litigation and Distribution Trustee – including the liquidation of all Litigation and Distribution Trust Assets and the making of all distributions required under the Plan – have been done, and the Plan has been substantially consummated), the Liquidating Trustee shall file an application for approval of his final report and the entry of a final decree with the Bankruptcy Court.

**7.10    Taxes.**

For federal income tax purposes, (i) all parties (including, without limitation, the Debtor, the Litigation and Distribution Trustee, and the Litigation and Distribution Trust Beneficiaries) shall treat the Litigation and Distribution Trust as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684,

(ii) the transfer of Assets of the Debtor to the Litigation and Distribution Trust under the Plan shall be treated as a deemed transfer to the Litigation and Distribution Trust Beneficiaries in satisfaction of their Claims followed by a deemed transfer of the Litigation and Distribution Assets by the Litigation and Distribution Trust Beneficiaries to the Litigation and Distribution Trust, (iii) the Litigation and Distribution Trust Beneficiaries will be deemed to be the grantors and owners of the Litigation and Distribution Trust and its assets, and (iv) the Litigation and Distribution Trust will be taxed as a grantor trust within the meaning of sections 671-677 of the Internal Revenue Code owned by the Litigation and Distribution Trust Beneficiaries. The Litigation and Distribution Trust will file federal income tax returns as a grantor trust under Internal Revenue Code section 671 and Treasury Regulation section 1.671-4 and report, but not pay tax on, the Litigation and Distribution Trust's tax items of income, gain, loss deductions and credits ("Tax Items"). The Litigation and Distribution Trust Beneficiaries will report such Tax Items on their federal income tax returns and pay any resulting federal income tax liability. All parties will use consistent valuations of the Litigation and Distribution Trust Assets transferred to the Litigation and Distribution Trust for all federal income tax purposes. The Litigation and Distribution Trust Assets shall be valued based on the Litigation and Distribution Trustee's good faith determination of their fair market value.

The Litigation and Distribution Trustee may, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), (i) make an election pursuant to Treasury Regulation section 1.468B-9 to treat the LT Reserve(s) as a "disputed ownership fund" within the meaning of that section, (ii) allocate taxable income or loss to the LT Reserve(s), with respect to any given taxable year (but only for the portion of the taxable year with respect to which such Claims are Disputed Claims), and (iii) distribute assets from the LT Reserve(s) as, when, and to the extent, such Disputed Claims either become Allowed or are otherwise resolved. The Litigation and Distribution Trust Beneficiaries shall be bound by such election, if made by the Litigation and Distribution Trustee, in consultation with the Oversight Committee, and as such shall, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), report consistently therewith.

For federal and applicable state income tax purposes, all parties (including, without limitation, the Debtor, the Litigation and Distribution Trustee, and the Litigation and Distribution Trust Beneficiaries) shall treat the transfers of Litigation and Distribution Trust Assets to the Litigation and Distribution Trust in accordance with the terms of the Plan as a sale by the Debtor and/or its Estate of such Litigation and Distribution Trust Assets to the Litigation and Distribution Trust at a selling price equal to the fair market value of such Litigation and Distribution Trust Assets on the date of transfer. The Litigation and Distribution Trust shall be treated as the owner of all Litigation and Distribution Trust Assets that it holds.

For federal income tax purposes, except to the extent a Plan Distribution is made in connection with reinstatement of an obligation pursuant to section 1124 of the Bankruptcy Code, a Plan Distribution will be allocated first to the principal amount of a Claim and then, to the extent the Plan Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest and other fees, premiums and charges, as applicable.

# ARTICLE VIII.

## INJUNCTIONS, EXCULPATION AND LIMITATION ON LIABILITY

### 8.1    Term of Bankruptcy Injunction or Stays.

All injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

Except as otherwise provided in the Plan or the Confirmation Order, or to the extent necessary to enforce the terms and conditions of the Plan, the Confirmation Order, or a separate Order of the Bankruptcy Court, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against in the Debtor or the Estate are, with respect to any such Claims, permanently enjoined after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, the Estate, the Reorganized Debtor, or any of the assets of the Debtor or its Estate, whether remaining with the Reorganized Debtor or being transferred to the Litigation and Distribution Trust, or any successor to any of the foregoing Persons or any property of any such successor; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtor, the Estate, the Reorganized Debtor or any of the assets of the Debtor or its Estate, whether remaining with the Reorganized Debtor or being transferred to the Litigation and Distribution Trust, or any successor to any of the foregoing Persons or any property of any such successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Reorganized Debtor, the Estate or any of the assets of the Debtor or its Estate, whether remaining with the Reorganized Debtor or being transferred to the Litigation and Distribution Trust, or any successor to any of the foregoing Persons or any property of any such successor; (iv) commencing or continuing in any manner or in any place, any suit, action or other proceeding on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released, satisfied, or otherwise addressed pursuant to the Plan or the Confirmation Order, including, but not limited to, through the releases and exculpations provided under the Plan; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the fullest extent permitted by applicable law; and (vi) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of this Plan. Each holder of an Allowed Claim shall be deemed to have specifically consented to the injunctions set forth herein.

The foregoing injunctions shall extend for the benefit of the Litigation and Distribution Trustee, and any successors of the Debtor or the Reorganized Debtor, and to any property and interest in property subject to this Plan.

29

**8.2**     **Discharge**

Except as otherwise provided in the Plan or in the Confirmation Order, rights afforded in, and all consideration distributed under, this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtor or any of its assets or properties, except as to the Litigation and Distribution Trust Assets. Upon the Effective Date, Holdings shall be deemed discharged and released under section 1141(d)(l)(A) of the Bankruptcy Code from any and all Claims, including, without limitation, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Claim based upon such debt is Allowed under Section 501 of the Bankruptcy Code, or (b) a Claim based upon such debt is Allowed under Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based upon such debt accepted this Plan.

**8.3**     **Injunction.**

**FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATIONS GRANTED IN THIS PLAN, THE DEBTOR AND ALL PARTIES IN INTEREST SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION, OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN.**

**8.4**     **Exculpation.**

No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any claim, obligation, Cause of Action or liability for any claim in connection with or arising out of, the administration of the Chapter 11 Case, entry into the Litigation and Distribution Trust Agreement, the negotiation and pursuit of this Plan, or the solicitation of votes for, or confirmation of, this Plan, the funding of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, and the issuance of securities under or in connection with this Plan or the transactions contemplated by the foregoing, except for willful misconduct, gross negligence, or intentional fraud as determined by Final Order of the Bankruptcy Court, but in all respects such Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities pursuant to this Plan. The Exculpated Parties have participated in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of any securities pursuant to the Plan, and are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of securities thereunder.

**8.5**     **Limitation on Liability of Litigation and Distribution Trustee.**

The Litigation and Distribution Trustee will not be liable for any act he may do or omit to do as Litigation and Distribution Trustee under the Plan and the Litigation and Distribution Trust Agreement, as applicable, while acting in good faith and in the exercise of his reasonable business judgment; nor will the Litigation and Distribution Trustee be liable in any event, except for willful misconduct, gross negligence, or intentional fraud. The foregoing limitation on liability will also apply to any Person (including any professional) employed by the Litigation and Distribution Trustee and acting on behalf of the Litigation and Distribution Trust in the fulfillment of its respective duties hereunder or under the Litigation and Distribution Trust Agreement.

**8.6**     **D&O Claims and D&O Policies.**

For the avoidance of doubt, and notwithstanding anything to the contrary set forth in this Plan, including this Article VIII, no release, exculpation, injunction, or waiver set forth in this Plan shall apply to any D&O Claims (or claims relating to any D&O Policies) belonging to or pursuable by the Committee or the Litigation and Distribution Trust or Litigation and Distribution Trustee, and all such claims and related Causes of Action are expressly reserved and preserved as set forth in Section 6.3 above.

**ARTICLE IX.**

**PLAN DISTRIBUTION PROVISIONS**

**9.1**     **Plan Distributions.**

As set forth above, The Debtor or the Reorganized Debtor, as the case may be, shall make all Plan Distributions (or reserve for such Plan Distributions) to Unclassified Claims and Class 1 Claims due or pending as of the Effective Date. The Litigation and Distribution Trustee shall make all Plan Distributions in accordance with the Plan and the Litigation and Distribution Trust Agreement to Class 2 Claimants and shall U S Trustee fees accruing after the Effective Date. In the event a Plan Distribution shall be payable on a day other than a Business Day, such Plan Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due. Except as otherwise provided herein, Plan Distributions shall be made to the holders of Allowed Claims as reflected in the registry of claims maintained by the Debtor or the Litigation and Distribution Trustee on the Effective Date. **NO DISTRIBUTION SHALL BE MADE PURSUANT TO THIS PLAN TO A HOLDER OF A CLAIM UNLESS AND UNTIL SUCH CLAIM IS OR BECOMES AN ALLOWED CLAIM.** The Litigation and Distribution Trustee and its agents may, but shall have no obligation to, recognize any transfer of a Claim after the Effective Date.

**9.2**     **Timing of Plan Distributions.**

Each Plan Distribution shall be made on the relevant Plan Distribution Date therefor and shall be deemed to have been timely made if made on such date or within ten (10) days thereafter.

31

**9.3**      **Delivery of Plan Distributions and Undeliverable or Unclaimed Distributions.**

     9.3.1      _Delivery of Plan Distributions in General_. Subject to Bankruptcy Rule 9010, any Plan Distribution to a holder of an Allowed Claim shall be made at the last known address of such holder as set forth (i) in the Schedules, (ii) on the proof of Claim filed by such holder, (iii) in any notice of transfer of claim filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e) or (iv) in any notice served by such holder giving details of a change of address.

     9.3.2      _Undeliverable and Unclaimed Plan Distributions._

     a.      _General_. None of the Debtor, the Reorganized Debtor, or the Litigation and Distribution Trustee, as the case may be, shall have a duty to make distributions to any holder of an Allowed Claim with an undeliverable address as determined by any undeliverable or returned notice to the Debtor, the Reorganized Debtor, or the Litigation and Distribution Trustee, as the case may be, unless and until the Debtor, the Reorganized Debtor, or the Litigation and Distribution Trustee, as the case may be, is notified in writing of such holder's then-current address prior the Plan Distribution Date. If the distribution to any holder of an Allowed Claim is returned to the Debtor, the Reorganized Debtor, or the Litigation and Distribution Trustee, as the case may be, as undeliverable or is otherwise unclaimed, no further Plan Distribution shall be made to such holder unless the Debtor, the Reorganized Debtor, or the Litigation and Distribution Trustee, as the case may be, is notified of such holder's then-current address within ninety (90) days after such Plan Distribution was returned. After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution, and the other holders of Allowed Claims in such holder's Class, if the Claim is a Class 2 Claim, shall receive a Pro Rata Share of such undeliverable or unclaimed Plan Distribution, free of any restrictions thereon. If the Claim is an Unclassified Claim or a Class 1 Claim, such forfeited amount shall be retained by the Reorganized Debtor, free of any restrictions.

     b.      _Non-Negotiated Checks_. Checks issued in respect of Allowed Claims shall be null and void if not presented within ninety (90) days after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Debtor, the Reorganized Debtor, or the Litigation and Distribution Trustee, as the case may be, by the holder of the Allowed Claim to whom such check was originally issued. Any claim in respect of such a voided check shall be made within ninety (90) days after the date of issuance of such check After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution, and the other holders of Allowed Claims in such holder's Class, if the Claim is a Class 2 Claim, shall receive a Pro Rata Share of such undeliverable or unclaimed Plan Distribution, free of any restrictions thereon. If the Claim is an Unclassified Claim or a Class 1 Claim, such forfeited amount shall be retained by the Reorganized Debtor, free of any restrictions.

**9.4**      **Plan Distributions Subject to Withholding and Reporting Requirements.**

     All Plan Distributions hereunder shall be subject to all withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities. Notwithstanding the above, each holder of an Allowed Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by

any government unit, including income, withholding and other tax obligations, on account of such Plan Distribution. The Debtor, the Reorganized Debtor, and the Litigation and Distribution Trustee have the right to withhold a Plan Distribution until such holder has made arrangements satisfactory to the Debtor, the Reorganized Debtor, or the Litigation and Distribution Trustee, as the case may be, for payment of any such tax obligations, including, without limitation, the provision by the holder of a Claim IRS Form W-9 and any other information determined by the Debtor, the Reorganized Debtor, or the Litigation and Distribution Trustee, as the case may be, to be necessary or appropriate to effect information reporting and tax withholding. If the Debtor, the Reorganized Debtor, or the Litigation and Distribution Trustee, as the case may be, has not received IRS Form W-9 or other requested tax reporting information from the holder of a Claim before the relevant Plan Distribution Date, any property or Cash to be distributed pursuant to this Plan shall, pending receipt of IRS Form W-9 or such other requested information, be treated as an unclaimed distribution under this Plan, as set forth in Section 9.3.2.

**9.5    Manner of Payment Under the Plan.**

Unless the Person receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank. Cash payments to foreign creditors may, in addition to the foregoing, be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**9.6    Minimum Distributions.**

If the amount of Cash to be distributed to the holder of an Allowed Claim is less than fifty dollars ($50.00) on a Plan Distribution Date, the Litigation and Distribution Trustee may hold the Cash distributions to be made to such Holder until the aggregate amount of Cash to be distributed to such Holder is in an amount equal to or greater than $50. Notwithstanding the preceding sentence, if the amount of Cash distribution to any Holder of an Allowed Claim never aggregates more than $50, then the Litigation and Distribution Trustee shall not be required to distribute Cash to any such holder, and the resultant funds shall revert to the Litigation and Distribution Trust and distributed Pro Rata to other holders of Allowed Class 2 Claims.

**9.7    Rounding.**

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent, with one-half cent being rounded up to the nearest whole cent.

**9.8    Settlement of Claims and Controversies.**

Pursuant to sections 363 and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of such Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims and controversies, as well as a finding by the

Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate and holders of Claims and is fair, equitable and reasonable.

**9.9 Setoffs and Recoupments.**

The Litigation and Distribution Trustee may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, exercise the right of setoff or recoupment against any Allowed Class 2 Claim and the distributions to be made pursuant to the Plan on account of such Claim (before distribution is made on account of such Claim) of the claims, rights and causes of action of any nature that the Debtor may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Litigation and Distribution Trustee of any such claims, rights and causes of action that the Litigation and Distribution Trust may possess against such holder.

**9.10 Claims Paid or Payable by Third Parties.**

(a) Claims Paid by Third Parties

The Debtor shall reduce in full a Claim, and such Claim shall be Disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor. To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such holder shall, within two weeks of receipt thereof, repay or return the distribution to the Litigation and Distribution Trust to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the Allowed amount of such Claim

(b) Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable by a third party, including pursuant to one of the Debtor's Insurance Policies, until the holder of such Allowed Claim has exhausted all remedies with respect to such third party or Insurance Policy. To the extent that one or more of the Debtor's insurers or another third party agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Court.

# ARTICLE X.

## PROCEDURES FOR RESOLVING
## AND TREATING CONTESTED CLAIMS

**10.1    Claim Objection Deadline.**

Objections to Class 2 Claims shall be filed by the Litigation and Distribution Trustee with the Bankruptcy Court and served upon the holders of each of the Claims to which objection is made within 180 days after the Effective Date of this Plan. The time period for filing objections to Claims shall automatically renew for successive periods of 180 days each until the earlier of (i) the date upon which all Claims have been Allowed or Disallowed or (ii) the date fixed by the Court upon motion of the Litigation and Distribution Trustee or a holder of a Claim. Objections to Class 1 Claims shall be filed by the Debtor on or before the Effective Date of the Plan; and objections to Administrative Expense Claims shall be filed by the Debtor within 60 days of the Effective Date or as otherwise provided for by the Bankruptcy Court's Local Rules applicable to the hearing on such Holder's motion or application for Allowance of Administrative Expense Claim.

**10.2    Prosecution of Contested Claims.**

After the Effective Date, the Litigation and Distribution Trustee may (i) prosecute any objection to a Class 2 Claim filed by the Debtor prior to the Effective Date and (ii) object to the allowance of Class 2 Claims filed with the Bankruptcy Court before, on or after the Effective Date with respect to which liability is Contested. All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 10.3.

**10.3    Claims Settlement.**

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Litigation and Distribution Trustee shall have authority to settle or compromise all Claims and Causes of Action without further review or approval of the Bankruptcy Court.

**10.4    Entitlement to Plan Distributions upon Allowance.**

Notwithstanding any other provision of the Plan, except as otherwise agreed by the Litigation and Distribution Trustee, no Plan Distribution shall be made with respect to any Claim to the extent it is a Contested Claim, unless and until such Contested Claim becomes an Allowed Claim, subject to the setoff rights as provided in Section 9.9. When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when) the holder of such Allowed Claim shall thereupon become entitled to receive the Plan Distributions in respect of such Claim, the same as though such Claim had been an Allowed Claim on the Effective Date.

**10.5    Estimation of Claims.**

The Litigation and Distribution Trustee may, at any time, request that the Bankruptcy Court estimate any Contested Claim pursuant to section 502(c) of the Bankruptcy Code regardless of

whether the Litigation and Distribution Trustee or the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Contested Claim, that estimated amount will constitute the Allowed amount of such Claim for all purposes under the Plan. All of the objection, estimation, settlement and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**ARTICLE XI.**

**CONDITIONS PRECEDENT TO**
**CONFIRMATION OF THE PLAN AND**
**THE OCCURRENCE OF THE EFFECTIVE DATE**

**11.1     Conditions Precedent to Confirmation.**

The following shall be conditions precedent to confirmation of the Plan:

(a)     the Bankruptcy Court shall have entered an Order or Orders (i) approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, (ii) authorizing the solicitation of votes with respect to the Plan, (iii) determining that all votes are binding and have been properly tabulated as acceptances or rejections of the Plan, (iv) confirming and giving effect to the terms and provisions of the Plan, (vi) determining that all applicable tests, standards and burdens in connection with the Plan have been duly satisfied and met by the Debtor and the Plan, (vii) approving the Plan Documents and (viii) authorizing the Debtor to execute, enter into and deliver the Plan Documents, and to execute, implement and to take all actions otherwise necessary or appropriate to give effect to the transactions and transfer or revesting of Assets contemplated by the Plan and the Plan Documents;

(b)     the Confirmation Order, the Plan Documents and the Plan are each in a form and substance satisfactory to the Debtor; and

(c)     the Confirmation Order shall include determinations that all of the settlements and compromises contained in the Plan meet the applicable standards under section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 for approval and implementation.

**11.2     Conditions Precedent to the Occurrence of the Effective Date.**

The following shall be conditions precedent to the occurrence of the Effective Date with respect to the Debtor's Estate:

(a)     the Confirmation Order shall have been entered by the Bankruptcy Court, be in full force and effect and not be subject to any stay or injunction;

(b)     the Litigation and Distribution Trustee shall have accepted, in writing, the terms of his service and compensation, and such terms and compensation shall have been approved by the Bankruptcy Court in the Confirmation Order;

(c)     the Litigation and Distribution Trust shall have been established;

(d)     the Debtor shall have obtained and placed in escrow the $4 million to fund the Guaranteed Minimum Payment to be paid to the Litigation and Distribution Trust from the Exit Facility lender(s); and,

(e)     all necessary consents, authorizations and approvals shall have been given for the transfers or revestings of property and the payments provided for or contemplated by the Plan and the Plan Documents, including, without limitation, satisfaction or waiver of all conditions to the obligations of the Debtor under the Plan and the Plan Documents.

**11.3    Waiver of Conditions.**

The Debtor may waive any one or more of the conditions set forth in Section 11.1 or Section 11.2 in a writing without notice or order of the Bankruptcy Court and without notice to any other parties in interest.

**11.4    Effect of Non-Occurrence of the Effective Date.**

If the Effective Date shall not occur (except as provided in Section 11.5 hereof), the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or Equity Interests in the Debtor; (b) prejudice in any manner the rights of the Debtor, including, without limitation, any right to seek propose a new plan; or (c) constitute an admission, acknowledgement, offer or undertaking by the Debtor.

**ARTICLE XII.**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**12.1    Assumption and Rejection of Executory Contracts and Unexpired Leases.**

(a)     On the Effective Date, except to the extent inconsistent with Section 14.5, all executory contracts and unexpired leases of the Debtor shall be rejected pursuant to the provisions of section 365 of the Bankruptcy Code, except: (i) any executory contracts and unexpired leases that are the subject of separate motions to reject, assume or assume and assign filed pursuant to section 365 of the Bankruptcy Code by the Debtor before the entry of the Confirmation Order; (ii) agreements with third parties regarding preservation of the confidentiality of documents produced by the Debtor. Any Order entered post-confirmation by the Bankruptcy Court, after notice and a hearing, authorizing the rejection of an executory contract or unexpired lease shall cause such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered pre-confirmation.

(b)     Receipt of this Plan by the counterparties to the executory contracts and unexpired leases of the Debtor rejected pursuant to Section 12.1(a) shall constitute adequate and sufficient

notice that (i) any Claims arising under the contract, lease or other agreement or related thereto shall be treated under the Plan as General Unsecured Claims as against the Debtor that was a party to the contract, lease or other agreement, and (ii) the Debtor is no longer bound by, or otherwise obligated to perform, any such obligations, transactions, or undertakings relating thereto or arising thereunder.

(c)  The Plan shall constitute a motion to reject such executory contracts and unexpired leases rejected pursuant to this section, and the Debtor shall have no liability thereunder except as is specifically provided in the Plan.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected agreement, executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtor and its estate.

## 12.2  Claims Arising from Rejection, Expiration or Termination.

Claims created by the rejection of executory contracts and unexpired leases pursuant to this Plan must be filed with the Bankruptcy Court no later than thirty (30) days after the Confirmation Date.  **Any such Claims for which a proof of claim is not filed and served by the deadlines set forth above will be forever barred from assertion and shall not be enforceable against the Debtor and the Estate**.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan subject to objection by the Litigation and Distribution Trustee.

## ARTICLE XIII.

## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Case or the Plan or (c) that relates to the following:

(i)  to hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article XII hereof for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable;

(ii)  to hear and determine any and all Claims and any related disputes, including, without limitation, the exercise or enforcement of setoff or recoupment rights, or rights against any third party or the property of any third party resulting therefrom or from the expiration, termination or liquidation of any executory contract or unexpired lease;

(iii)  to determine any and all adversary proceedings, applications, motions and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Litigation and Distribution Trustee after the Effective Date;

(iv)  to hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without express or implied

limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow or estimate any Contested Claim in whole or in part;

(v)     to issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

(vi)     to consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(vii)     to hear and determine all Fee Applications and applications for allowances of compensation and reimbursement of any other fees and expenses authorized to be paid or reimbursed under the Plan or the Bankruptcy Code;

(viii)     to hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with the Plan, the Litigation and Distribution Trust Agreement, and any other Plan Documents or their interpretation, implementation, enforcement or consummation;

(ix)     to hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with the Confirmation Order (and all exhibits to the Plan) or its interpretation, implementation, enforcement or consummation;

(x)     to resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Case, the Bar Dates, the hearing on the approval of the Disclosure Statement as containing adequate information, the hearing on the confirmation of the Plan for the purpose of determining whether a Claim is discharged hereunder or for any other purpose;

(xi)     to the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or Cause of Action by, on behalf of or against the Estate;

(xii)     to determine such other matters that may be set forth in the Plan or the Confirmation Order, or that may arise in connection with the Plan or the Confirmation Order;

(xiii)     to hear and determine matters concerning state, local and federal taxes, fines, penalties or additions to taxes for which the Debtor may be liable in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(xiv)     to hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with any setoff and/or recoupment rights of the Debtor, Litigation and Distribution Trustee or any Person under the Plan;

(xv)     to hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with Causes of Action of the Debtor (including Avoidance Actions) commenced by the Litigation and Distribution Trustee, the Debtor, or any third parties, as applicable, before or after the Effective Date;

(xvi)     to enter an order or final decree closing the Chapter 11 Case;

(xvii)   to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order; and

(xviii)   to hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code.

**ARTICLE XIV.**

**MISCELLANEOUS PROVISIONS**

**14.1    Satisfaction of Claims.**

(a)    Subject to the occurrence of the Effective Date, as of the Effective Date, except as provided in the Plan, the distributions and rights afforded under the Plan and the treatment of Claims and Equity Interests under the Plan shall be in exchange for and in complete satisfaction of all Claims against the Debtor.  Except as otherwise specifically provided in the Plan, as of the Effective Date any interest accrued on Claims against the Debtor from and after the Petition Date shall be cancelled.

(b)    Subject to the occurrence of the Effective Date, as of the Effective Date, except as provided in the Plan, all Persons shall be precluded from asserting against the Debtor, the Reorganized Debtor, the Litigation and Distribution Trustee or their respective successors or property, any other or further Claims, debts, rights, Causes of Action, liabilities or Equity Interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date, including any Claims or Equity Interests that are not placed in a Class under the Plan.

**14.2    Special Provisions Regarding Insurance Policies and Insured Claims.**

14.2.1    Insurance Policies.  For the avoidance of doubt, the Debtor's and Estate's rights with respect to all Insurance Policies (including all Insurance Policies that may have expired prior to the Petition Date, all Insurance Policies in existence on the Petition Date, and all Insurance Policies under which the Debtor holds rights to make, amend, prosecute and benefit from claims) shall be deemed be transferred to the Litigation and Distribution Trust from the Effective Date until its dissolution.

Notwithstanding anything to the contrary in the Plan, any Insurance Policy in effect as of the Effective Date shall continue in effect after the Effective Date pursuant to its terms and conditions.  Nothing in the Plan shall relieve any insurer from performing its obligations under the Insurance Policies, regardless of whether such obligations arise prior to or after the Effective Date.

Notwithstanding any default by the Debtor with respect to any of the Insurance Policies, nothing in this Plan shall be construed or applied to modify, impair, or otherwise affect the enforceability of the Insurance Policies or any coverage thereunder with regard to any claims or Causes of Action.  The Plan shall be liberally construed to protect the interests of all creditors in all Causes of Action and to limit any Claims against the Estate.

14.2.2    Insured Claims shall be satisfied from the proceeds of any applicable Insurance Policy.  Insured Claims are not classified and, pursuant to Section 9.10(b), are not entitled to any distributions under the Plan until the relevant holder has exhausted all remedies with respect to the applicable Insurance Policy.  To the extent an Insured Claim is not satisfied in full from the proceeds of the applicable Insurance Policy, any Claim remainder shall be classified in the applicable Class under the Plan and, if allowed, treated in accordance with the treatment of Claims in that Class under the Plan.  Nothing in this Section 14.3.2 shall constitute a waiver of any claim, right or cause of action the Debtor or the Estate may hold against any Person, including any insurer. Pursuant to section 524(e) of the Bankruptcy Code, nothing in the Plan shall release or discharge any insurer from any obligations to any Person under applicable law or any policy of insurance under which the Debtor is an insured or beneficiary or for purposes of any insurance recovery.

**14.3    Third Party Agreements; Subordination.**

The Plan Distributions to the various classes of Claims hereunder shall not affect the right of any Person to levy, garnish, attach or employ any other legal process with respect to such Plan Distributions by reason of any claimed subordination rights or otherwise.  All such rights and any agreements relating thereto shall remain in full force and effect, except as otherwise compromised and settled pursuant to the Plan.

Plan Distributions shall be subject to and modified by any Final Order directing distributions other than as provided in the Plan.  The right of the Debtor or the Litigation and Distribution Trustee to seek subordination of any Claim pursuant to section 510 of the Bankruptcy Code is fully reserved, and the treatment afforded any Claim that becomes a subordinated Claim at any time shall be modified to reflect such subordination.  Unless the Confirmation Order provides otherwise, no Plan Distributions shall be made on account of a subordinated Claim.

**14.4    Service of Documents.**

Any notices, requests and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

if to the Debtor:

**STEFFES VINGIELLO & McKENZIE, LLC**
13702 Coursey Blvd., Bldg. 3
Baton Rouge, Louisiana 70817
Attn: William E. Steffes

**14.5    Headings.**

The headings used in the Plan are inserted for convenience only, and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

41

**14.6** **Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Louisiana, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents.

**14.7** **Exemption from Transfer Taxes.**

Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under or in connection with the Plan, including the creation of any mortgage, deed of trust, lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax. To effectuate the terms of this Section, the Bankruptcy Court may enter any order necessary or appropriate to implement this provision of the Plan.

**14.8** **Notice of Entry of Confirmation Order and Relevant Dates.**

Promptly upon entry of the Confirmation Order, the Debtor shall serve on all known parties in interest and holders of Claims and Equity Interests, notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan, including, but not limited to, the deadline for filing rejection damage Claims.

**14.9** **Interest and Attorneys' Fees.**

Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in this Plan, the Confirmation Order, or as otherwise required by the Bankruptcy Court or by applicable law. No award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim, except as set forth in the Plan or as ordered by the Bankruptcy Court.

**14.10** **Modification of the Plan.**

As provided in section 1127 of the Bankruptcy Code, modification of the Plan may be proposed in writing by the Debtor at any time before confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code. The Debtor may modify the Plan at any time after confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications. A holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

**14.11** **Revocation of Plan.**

The Debtor reserves the right to revoke and withdraw the Plan and/or to adjourn the Confirmation Hearing prior to the occurrence of the Effective Date. If the Debtor revokes or withdraws the Plan, or if the Effective Date does not occur, then the Plan and all settlements and compromises set forth in the Plan and not otherwise approved by a separate Final Order shall be deemed null and void and nothing contained herein and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims against or Equity Interests in the Debtor or to prejudice in any manner the rights of the Debtor or any other Person in any other further proceedings involving the Debtor.

**14.12** **Compliance with Tax Requirements.**

In connection with the Plan, the Debtor and the Litigation and Distribution Trustee, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities.

**14.13** **Binding Effect.**

The Plan shall be binding upon the Debtor, the holders of all Claims and Equity Interests, parties in interest, Persons and their respective successors and assigns. Except as specifically provided in the Plan, to the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of the Plan, the terms of the Plan shall be binding and conclusive.

**14.14** **Rates.**

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date. Where a Claim has been denominated in foreign currency on a proof of Claim, the Allowed amount of such Claim shall be calculated in legal tender of the United States based upon the conversion rate in place as of the Petition Date and in accordance with section 502(b) of the Bankruptcy Code.

**14.15** **Extensions of Time.**

For cause shown, any deadlines herein which are applicable to the Debtor, its Estate, or the Litigation and Distribution Trust and which are not otherwise specifically extendable as provided in the Plan may be extended by the Bankruptcy Court.

**14.16**  **No Admissions.**

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER PROCEEDINGS CONCERNING CAUSES OF ACTION OR THREATENED CAUSES OF ACTION, THIS PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS PLAN SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES AND OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTOR IN THE CHAPTER 11 CASE.

Dated:  March 14, 2018                    Respectfully submitted,

                                           First NBC Bank Holding Company, Debtor

                            By: /s/  Lawrence Blake Jones
                                    Name:  Lawrence Blake Jones
                                    Title:   Chief Restructuring Officer

# EXHIBIT B

## Disclosure Statement Order

# SCHEDULE 1

## LIQUIDATION ANALYSIS

*In re First NBC Bank Holding Company*, Case No. 17-11213

# Liquidation Analysis

|  | **Chapter 11 Plan** | **Chapter 7 Liquidation** |
|---|---|---|
| **ASSETS** | | |
| Cash on Hand as of Effective Date | $1,500,000 | $1,500,000 |
| Guaranteed Minimum Payment | $4,000,000 | $   0 |
| Proceeds from Potential Litigation Claims of Debtor | unknown | unknown |
| Tax Attributes[1] | n/a | $   0 |
| **Total Assets** Available for Distribution | **$5,500,000+** | **$1,500,000+** |
| Less Trustee and/or Professional Fees[2] | ($500,000) | ($672,000) |
| **Total Available Funds** | **$5,000,000** | **$828,000** |
| | | |
| **CREDITOR CLAIMS** | | |
| Priority Tax Claims | $    80,000 | $  80,000 |
| Priority NQDC Claims | $    83,121 | $  83,121 |
| **Total Available for Unsecured** | $4,836,879 | $664,879 |
| | | |
| Estimated General Unsecured Claims[4] | $66,405,000 | $66,405,000 |
| **Estimated Recovery for Unsecured Creditors** | **7%+** | **1%+** |

---

[1]Because Tax Attributes will be revest in the Reorganized Debtor and are not included in distributions contemplated under the Plan, their value is not included in this Liquidation Analysis. They have no value in Chapter 7 liquidation.

## First NBC Bank Holding Company

## Liquidation Analysis Assumptions

1. Trustee and/or Professional Fees – The amount shown for the Chapter 11 scenario is the Debtor's best estimate of amounts due to professionals engaged in the Chapter 11 case by the Debtor and the Committee.  The amount shown for the Chapter 7 scenario includes the fee amounts estimated for the Chapter 7 Trustee; the Chapter 11 (as earned and entitled to priority) professional fees; plus an additional $100,000 as estimated fees and expenses for professionals who would likely be retained by a Chapter 7 Trustee to assist in the liquidation of the estate, including attorneys, certified public accountants, and real estate brokers.

2. Proceeds from Potential Litigation Claims - The value of the Litigation Claims will be the same under the Plan and in a Chapter 7 Case and could range from $0 to $60,000,000.