**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FIRST NBC BANK HOLDING COMPANY | ) | Case No. 17-11213 |
|  | ) |  |
| Debtor | ) | Section A |
|  | ) |  |

---

**AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**FOR FIRST NBC BANK HOLDING COMPANY**

---

| | |
|---|---|
| Dated: June 21, 2019<br><br>**THE STEFFES FIRM, LLC**<br>William E. Steffes, Esq.<br>bsteffes@steffeslaw.com<br>Barbara B. Parsons<br>bparsons@steffeslaw.com<br>13702 Coursey Blvd., Bldg. 3<br>Baton Rouge, Louisiana 70817<br>(225) 751-1751<br>(225) 751-1998  Facsimile<br>*Counsel to the Debtor* | **JEFFREY D. STERNKLAR, LLC**<br>Jeffrey D. Sternklar<br>26th Floor<br>225 Franklin Street<br>Boston, MA 02110<br><br>and<br><br>**STEWART, ROBBINS & BROWN, LLC**<br>Paul Douglas Stewart, Jr.<br>dstewart@stewartrobbins.com<br>Brandon Brown<br>bbrown@stewartrobbins.com<br>301 Main Street, Suite 1640<br>P. O. Box 2348<br>Baton Rouge, LA 70821-2348<br><br>*Co-Counsel to the Official Committee of Unsecured Creditors* |

# TABLE OF CONTENTS

**Page**

**INTRODUCTION**…………………………………………………………………………1
**ARTICLE I. <u>DEFINITIONS; RULES FOR INTERPRETATION</u>**........................................ 3
    1.1     Definitions.......................................................................................................... 3
    1.2     Rules for Interpretation. ................................................................................. 13
    1.3     Computation of Time. .................................................................................... 13
    1.4     Appendices and Plan Documents................................................................... 13
**ARTICLE II. <u>TREATMENT OF ADMINISTRATIVE,  PRIORITY TAX, AND UNCLASSIFIED CLAIMS</u>**........................................................................................ 14
    2.1     Treatment of Administrative Expense Claims. .............................................. 14
    2.2     Treatment of Quarterly Fees. ......................................................................... 16
    2.3     Treatment of Priority Tax Claims. ................................................................. 16
**ARTICLE III. <u>CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS</u>**................. 16
    3.1     General. .......................................................................................................... 16
    3.2     Classification of Claims and Equity Interests ............................................... 16
    3.3     Treatment of Claims Against and Equity Interests in the Debtor. ................. 17
**ARTICLE IV. <u>IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND EQUITY INTERESTS</u>** ............................................................................................... 19
    4.1     Unimpaired Classes of Claims and Equity Interests...................................... 19
    4.2     Impaired Classes of Claims and Equity Interests. ......................................... 19
    4.3     Impairment Controversies............................................................................... 19
**ARTICLE V. <u>ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS</u>**. 19
    5.1     Classes Entitled to Vote and Default Options............................................... 19
    5.2     Acceptance by an Impaired Class of Claims and Equity Interests. .............. 19
    5.3     Confirmability and Severability of this Plan. ................................................ 20
**ARTICLE VI. <u>MEANS FOR IMPLEMENTATION OF THE PLAN</u>**................................ 20
    6.1     First Round Investment and Exit Facility. .................................................... 20
    6.2     Senior Debt and Subordinated Debt of the Reorganized Debtor................... 21
    6.3     Establishment of the Administrative Expense and Priority Reserve ............ 21
    6.4     Establishment of the Special Purpose Vehicle............................................... 22
    6.5     Dispostion of Legacy Subordinated Notes .................................................... 22
    6.6     Debt Option Limitations for Class 2 Claim Treatment.................................. 22

6.7     Corporate Action....................................................................................... 23

6.8     Preservation of Causes of Action……………...…………………………….…...24

6.9     Establishment of the Litigation and Distribution Trust and Appointment of the Litigation and Distribution Trustee............................................................ 27

6.10    Vesting of the Tort Claims and Insurance Policies…………….…………………..27

6.11    Sources of Cash for Plan Distributions…...…………………………………….…..27

6.12    Continued Corporate Existence and Vesting of Assets in the Debtor...………………27

6.13    Cancellation of Instruments……………………………………………………….…28

6.14    Amendment of Indenture and Preservation of Trustee Rights…………………….…29

6.15    Dissolution of the Committee……………………………………………………….29

6.16    Delisting of Stock……………………………………………………………….…..29

**ARTICLE VII. <u>THE LITIGATION AND DISTRIBUTION TRUST</u>**................................. 30

7.1     Establishment of Litigation and Distribution Trust. ..................................... 30

7.2     Execution of the Litigation and Distribution Trust Agreement. .................. 30

7.3     Litigation and Distribution Trust Assets................................................... 30

7.4     Governance of Litigation and Distribution Trust....................................... 31

7.5     Litigation and Distribution Trustee........................................................... 31

7.6     Oversight Committee. ................................................................................ 34

7.7     Special Governance Provisions Regarding Prosecution and Settlement of Causes of Action……..................................................................................... 37

7.8     Indemnification. ......................................................................................... 37

7.9     LT Reserves ................................................................................................ 38

7.10    Discharge of Litigation and Distribution Trustee and Dissolution………………..….38

7.11    Taxes……………………………………………………………………….….…39

**ARTICLE VIII. <u>INJUNCTIONS, EXCULPATION AND LIMITATION ON LIABILITY</u>** ................................................................................................. 40

8.1     Term of Bankruptcy Injunction or Stays. ................................................. 40

8.2     Discharge……………………………………………………………..…………41

8.3     Injunction. ................................................................................................. 41

8.4     Exculpation. .............................................................................................. 42

8.5     Limitation on Liability of Litigation and Distribution Trustee.................... 42

8.6     D&O Claims and D&O Policies..…………………………………………………42

8.7     SEC Rights Preserved……………………………………………………………42

**ARTICLE IX. <u>PLAN DISTRIBUTION PROVISIONS</u>**............................................ 43

9.1     Plan Distributions........................................................................................ 43

9.2     Timing of Plan Distributions. ........................................................................ 43

9.3     Delivery of Plan Distributions and Undeliverable or Unclaimed Distributions. .......... 43

9.4     Plan Distributions Subject to Withholding and Reporting Requirements. ................... 44

9.5     Manner of Payment Under the Plan. ............................................................... 45

9.6     Rounding. ........................................................................................... 45

9.7     Settlement of Claims and Controversies. ....................................................... 45

9.8     Setoffs and Recoupments…………....……………………………………………45

**ARTICLE X. <u>PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS</u>** .................................................................................................. 45

10.1    Claim Objection Deadline. ......................................................................... 45

10.2    Prosecution of Contested Claims. ................................................................. 46

10.3    Claims Settlement. ................................................................................. 46

10.4    Entitlement to Plan Distributions upon Allowance. ............................................ 46

**ARTICLE XI. <u>CONDITIONS PRECEDENT TO  CONFIRMATION OF THE PLAN AND THE OCCURRENCE OF THE EFFECTIVE DATE</u>** ................................................. 46

11.1    Conditions Precedent to Confirmation. ........................................................... 46

11.2    Conditions Precedent to the Occurrence of the Effective Date. ................................ 47

11.3    Waiver of Conditions. ............................................................................. 47

11.4    Effect of Non-Occurrence of the Effective Date. ............................................... 48

**ARTICLE XII. <u>TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>** ............................................................................................... 48

12.1    Assumption and Rejection of Executory Contracts and Unexpired Leases. ................ 48

12.2    Claims Arising from Rejection, Expiration or Termination. .................................. 49

**ARTICLE XIII. <u>RETENTION OF JURISDICTION</u>** ............................................... 49

**ARTICLE XIV. <u>MISCELLANEOUS PROVISIONS</u>** .............................................. 45

14.1    Satisfaction of Claims. ............................................................................. 51

14.2    Special Provisions Regarding Insurance Policies and Insured Claims. ...................... 51

14.3    Third Party Agreements; Subordination. ........................................................ 52

14.4    Service of Documents. ............................................................................. 52

14.5    Headings. ........................................................................................... 53

14.6    Governing Law. ..................................................................................... 53

14.7    Exemption from Transfer Taxes. ................................................................. 53

14.8    Notice of Entry of Confirmation Order and Relevant Dates. .................................. 53

14.9    Interest and Attorneys' Fees. ..................................................................... 54

14.10   Modification of the Plan. ........................................................................... 54

iv

14.11    Revocation of Plan. ................................................................................................ 54

14.12    Compliance with Tax Requirements. ....................................................................... 54

14.13    Binding Effect. ......................................................................................................... 54

14.14    Rates. ........................................................................................................................ 55

14.15    Extensions of Time. ................................................................................................. 55

14.16    No Admissions. ........................................................................................................ 55

## INTRODUCTION

First NBC Bank Holding Company and the Committee (collectively, the "Plan Proponents") hereby propose the following chapter 11 plan of reorganization for the resolution of all outstanding Claims against and Equity Interests in the Debtor in this Chapter 11 Case.

Reference is made to the Disclosure Statement for a discussion of the Debtor's history, business, properties and operations, risk factors, a summary and analysis of this Plan, and certain related matters.  Subject to certain restrictions and requirements set forth herein, including, without limitation, Sections 14.11 and 14.12 of this Plan, and in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Proponents reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation in accordance with the terms hereof, the Confirmation Order, and the Bankruptcy Code.

**TRANSMITTED WITH THIS PLAN IS A COPY OF THE DISCLOSURE STATEMENT REQUIRED BY SECTION 1125 OF THE BANKRUPTCY CODE (TOGETHER WITH ITS EXHIBITS, AND AS AMENDED FROM TIME TO TIME, THE "DISCLOSURE STATEMENT").  THE PLAN PROPONENTS URGE ALL CLAIMANTS AND OTHER PARTIES IN INTEREST TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY.  NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND ANY DOCUMENTS, SCHEDULES, EXHIBITS OR LETTERS ATTACHED THERETO OR REFERENCED THEREIN HAVE BEEN AUTHORIZED BY THE PLAN PROPONENTS OR THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THIS PLAN IS 5:00 P.M., CENTRAL TIME, _____, 2019 UNLESS EXTENDED BY ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF LOUISIANA.**

**THE PLAN PROPONENTS BELIEVE THAT THIS PLAN WILL ENABLE THE LITIGATION AND DISTRIBUTION TRUST TO RECEIVE AND EFFICIENTLY LIQUIDATE CERTAIN ASSETS OF THE DEBTOR AS WELL AS THE GUARANTEED CASH PAYMENT AMOUNT FOR THE BENEFIT OF ITS CREDITORS WHILE PRESERVING ITS EQUITY INTERESTS AND THE DEBTOR ITSELF AS AN ONGOING VIABLE BUSINESS ENTITY AS THE REORGANIZED DEBTOR, THEREBY ACCOMPLISHING THE OBJECTIVES OF CHAPTER 11.  ADDITIONALLY, THE PLAN PROPONENTS BELIEVE THE PLAN PRESENTS THE MOST ADVANTAGEOUS OUTCOME FOR ALL THE DEBTOR'S CREDITORS AND EQUITY INTERESTS AND THAT, THEREFORE, CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF THE ESTATE.   THE PLAN PROPONENTS RECOMMEND THAT CREDITORS VOTE TO ACCEPT THE PLAN.**

**BY ORDER DATED _____, 2019, THE BANKRUPTCY COURT APPROVED THE DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION TO PERMIT THE HOLDERS OF CLAIMS AGAINST THE DEBTOR TO MAKE REASONABLY INFORMED DECISIONS IN EXERCISING THEIR RIGHT**

1

TO VOTE ON THE PLAN.  APPROVAL OF THE DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT, HOWEVER, DOES NOT CONSTITUTE A DETERMINATION ON THE MERITS OF THIS PLAN.

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT OR THIS PLAN EXCEPT AS EXPRESSLY INDICATED THEREIN.  THE DISCLOSURE STATEMENT AND PLAN WERE COMPILED FROM INFORMATION OBTAINED BY THE PLAN PROPONENTS FROM NUMEROUS SOURCES AND ARE BELIEVED TO BE ACCURATE TO THE BEST OF THEIR KNOWLEDGE, INFORMATION AND BELIEF.  HOLDERS OF CLAIMS AND EQUITY INTERESTS MUST RELY ON THEIR OWN EXAMINATION OF THE DEBTOR AND THE TERMS OF THIS PLAN, INCLUDING WITH RESPECT TO THE MERITS AND RISKS INVOLVED.  FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND EQUITY INTERESTS, THE DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THIS PLAN.  IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE TERMS OF THIS PLAN ARE CONTROLLING.  THE DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE TO ACCEPT OR REJECT THIS PLAN. NOTHING STATED IN THE DISCLOSURE STATEMENT SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THIS PLAN ON THE DEBTOR OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED IN THE DISCLOSURE STATEMENT, BY THEIR NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS.  THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

SUMMARIES OF PROVISIONS OF AGREEMENTS REFERRED TO IN THIS PLAN AND THE DISCLOSURE STATEMENT DO NOT PURPORT TO BE COMPLETE, AND ARE SUBJECT TO AND QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO, THE FULL TEXT OF THE APPLICABLE AGREEMENT, INCLUDING THE DEFINITIONS OF TERMS CONTAINED IN SUCH AGREEMENT.

HOLDERS OF CLAIMS OR EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS PLAN OR THE DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE.  EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THIS PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

HOLDERS OF CLAIMS OR EQUITY INTERESTS AND OTHER THIRD PARTIES SHOULD BE AWARE THAT THIS PLAN CONTAINS INJUNCTIONS AND RELEASES THAT MAY MATERIALLY AFFECT THEIR RIGHTS.

# ARTICLE I.

## DEFINITIONS; RULES FOR INTERPRETATION

**1.1**    **Definitions.**

As used herein, capitalized terms shall have the respective meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1.1    <u>Administrative Bar Date</u> means May 13, 2019, the deadline to file proofs of claim in the Chapter 11 Cases with respect to Administrative Expense Claims other than Fee Claims.

1.1.2    <u>Administrative Expense Claim</u> means a Claim (other than a Claim included in a Class under this Plan) that is entitled to priority in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code or Order of the Bankruptcy Court, including, without limitation, (i) Claims incurred by the Debtor (or its Estate) on or after the Petition Date and before the Effective Date for the actual, necessary costs and expenses of preserving the Estate, including, without limitation, Fee Claims.

1.1.3    <u>Administrative Expense and Priority Reserve</u> means the Cash from the Estate reserved by the Debtor for the payment of all Unclassified Claims as set forth in Article II of the Plan and all Class 1 Claims as set forth in Article III of the Plan.

1.1.4    <u>Affiliate</u> shall have the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

1.1.5    <u>Allowed</u>, when used

i) with respect to any Claim, means such Claim to the extent it is not a Contested Claim or a Disallowed Claim; and

ii) with respect to Equity Interests in the Debtor, means the Equity Interests in such Debtor as reflected in the stock ledger or similar register of the Debtor as of the Effective Date.

For the avoidance of doubt, to the extent a Claim is not Allowed, such Claim is still subject to objection based upon any potentially applicable rights of avoidance, setoff, or subordination, and any other grounds or defenses.

For the further avoidance of doubt, any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an Order of the Bankruptcy Court shall not be considered "Allowed" under this Plan absent further Order of the Bankruptcy Court. Unless otherwise specified in this Plan or by Order of the Bankruptcy Court, "Allowed" Claims shall not, for the purposes of computation of distributions under the Plan, include interest on such Claims from and after the Petition Date.

3

1.1.6     Aggregate Settlement Amount means $4,250,000 in Cash reserved from the First Round Investment for Class 2 Claims and the Reorganized Debtor, as applicable.

1.1.7     Avoidance Actions means all Causes of Action of the Estate that arise under chapter 5 of the Bankruptcy Code, including under section 502, 542, 544, 545, 547, 548, 549, 550, 551, 552 and/or 553 of the Bankruptcy Code, and any other avoidance actions under the Bankruptcy Code or applicable non-bankruptcy law and the proceeds thereof and property received thereby whether by judgment, settlement, or otherwise.

1.1.8     Bankruptcy Code means the Bankruptcy Reform Act of 1978, as codified at title 11 of the United States Code, as amended from time to time and applicable to the Chapter 11 Case.

1.1.9     Bankruptcy Court means the United States Bankruptcy Court for the Eastern District of Louisiana.

1.1.10     Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code and any local rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

1.1.11     Bar Dates means the General Bar Date, the Administrative Bar Date, and any other applicable deadline to file a proof of claim in the Chapter 11 Case.

1.1.12     Bar Date Orders means the Order [Doc. 119] entered on September 1, 2017, which set the General Bar Date and the Order [Doc. 543] entered on April 2, 2019, which set the Administrative Bar Date.

1.1.13     Bondholder Claims means the Claims of the Indenture Trustee on behalf of itself and holders of the Legacy Subordinated Notes.

1.1.14     Bondholder Retained Interests means all of a Bondholder's rights, title and interests, on account of its Bondholder Claim, to Plan Distributions from the Litigation and Distribution Trust.

1.1.15     Bondholders means the holders of the Legacy Subordinated Notes.

1.1.16     Business Day means any day other than a Saturday, a Sunday, a "legal holiday" (as defined by Bankruptcy Rule 9006(a)), or any other day on which commercial banks are required or authorized to close for business in New York, New York.

1.1.17     Cash means legal tender of the United States of America or equivalents thereof, including, without limitation, payment in such tender by check, wire transfer or any other customary payment method.

1.1.18     Cash Option means the Class 2 Claim treatment option set forth in section 3.3.2(iii)(a) of the Plan.

1.1.19     Causes of Action means all claims, actions, causes of action, choses in action, liabilities, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills,

specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, foreseen, unforeseen, asserted, assertable directly or derivatively, arising in law, equity or otherwise, that exist and/or are or may be pending on the Effective Date, against any Person, whether asserted or unasserted as of the Effective Date that constitute "property of the Debtor's estate" as defined in 11 U.S.C. §541, including, without limitation: (i) the right to object to Claims and Equity Interests; (ii) all Avoidance Actions; and (iii) all Tort Claims. Any and all Causes of Action are preserved under the Plan,  provided, however, that nothing in this definition or within this Plan is intended to determine ownership of, or rights with respect to, claims and/or causes of action with respect to First NBC Bank or assets of First NBC Bank between the Debtor and/or the Liquidating Trustee as successor-in-interest under the Plan and the FDIC as Receiver for First NBC Bank.

1.1.20    Chapter 11 Case means the case commenced on the Petition Date by the Debtor in the Bankruptcy Court under chapter 11 of the Bankruptcy Code as Case No. 17-11213.

1.1.21    Claim shall have the meaning ascribed to such term in section 101(5) of the Bankruptcy Code.  For the avoidance of doubt, "Claim" includes, without limitation, a right to payment, or equitable relief that gives rise to a right to payment, that has or has not accrued under non-bankruptcy law that is created by one or more acts or omissions of the Debtor if: (a) the act(s) or omission(s) occurred before or at the time of the Effective Date; (b) the act(s) or omission(s) may be sufficient to establish liability when injuries/damages are manifested; and (c) at the time of the Effective Date, the Debtor have received one or more demands for payment for injuries or damages arising from such acts or omissions.

1.1.22    Claim Objection Deadline means the deadline for filing objections to Claims as set forth in Section 10.1 of this Plan.

1.1.23    Class means a category of Claims or Equity Interests set forth in Article III of this Plan, as such term is used and described in section 1122 and section 1123(a)(1) of the Bankruptcy Code.

1.1.24    Committee means the official committee of unsecured creditors appointed in the Chapter 11 Case by the U.S. Trustee pursuant to section 1102(a) of the Bankruptcy Code.

1.1.25    Confirmation Date means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

1.1.26    Confirmation Hearing means the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be continued from time to time.

1.1.27    Confirmation Order means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.1.28    Contested, when used

a) with respect to a Claim, means such Claim

i.    to the extent it is listed in the Schedules as disputed, contingent, or unliquidated, in whole or in part, and as to which no proof of claim has been filed;

ii.    if it is listed in the Schedules as undisputed, liquidated, and not contingent and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent (A) the proof of claim amount exceeds the amount indicated in the Schedules, or (B) the proof of claim priority differs from the priority set forth in the Schedules, in each case as to which an objection was filed on or before the Claim Objection Deadline, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court or the Plan;

iii.    if it is not listed in the Schedules or was listed in the Schedules as disputed, contingent or unliquidated, in whole or in part, but as to which a proof of claim has been filed with the Bankruptcy Court and as to which an objection was filed on or before the Claim Objection Deadline, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court or the Plan; or

iv.    as to which an objection has been or may be filed on or before the Claim Objection Deadline; provided, that a Claim that is fixed in amount and priority pursuant to the Plan or by Final Order on or before the Effective Date shall not be a Contested Claim; and

b) with respect to an Equity Interest, means such Equity Interest to the extent it is not reflected on the applicable Debtor's stock transfer register as of the Effective Date.

1.1.29    Debt Option means the Class 2 Claim treatment option provided for in section 3.3.2(iii)(b) of the Plan.

1.1.30    Debt Option Threshold means the aggregate amount of $30,000,000 in Class 2 Claims electing the Debt Option.

1.1.31    D&O Claims means any and all rights and claims against the Debtor's current and/or former directors and officers for pre-petition acts of whatever nature and the proceeds of any such claims, including any D&O Policies or other Insurance Policies associated therewith.

1.1.32    D&O Policies means any Insurance Policy insuring the Debtor's officers and/or directors, including the Financial Institutions Select Insurance Policy, Number DOP 9311203-04, issued by Zurich American Insurance Company, with a policy period of June 9, 2015 through December 31, 2016 and all excess liability insurance policies for the period of June 9, 2015 through December 31, 2016, including: (a) Continental Casualty Company, Policy No. 596594782, (b) Federal Insurance Company, Policy No. 8243-6165, (c) Great American Insurance Group, Policy No. DFX1491031, (d) Illinois National Insurance Company, Policy No. 01-415-73-85; and, the Officers and Corporate Liability Insurance Policy, Number 14-MGU-16-A39690, issued by U.S.

Specialty Insurance Company, with a policy period of December 31, 2016 through December 31, 2017 and any excess liability insurance policies for the period of December 31, 2016 through December 31, 2017, including: (a) US Specialty Insurance Company, Policy No. 14-MGU-16-A39694; (b) XL Specialty Insurance Company, Policy No. ELU148261-16; (c) Illinois National Insurance Company, Policy No. 06-473-18-11; (d) Freedom Specialty Insurance Company, Policy No. XMF1602583; (e) Markel American Insurance Company, Policy No. MKLM6EL0002907; (f) Berkshire Hathaway Specialty Insurance Company, Policy No. 47-EPF-303265-01; and, (g) Illinois National Insurance Company, Policy No. 06-481-51-29.

1.1.33    Debtor means First NBC Bank Holding Company prior to the occurrence of the Effective Date.

1.1.34    Debtor in Possession means the Debtor, in its capacity as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

1.1.35    Disallowed, when used with respect to a Claim or Equity Interest, means all or such part of a Claim or Equity Interest that has been disallowed or released by a Final Order, operation of law, written release or settlement, the provisions of this Plan, or otherwise, or withdrawn by the holder of the Claim or Equity Interest.

1.1.36    Disclosure Statement means the disclosure statement filed with respect to the Plan, as it may be amended, supplemented or otherwise modified from time to time, and the exhibits and schedules thereto.

1.1.37    Disclosure Statement Order means the order entered by the Bankruptcy Court (a) approving the Disclosure Statement as containing adequate information required under section 1125 of the Bankruptcy Code, and (b) authorizing the use of the Disclosure Statement for soliciting votes on the Plan.

1.1.38    Distribution Record Date means the record date for purposes of determining Bondholders eligible for Plan Distributions to Bondholders, which shall be the Confirmation Date; only holders of record as reflected on the registry maintained by the Registrar for the Legacy Subordinated Notes on the Confirmation Date shall be entitled to Plan Distributions.

1.1.39    Distribution Reserve means any reserve established by the Litigation and Distribution Trustee on account of Contested Claims of any Litigation and Distribution Trust Beneficiary which, if Allowed, would entitle such Litigation and Distribution Trust Beneficiary to a Plan Distribution.

1.1.40    Effective Date means a date selected by the Plan Proponents jointly which shall be a Business Day that is no later than three (3) days after all of the conditions specified in Section 11.2 have been satisfied or waived in accordance with Section 11.3 of this Plan.  Except as otherwise extended by the Court on motion of the Plan Proponents, the Effective Date shall in no event occur more than sixty (60) days after the Confirmation Date.

1.1.41    Equity Interest means (i) any outstanding ownership interest in any of the Debtor, including, without limitation, interests evidenced by common or preferred stock, membership interests, options, stock appreciation rights, restricted stock, restricted stock units or

7

their equivalents, or other rights to purchase or otherwise receive any ownership interest in the Debtor and any right to payment or compensation based upon any such interest, whether or not such interest is owned by the holder of such right to payment or compensation, and (ii) any Claim against the Debtor that is subordinated and has the same priority as common or preferred stock by operation of the Bankruptcy Code or any order entered by the Bankruptcy Court.

1.1.42   Estate means the estate of the Debtor created under section 541 of the Bankruptcy Code.

1.1.43   Estate Cash means all Cash of the Debtor and the Estate as of the Effective Date remaining after payment (or reserve for payment) of all Unclassified Claims as set forth in Article II of this Plan and Allowed Class 1 Claims as set forth in Article III of this Plan.

1.1.44   Exculpated Parties means all Persons that are or were at any time on or after the Petition Date, and whether or not any such Person currently retains such capacity or position, (i) the Debtor; (ii) the Committee or a member of the Committee, solely in its capacity as a Committee member; (iii) Professional Persons, to the extent such parties are or were acting in such capacity on behalf of any of the Persons identified in (i) or (ii) above on or after the Petition Date; and (iv) the Indenture Trustee.

1.1.45   Fee Application means an application for allowance and payment of a Fee Claim.

1.1.46   Fee Claim means a Claim of a Professional.

1.1.47   Final Order means an order or judgment of the Bankruptcy Court (or any other court or adjudicative body of competent jurisdiction) entered on the docket of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, motion for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or any other court or adjudicative body) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; provided, however, no order or judgment shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order.

1.1.48   First Round Investment means the $5,000,000 in Cash, held in an escrow account by the Debtor's bankruptcy counsel pursuant to the FRI Escrow Agreement, provided for purposes of Plan Distributions and future business operations of the Reorganized Debtor.

1.1.49   First Round Investors means the Persons who will fund the First Round Investment.

1.1.50   FNBC means First NBC Bank Holding Company

1.1.51     FRI Escrow Agreement means that certain agreement between the Debtor, the First Round Investors and the Committee governing use and availability of the First Round Investment, which shall be substantially in the form filed with the Bankruptcy Court as a Plan Document.

1.1.52     General Bar Date means October 20, 2017, the general deadline to file proofs of claim in the Chapter 11 Case (or November 7, 2017, with respect to governmental units) established by the General Bar Date Order.

1.1.53     General Unsecured Claim means any Claim against the Debtor, including any Bondholder Claim, which is not an Administrative Expense Claim (including Fee Claims), a fee payable pursuant to section 1930 of title 28 of the United States Code, a Priority Tax Claim, an Insured Claim, or a Priority NQDC Claim, and shall not include Disallowed Claims.

1.1.54     Indenture means that certain Indenture by and between U.S. Bank National Association, as Indenture Trustee, and FNBC, as Issuer, dated as of February 18, 2015, as amended.

1.1.55     Indenture Trustee means U.S. Bank National Association, as Indenture Trustee, under the Indenture.

1.1.56     Insider means a Person that would fall within the definition ascribed to such term in section 101(31) of the Bankruptcy Code.

1.1.57     Insurance Policies means, collectively, any policies of insurance coverage of any kind (including any and all amendments, endorsements, renewals, and extensions thereof) that at any time belonged or belong to or included or include the Debtor as a named insured, additional insured, or beneficiary, including, without limitation, the D&O Policies.

1.1.58     Internal Revenue Code means the Internal Revenue Code of 1986, as amended, codified at title 26 of the United States Code, together with any applicable rulings, regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, and notices, announcements and other releases of the United States Treasury Department or the IRS.

1.1.59     IRS means the Internal Revenue Service.

1.1.60     Legacy Subordinated Notes means those certain subordinated notes issued by FNBC on February 18, 2015 in a private placement offering in the aggregate principal amount of $60 million, with a maturity date of February 18, 2025 and bearing interest at a rate of 5.75% per annum, some or all of which were subsequently exchanged for identical new notes, registered under the Securities Act and generally not subject to transfer restrictions, all as more fully described in FNBC's filing of Form S-4 Registration Statement under the Securities Act on August 18, 2015.

1.1.61     Litigation and Distribution Trust means the trust established pursuant to Article VII of the Plan.

1.1.62    Litigation and Distribution Trust Agreement means the agreement, in a form reasonably acceptable to the Debtor and the Committee, to be dated as of the Effective Date establishing the terms and conditions of the Litigation and Distribution Trust, which shall be substantially in the form filed with the Bankruptcy Court as a Plan Document.

1.1.63    Litigation and Distribution Trust Assets means the Debtor's and the Estate's right, title and interest in the Estate Cash, the Avoidance Actions, Tort Claims and the proceeds of any Insurance Policies applicable thereto, any objections to Priority Tax Claims and Class 1 and Class 2 Claims, and, any other Cause of Action not related to or affecting the Tax Assets.

1.1.64    Litigation and Distribution Trust Beneficiaries means all individuals and entities entitled to a Plan Distribution from the Litigation and Distribution Trust.

1.1.65    Litigation and Distribution Trust Expenses means all reasonable costs and expenses incurred on or after the Effective Date by the Litigation and Distribution Trustee associated with the implementation and administration of the Litigation and Distribution Trust and the Plan.

1.1.66    Litigation and Distribution Trust Indemnified Parties has the meaning set forth in Section 7.7 of this Plan.

1.1.67    Litigation and Distribution Trustee means the trustee (and any successor trustee) selected to serve trustee pursuant to Article VII of this Plan and under the Litigation and Distribution Trust Agreement.  The identity of the initial trustee shall be filed with the Bankruptcy Court as a Plan Document no later than three (3) Business Days after entry of the Bankruptcy Court's order approving the adequacy of the Disclosure Statement.

1.1.68    Oversight Committee means the Oversight Committee of the Litigation and Distribution Trust established pursuant to the Litigation and Distribution Trust Agreement.

1.1.69    Person means an individual, corporation, partnership, limited liability company, limited liability partnership, joint stock company, joint venture, trust, estate, unincorporated association, unincorporated organization, or any government, governmental entity, or political subdivision, department, agency, or instrumentality thereof, or any other entity.

1.1.70    Petition Date means May 11, 2017, the date on which the Debtor commenced the Chapter 11 Case.

1.1.71    Plan means this chapter 11 plan for the Debtor filed in the Chapter 11 Case, including all supplements, appendices and schedules hereto, either in their present form or as same may be amended, supplemented or otherwise modified from time to time in accordance with the Bankruptcy Code and the terms hereof.

1.1.72    Plan Distribution means the payment or distribution under the Plan of Cash, assets, securities or instruments evidencing an obligation under the Plan to the holder of an Allowed Claim or Allowed Equity Interest.

10

1.1.73     Plan Distribution Date means (i) if a Claim or Equity Interest is Allowed on the Effective Date, a date that is within five (5) business days after the Effective Date, or (ii) if such Claim or Equity Interest is not Allowed on the Effective Date, a date within five (5) business days after the date such Claim or Equity Interest becomes Allowed.

1.1.74     Plan Documents means the compilation of documents and forms of documents, schedules and exhibits to the Plan that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Section 1.4 of the Plan including, without limitation, the Litigation and Distribution Trust Agreement.  Plan Documents shall be filed in the record of the Bankruptcy Case no later than five (5) calendar days in advance of the Confirmation hearing.

1.1.75     Plan Proponents means the Debtor and the Committee (each, a "Plan Proponent").

1.1.76     Priority NQDC Claim means any Claim to the extent such Claim is entitled to priority in right of payment under section 507(a)(5) of the Bankruptcy Code, other than Administrative Expense Claims and Priority Tax Claims.

1.1.77     Priority Tax Claim means any secured or unsecured Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.1.78     Professional means a Person retained or to be compensated for services rendered or costs incurred on or after the Petition Date and on or prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in the Chapter 11 Case.

1.1.79     Pro Rata Share means the proportion that an Allowed Claim (in the full amount of such Claim) or an Allowed Equity Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Equity Interests in such class, including Contested Claims, but excluding Disallowed Claims, (a) as calculated by the Litigation and Distribution Trustee or Debtor, as applicable; or (b) as determined or estimated by the Bankruptcy Court.

1.1.80     Reorganized Debtor means the Debtor after the occurrence of the Effective Date.

1.1.81     Schedules means, unless otherwise stated, the schedules of assets and liabilities and list of Equity Interests and the statements of financial affairs filed by the Debtor with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and in conformity with the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be amended or supplemented by the Debtor from time to time in accordance with Bankruptcy Rule 1009.

1.1.82     Securities Act means the Securities Act of 1933, 15 U.S.C. §§ 77a, et seq.

1.1.83     Senior Debt Instrument means any debt instrument issued by the Reorganized Debtor pursuant to or in connection with the implementation of the Plan, which (a) ranks equally in priority only with the Exit Facility; (b) is senior in rank to all other indebtedness of the Debtor or Reorganized Debtor; (c) has a maturity date of the 5th anniversary of issuance; (d) bears interest

11

at a rate of 5% per annum; and, (e) is payable in quarterly installments commencing on the first business day of the fourth quarter following the Plan Distribution Date, which quarterly payments may vary, but in no event shall they be in an amount less than the respective quarterly payment that would be due as calculated on a 10-year amortization schedule at 5% interest.

1.1.84    Series D Preferred means 37,935 shares of Series D Preferred Stock issued on August 4, 2011 by FNBC to U.S. Department of the Treasury under the Small Business Lending Fund program.

1.1.85    Series E Preferred means 1,725 shares of Series E Preferred Stock issued on April 27, 2017 by FNBC to certain members of the FNBC Board of Directors in accordance with FNBC's amendment to the articles of incorporation dated April 25, 2017.

1.1.86    SPV means the Special Purpose Vehicle established by the First Round Investors to acquire the SPV Claim Rights from any Bondholder electing (or deemed to be electing) the Cash Option under Section 3.3.2(iii)(a).

1.1.87    SPV Claim Rights means all rights, title and interests of a Bondholder in an Allowed Bondholder Claim except for any rights of the Bondholder to receive its Pro Rata Share of the Litigation and Distribution Trust Assets under Section 3.3.2(ii) and Cash under Section 3.3.2(iii)(a).

1.1.88    Subordinated 510(b) Claim means any Claim subordinated by operation of section 510(b) of the Bankruptcy Code, including any Claim arising from the rescission of a purchase or sale of a security of the Debtor or an affiliate of the Debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under Bankruptcy Code section 502 on account of such a Claim.

1.1.89    Subordinated Debt 1 means debt issued by the Debtor or Reorganized Debtor that is subordinate only to the Senior Debt Instruments and Exit Facility; and, is comprised exclusively of (a) Subordinated Instruments 1 issued to holders of Class 2 Claims that have elected the Debt Option;  and, (b) SPV Claim Rights.

1.1.90    Subordinated Instrument 1 means any Subordinated Debt 1 instrument issued by the Reorganized Debtor pursuant to the Plan, which shall: (a) bear interest at a rate of 5% per annum, (b) have a maturity date of the 10th anniversary of issuance, and (c) be payable in quarterly installments commencing on the first business day of the fourth quarter following the Plan Distribution Date, which quarterly payments may vary, but in no event shall they be in an amount less than the amount of interest accrued.

1.1.91    Tax Assets means any tax attributes of the Debtor, including tax credit carryforwards and net operating loss carryforwards.

1.1.92    Tort Claims means any and all claims of the Debtor based on any tort, including, but not limited to D&O Claims.

1.1.93    Voting Deadline means the deadline established by an Order of the Bankruptcy Court for voting to accept or reject the Plan.

**1.2    Rules for Interpretation.**

For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural and terms denoting one gender shall include the other gender; (b) the Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous; (c) any reference in this Plan to a contract, instrument, release, or other agreement or document attached as an Exhibit to this Plan or included in the Plan Documents being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (d) any reference in this Plan to an existing document, schedule or exhibit filed or to be filed means such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (e) any reference to a Person as a holder of a Claim or Equity Interest includes that Person's successors and assigns; (f) all references in this Plan to Sections and Articles are references to Sections and Articles of or to this Plan or the Plan Documents, as the same may be amended, waived or modified from time to time; (g) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular Section, subsection or clause contained in this Plan; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (i) unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Louisiana, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents; (j) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (k) the term "including" shall be construed to mean "including, but not limited to," "including, without limitation," or words of similar import.

**1.3    Computation of Time.**

In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. In the event that any payment, distribution, act or deadline under this Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, and if so made, performed or completed by such next succeeding Business Day shall be deemed to have been completed or to have occurred as of the required date.

**1.4    Appendices and Plan Documents.**

All appendices to this Plan and the Plan Documents are incorporated into and are a part of this Plan as if set forth in full herein.  Except as otherwise provided herein, all Plan Documents shall be filed with the Bankruptcy Court not less than five (5) days prior to the Voting Deadline. Holders of Claims and Equity Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to:

**THE STEFFES FIRM, LLC**
13702 Coursey Blvd., Bldg. 3
Baton Rouge, Louisiana 70817
Attn: Barbara B. Parsons
(225) 751-1998  Facsimile
**bparsons@steffeslaw.com**

## ARTICLE II.

## TREATMENT OF ADMINISTRATIVE,
## PRIORITY TAX, AND UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified for purposes of this Plan or for the purposes of sections 1123, 1124, 1125, 1126 or 1129 of the Bankruptcy Code, respectively. All Administrative Expense Claims and Priority Tax Claims shall instead be treated separately as unclassified Claims along with certain other unclassified Claims under the terms set forth in this Article II.

**2.1**   **Treatment of Administrative Expense Claims.**

2.1.1   General Provisions.

Except as provided below for Professionals and non-tax liabilities incurred in the ordinary course of business by the Debtor in Possession, requests for payment of Administrative Expense Claims must have been filed and properly noticed for hearing no later than the Administrative Bar Date.  **Holders of Administrative Expense Claims (including, without limitation, any governmental units asserting claims for federal, state, or local taxes) that are required to file a request for payment of such claims and that do not file and properly notice for hearing such requests by such Administrative Bar Date shall be forever barred from asserting such claims against the Debtor, Reorganized Debtor, any other Person, or any of their respective property.**

Except to the extent any Person entitled to payment of an Allowed Administrative Expense Claim has received payment on account of such Claim prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Administrative Expense Claim shall receive, in full satisfaction of its Allowed Administrative Expense Claim, Cash in an amount equal to the amount of such Allowed Administrative Expense Claim on the Plan Distribution Date; provided, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Administrative Expense Claim.

For the avoidance of doubt, no Administrative Expense Claim that remains subject to objection on or before the Claim Objection Deadline (*i.e*., such Administrative Expense Claim is Contested) shall receive a distribution under this Plan unless and until the Reorganized Debtor, in consultation with the Litigation and Distribution Trustee, determines that no objection will be filed with respect to such Claim.  Upon such a determination or agreement between the Reorganized Debtor, the Litigation and Distribution Trustee and the holder of any Administrative Expense Claim, any such Administrative Expense Claim shall become Allowed and paid by the

14

Reorganized Debtor from the Administrative Expense and Priority Reserve established by the Debtor for that purpose.

Holders of Allowed Administrative Expense Claims shall not be entitled to interest on their Administrative Expense Claims.

### 2.1.2   Fee Claims of Professionals.

All Fee Claims of Professionals or other entities requesting compensation or reimbursement of expenses under sections 327, 328, 330, 331, 503(b), 506 and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including any compensation requested by any professional for any other entity for making a substantial contribution in the Chapter 11 Case) shall file and serve on the Reorganized Debtor a Fee Application and associated notice of hearing for final allowance of the Fee Claim no later than thirty (60) days after the Effective Date; **provided, however, that no later than two (2) Business Days prior to the Confirmation Hearing all Professionals shall file with the Bankruptcy Court and provide to the Debtor an estimate of their accrued and unpaid Fee Claims through the Confirmation Hearing.** On or before the Effective Date, the Debtor shall establish the Administrative Expense and Priority Reserve in the amount of the estimated unpaid Fee Claims accrued through the Effective Date (plus all other unpaid Allowed Administrative Expense Claims including those Contested by the Debtor), to be held by Debtor's counsel until such time as such Fee Claims become Allowed Administrative Expense Claims.

### 2.1.3   Ordinary Course Liabilities.

Holders of Administrative Expense Claims, **known to the Debtor,** *i.e.,* **(a) Computershare (b) Globic Advisors, LLC, and (c) Broadridge Investor Communication Solutions**, which are based on liabilities incurred in the ordinary course of business of the Debtor prior to the Effective Date (other than professionals or other entities described in Section 2.1.2 above, and governmental units that hold claims for taxes or claims and/or penalties related to such taxes) shall not be required to file any request for payment of such claims; however, **all such claims must be submitted to the Debtor's bankruptcy counsel within 45 days of the Effective Date** *via* **mail, facsimile or e-mail transmission at counsel's address listed herein;** and, **failure to timely submit such claims in the foregoing manner shall result in such Claims being forever barred from assertion against the Debtor, Reorganized Debtor, any other Person, or any of their respective property.**

Holders of any Administrative Expense Claims **OTHER THAN (a) Computershare, (b) Globic Advisors, LLC, and (c) Broadridge Investor Communication Solutions**, which are based on liabilities incurred in the ordinary course of business of the Debtor prior to the Effective Date (other than professionals or other entities described in Section 2.1.2 above, and governmental units that hold claims for taxes or claims and/or penalties related to such taxes) must comply with the filing and Administrative Bar Date requirements set forth above in Section 2.1 "General Provisions" and the Bar Date Order.

15

**2.2    Treatment of Quarterly Fees.**

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtor on or before the Effective Date. All such fees arising after the Effective Date shall be an administrative expense of the Litigation and Distribution Trust and shall be paid by the Litigation and Distribution Trustee from the Litigation and Distribution Trust Assets.

**2.3    Treatment of Priority Tax Claims.**

Prior to the Effective Date, the Debtor shall have established the Administrative Expense and Priority Reserve from its available Cash. On the Distribution Date, each holder of an Allowed Priority Tax Claim will receive, in full satisfaction of such Allowed Priority Tax Claim, Cash equal to the amount of such Allowed Priority Tax Claim.

## ARTICLE III.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**3.1    General.**    Pursuant to sections 1122 and 1123 of the Bankruptcy Code, all Claims and Equity Interests are classified for all purposes, including, without express or implied limitation, voting, confirmation and distribution pursuant to this Plan, as set forth herein. A Claim or Equity Interest shall be deemed classified in a particular class only to the extent that the Claim or Equity Interest qualifies within the description of that class, and shall be deemed classified in a different class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different class. A Claim or Equity Interest is in a particular class only to the extent that such Claim or Equity Interest is Allowed in that class and has not been paid or otherwise satisfied prior to the Effective Date.

**3.2    Classification of Claims and Equity Interests**.

The following chart assigns a number and name to each class against the Debtor for purposes of identifying each separate class:

| Class | Claim or Equity Interest |
|---|---|
| 1 | Priority NQDC Claims |
| 2 | General Unsecured Claims |
| 3 | Subordinated 510(b) Claims |
| 4 | Series E Preferred Equity Interests |
| 5 | Equity Interests (Common Stock) |
| 6 | Series D Preferred Equity Interests |

16

**3.3**      **Treatment of Claims Against and Equity Interests in the Debtor.**

The classes of Claims against and Equity Interests in the Debtor shall be treated under the Plan as follows:

3.3.1      Class 1 – Priority NQDC Claims.

Each holder of an Allowed Priority NQDC Claim shall be unimpaired under the Plan and, pursuant to section 1124 of the Bankruptcy Code, all legal, equitable and contractual rights of each holder of an Allowed Priority NQDC Claim with respect to such Claim shall remain unaltered, except as provided in sections 1124(2)(A)-(E) of the Bankruptcy Code, and such holder of an Allowed Priority NQDC Claim shall be paid Cash from the Administrative Expense and Priority Reserve by the Reorganized Debtor in an amount equal to its Allowed Priority NQDC Claim on the Plan Distribution Date.

3.3.2      Class 2 – General Unsecured Claim.

Class 2 is comprised of all General Unsecured Claims including the Bondholder Claims. The Bondholder Claims shall be deemed Allowed on the Effective Date (without the necessity of all holders of Bondholder Claims to file Proofs of Claim) in the aggregate principal amount of $60,000,000, plus accrued and unpaid interest with respect thereon in the amount of $_____, plus any additional fees, costs, expenses (including any attorneys', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, under the Indenture, including but not limited to the fees and expenses of the Indenture Trustee. **Notwithstanding the filing of a Proof of Claim by the Indenture Trustee in the Chapter 11 Case, the Bondholders - not the Indenture Trustee – shall vote to accept or reject the Plan on behalf of their respective Bondholder Claims.**

Each holder of an Allowed Class 2 Claim shall receive or be allocated, as applicable, on the Plan Distribution Date, on account of its Allowed Claim:

(i)      Cash in an amount equal to the outstanding fees and expenses of the Indenture Trustee, including fees and expenses of its counsel, which will be paid on the Effective Date directly to the Indenture Trustee, on account of any such outstanding fees and expenses, from the Debtor's available Cash. Plan Distributions for all remaining amounts due on account of Bondholder Claims, *i.e.*, Bondholder Claims other than fees and expenses due to the Indenture Trustee, shall be made directly to holders of Legacy Subordinated Notes of record as reflected on the registry maintained by the Registrar for the Legacy Subordinated Notes as of the Distribution Record Date;

(ii)      such holder's Pro Rata Share of the Litigation and Distribution Trust Assets;

(iii)      *In addition*, such holder shall be entitled to elect one of the following alternative Claim treatment options:

17

a) Cash Option - on the Plan Distribution Date, the holder shall receive payment in Cash of its Pro Rata share of the Aggregate Settlement Amount; or,

b) Debt Option – subject to the Debt Option limitations set forth in section 6.6 of the Plan, on the Plan Distribution Date, the Reorganized Debtor shall issue two new instruments to the holder: (a) Senior Debt Instrument with a principal balance equal to the holder's Pro Rata share of the Aggregate Settlement Amount; and, (b) Subordinated Instrument 1 with a principal amount equal to the balance of such holder's Claim.

While the Plan Proponents do not intend to initiate any Avoidance Actions against holders of Claims, they reserve the right, pursuant to section 6.7 of the Plan, to assert Avoidance Actions against such holders for purposes of defense against and/or offset to Claims. The Plan Proponents (and all successors to them) further reserve any other offset rights that may exist with respect to Claims.

### 3.3.3 Class 3 –Subordinated 510(b) Claims.

The holders of Class 3 Claims shall be subordinated to all Claims or Interests that are senior or equal to the Claim or Interest represented by the security from which the Class 3 Claim arises, except that if such security is common stock, such Claim has the same priority as common stock.

While the Plan Proponents do not intend to initiate any Avoidance Actions against holders of Claims, they reserve the right, pursuant to section 6.7 of the Plan, to assert Avoidance Actions against such holders for purposes of defense against and/or offset to Claims. The Plan Proponents (and all successors to them) further reserve any other offset rights that may exist with respect to Claims.

### 3.3.4 Class 4 – Series E Preferred Equity Interests.

Holders of Class 4 Equity Interests in the Debtor shall have left unaltered the legal, equitable, and contractual rights to which each such Holder is entitled on account of such Interest.

### 3.3.5 Class 5 - Equity Interests (Common Stock)

Holders of Class 5 Equity Interests in the Debtor shall have left unaltered the legal, equitable, and contractual rights to which each such Holder is entitled on account of such Interests. Upon the Effective Date, pursuant to 11 U.S.C.§1145, all Class 5 Equity Interests shall be canceled and reissued to the exact holders of Class 5 Equity Interests in exchange for such interests.

### 3.3.6 Class 6 – Series D Preferred Equity Interests.

Holders of Class 6 Interests in the Debtor shall have left unaltered the legal, equitable, and contractual rights, all as set forth in the Articles of Amendment to the Articles of Incorporation of First NBC Bank Holding Company dated July 27, 2011, to which each such Holder is entitled on account of such Interests.

## ARTICLE IV.

### IDENTIFICATION OF IMPAIRED
### CLASSES OF CLAIMS AND EQUITY INTERESTS

**4.1**     **Unimpaired Classes of Claims and Equity Interests.**

The following Classes are not impaired under the Plan:

(a)     Class 1 – Priority NQDC Claims;

(b)     Class 4 - Series E Preferred Equity Interests;

(c)     Class 5 – Equity Interests (Common Stock); and,

(d)     Class 6 – Series D Preferred Equity Interests.

**4.2**     **Impaired Classes of Claims and Equity Interests.**

The following Classes are impaired under the Plan:

(a)     Class 2 – General Unsecured Claims; and,

(b)     Class 3 – Subordinated 510(b) Claims.

**4.3**     **Impairment Controversies.**

If a controversy arises as to whether any Claim or Equity Interest, or any class of Claims or Equity Interests, is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

## ARTICLE V.

### ACCEPTANCE OR REJECTION OF THE PLAN;
### EFFECT OF REJECTION BY ONE OR MORE
### CLASSES OF CLAIMS OR EQUITY INTERESTS

**5.1**     **Classes Entitled to Vote and Default Options.**

Classes 1, 4, 5 and 6 are not impaired under the Plan, and the holders of Claims and Equity Interests in such classes are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

Classes 2 and 3 are impaired under the Plan, and the holders of Claims in such respective classes are entitled to vote to accept or reject the Plan.  **In the event that a holder of a Class 2 Claim fails to timely elect the Debt Option, then such failure shall be deemed to be an election of the Cash Option by such holder.**

**5.2**     **Acceptance by an Impaired Class of Claims and Equity Interests.**

19

5.2.1     Pursuant to section 1126(c) of the Bankruptcy Code, an impaired class of Claims shall have accepted the Plan if, after excluding any Claims held by any holder designated pursuant to section 1126(e) of the Bankruptcy Code, (a) the holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims that have accepted or rejected the Plan.

5.2.2     Pursuant to section 1126(d) of the Bankruptcy Code, an impaired class of Equity Interests shall have accepted the Plan if, after excluding any Equity Interests held by any holder designated pursuant to section 1126(e) of the Bankruptcy Code, (a) the holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Equity Interests that have accepted or rejected the Plan.

**5.3**     **Confirmability and Severability of this Plan.**

5.3.1     <u>Reservation of Rights</u>.  Subject to Sections 14.11 and 14.12 of this Plan, the Plan Proponents reserve the right to modify or withdraw this Plan, in its entirety or in part, for any reason.  In addition, and also subject to Sections 14.11 and 14.12 of this Plan, should this Plan fail to be accepted by the requisite number and amount of Claims and Equity Interests, as required to satisfy section 1129 of the Bankruptcy Code, and notwithstanding any other provision of this Plan to the contrary, the Plan Proponents reserve the right to reclassify Claims or Equity Interests or otherwise amend, modify or withdraw this Plan in its entirety or in part.

5.3.2     <u>Severability of Plan Provisions</u>. If any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**ARTICLE VI.**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**6.1**     **First Round Investment and Exit Facility.**

Prior to the Effective Date, the identities of the First Round Investors and the principal amounts advanced from each First Round Investor shall be provided to the Committee.

The First Round Investment shall be disbursed from escrow to, or on behalf of, the Reorganized Debtor under the Exit Facility; and, as applicable, to, or on behalf of, SPV pursuant to the FRI Escrow Agreement.  The First Round Investment shall be utilized and shall be disbursed for uses contemplated, solely as set forth in this Section 6.1.  Upon the Effective Date, the First Round Investment shall be disbursed by Debtor's counsel from escrow:

(a)     to or on behalf of the SPV: disbursement shall be specifically for  payment of all Plan Distributions of Cash required on the Plan Distribution Date to any Bondholder that has elected or is deemed to have elected the Cash Option under Section 3.3.2(iii)(a. The Reorganized Debtor or Debtor's counsel shall act as disbursing agent for the SPV in making the foregoing Plan Distributions to Bondholders.

(b)     to or on behalf of the Reorganized Debtor: disbursement shall be made under the Exit Facility, specifically for payment of all Plan Distributions of Cash required on the Plan Distribution Date to any holder of other Allowed Class 2 Claims (non-Bondholder Claims) that has or is deemed to have elected the Cash Option.

 (c)     to the Reorganized Debtor: disbursement shall be made under the Exit Facility and shall consist of all funds from the First Round Investment remaining after all Plan Distribution Date payments to holders of Allowed Class 2 Claims that have elected (or are deemed to have elected) the   Cash Option under Section 3.3.2(iii)(a) of the Plan; such disbursement shall be provided to the Reorganized Debtor specifically for its future business operation expenses.

The Exit Facility shall thus provide to the Reorganized Debtor: (i) all Cash required for its Plan Distributions made on the Plan Distribution Date; and, (ii) all Cash remaining from the First Round Investment after all Plan Distribution Date payments to holders of Allowed Class 2 Claims that have elected (or are deemed to have elected) the Cash Option under Section 3.3.2(iii)(a). The Exit Facility shall rank equally in priority with the indebtedness evidenced by the Senior Debt Instruments. The Litigation and Distribution Trust and its assets shall have no liability for the Exit Facility, such liability being the sole responsibility of the Reorganized Debtor.

**6.2     Senior Debt and Subordinated Debt of the Reorganized Debtor.**

Senior Debt Instruments shall be issued exclusively to the Litigation and Distribution Trust and holders of Class 2 Claims that have elected the Debt Option.  The Senior Debt shall be senior to any and all other indebtedness of the Debtor from and after the Effective Date except for the First Round Investment (which shall be *pari passu* with the Senior Debt).  The charter of the Debtor and its by-laws shall be revised as of the Effective Date to prohibit the Debtor from issuing any additional or new debt senior to or *pari passu* with Senior Debt unless and until the holders of Subordinated Instruments 1 have been paid in full and in Cash.

The Subordinated Instruments 1 shall be senior to any preferred or common stock or any subordinated instruments that do not make up the Subordinated Debt 1.  The Subordinated Debt 1 shall be exclusively comprised of (a) Subordinated Instruments 1 issued to holders of Class 2 Claims that have elected the Debt Option; and, (b) SPV Claim Rights and associated Legacy Subordinated Notes acquired by the SPV.  The charter of the Debtor and its by-laws shall be revised as of the Effective Date to prohibit the Debtor from issuing any additional or new debt senior to or *pari passu* with Subordinated Debt 1 or to make any distributions or dividend payments of any kind or character to any Claims or Equity Interests junior or *pari passu* in priority to Subordinated Debt 1 unless and until the holders of Subordinated Instruments 1 have been paid in full and in Cash.  The Reorganized Debtor may, however, issue, at any time, additional debt that is subordinate to the Subordinated Debt 1.

21

**6.3**      <u>Establishment of the Administrative Expense and Priority Reserve.</u>

Prior to the Effective Date, the Debtor shall establish the Administrative Expense and Priority Reserve from its available Cash; and, all distributions to holders of Allowed Unclassified Claims as set forth in Article II of the Plan and Allowed Class 1 Claims as set forth in Article III of the Plan shall be made therefrom. The Administrative Expense and Priority Reserve shall also include a Cash reserve for payment of (a) Contested Unclassified Claims, described in Article II of the Plan, and (b) Contested Class 1 Claims, if and as such Contested Claims become Allowed Claims. Any funds remaining, after all such Claims have been fully disposed of through payment or disallowance, shall be transferred and conveyed to the Litigation and Distribution Trust.

**6.4**      <u>Establishment of the Special Purpose Vehicle.</u>

Prior to the Effective Date, the SPV shall be established by the First Round Investors to acquire the Legacy Subordinated Notes and corresponding SPV Claim Rights from the Bondholders electing or deemed to be electing the Cash Option. Any Bondholder that has elected or is deemed to have elected the Cash Option shall be deemed to have assigned its Legacy Subordinated Note and all of such Bondholder's SPV Claim Rights to [insert name of SPV] as of the Plan Distribution Date. Thereafter, the SPV shall be deemed to be the record holder of any such acquired Legacy Subordinated Notes, and as a result thereof, shall be entitled to enforce all legal, equitable and contractual rights attributable to such Legacy Subordinated Notes and included within any SPV Claim Rights it acquires. For avoidance of doubt, any Legacy Subordinated Notes acquired by the SPV shall not be cancelled upon the Effective Date or Plan Distribution Date, but shall instead remain enforceable against the Reorganized Debtor exclusively by the SPV and its successors. The Reorganized Debtor, as agent for the SPV, shall make all Plan Distributions to holders of any Bondholder Claims electing the Cash Option pursuant to Section 3.3.2(iii)(a).

**6.5**      <u>Disposition of Legacy Subordinated Notes.</u>

On the Confirmation Date, the Debtor shall cause there to be established a register for the recordation of Bondholders as of that date. On the Plan Distribution Date, the Reorganized Debtor or the SPV, as applicable, shall make the Plan distributions described in Plan section 3.3.2, to such Bondholders, or their transferees, as recorded on such register of the Debtor in accordance with such transfer procedures as the Debtor may establish.

Legacy Subordinated Notes of Bondholders Electing Debt Option:

If a Bondholder elects the Debt Option, pursuant to Plan section 3.3.2(iii)(b), then, on the Plan Distribution Date, the Debtor shall issue the Senior Debt Instrument and Subordinated Instrument 1 to such Bondholder in exchange for the Bondholder's Legacy Subordinated Note.

Legacy Subordinated Notes of Bondholders Electing Cash Option:

If a Bondholder elects the Cash Option, pursuant to Plan section 3.3.2(iii)(a), then, on the Plan Distribution Date, in exchange for the Cash payment provided by the SPV to the Bondholder, the Bondholder shall be deemed to have assigned its Legacy Subordinated Note to the SPV, and the SPV shall thereafter be deemed to be the record holder of such Bondholder's Legacy Subordinated Note and SPV Claim Rights.

**6.6**     <u>**Debt Option Limitations for Class 2 Claim Treatment.**</u>

Notwithstanding the Class 2 Treatment provided for in section 3.3.2(iii)(b), the Debt Option treatment shall be limited to the Debt Option Threshold.  Should the aggregate dollar amount of Allowed Class 2 Claims electing the Debt Option exceed the Debt Option Threshold, then the treatment of such claims shall be modified as follows: the Debt Option shall be applied to the amount of each holder's Pro Rata share of the Debt Option Threshold and the Cash Option shall be applied to the balance of the holder's Claim.  ***For illustration purposes only***, the Plan Proponents have provided an ***example*** of the modified treatment that may be required for a Class 2 Claim, electing the Debt Option, if the Debt Option Threshold is exceeded.

**EXAMPLE** OF MODIFIED TREATMENT FOR HOLDERS, ELECTING DEBT OPTION, IN A SCENARIO IN WHICH DEBT OPTION THRESHOLD IS EXCEEDED:

Assumptions:

1.  The total amount of Class 2 Claims eligible to vote is $67,000,000.

2.  The total amount of Class 2 Claims electing the Debt Option is $40,000,000 (aggregate Claim amount exceeds Debt Option Threshold by $10,000,000).

3.  The total amount of Class 2 Claims electing (or deemed to be electing) the Cash Option is $27,000,000.

4.  The Class 2 Claims electing the Debt Option are comprised of the following Claims:

    a)  Class 2 Claim of $20,000,000
    b)  Class 2 Claim of $10,000,000
    c)  Class 2 Claim of $8,000,000, and
    d)  Class 2 Claim of $2,000,000.

Under this scenario, treatment of the Class 2 Claims electing the Debt Option would be modified as follows:

a)  Class 2 Claim of $20,000,000 would receive:
    Debt Option Treatment for $15,000,000 of its Class 2 Claim; and,
    Cash Option Treatment for $5,000,000 of its Class 2 Claim.
b)  Class 2 Claim of $10,000,000 would receive:
    Debt Option Treatment for $7,500,000 of its Class 2 Claim; and,
    Cash Option Treatment for $2,500,000 of its Class 2 Claim
c)  Class 2 Claim of $8,000,000 would receive:
    Debt Option Treatment for $6,000,000 of its Class 2 Claim; and,
    Cash Option Treatment for $2,000,000 of its Class 2 Claim
d)  Class 2 Claim of $2,000,000 would receive:
    Debt Option Treatment for $1,500,000 of its Class 2 Claim; and,
    Cash Option Treatment for $500,000 of its Class 2.

**6.7**     **Corporate Action.**

The entry of the Confirmation Order shall constitute authorization for the Debtor and the Litigation and Distribution Trustee, as applicable, to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and the Plan Documents prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including, without limitation, (a) the incurrence of all obligations contemplated by the Plan and the making of Plan Distributions, (b) the implementation of all settlements and compromises as set forth in or contemplated by the Plan (c) the execution, delivery, filing and/or recording of any contracts, agreements, instruments or other documents contemplated by the Plan Documents (or necessary or desirable to effectuate the transactions contemplated by the Plan Documents); and, (d) the execution of any such documentation necessary for the Debtor to enter into the Exit Facility in order to secure the full release and availability of the First Round Investment.

On or before the Effective Date, the Debtor's Board of Directors shall take all necessary action, in accordance with its corporate governance documents, to elect Navid Abghari of Angel Oak Capital Advisors, the designee of the Committee, to serve as a member of the FNBC Board of Directors, alongside its existing members.

**6.8**     **Preservation of Causes of Action.**

Except as otherwise provided in the Plan, each Tort Claim of the Debtor shall be preserved and, along with the exclusive right to commence, pursue, and enforce such Tort Claim in any appropriate court or tribunal, shall be deemed transferred to the Liquidation and Distribution Trust/ Litigation and Distribution Trustee as of the Effective Date, and shall vest exclusively in the Litigation and Distribution Trust /Litigation and Distribution Trustee (as applicable) as of the Effective Date. In addition, each Tort Claim to which the Committee, pursuant to Bankruptcy Court Orders [Doc. 261 and 563] was granted standing on behalf of and for the benefit of the Debtor's estate, to assert, commence, prosecute, and, if appropriate, settle (with Court approval), shall vest exclusively in the Litigation and Distribution Trust /Litigation and Distribution Trustee (as applicable) as of the Effective Date.

Except as otherwise provided for below with respect to Causes of Action retained by the Debtor or Reorganized Debtor, unless a claim or Cause of Action against a creditor or other Person is expressly waived, relinquished, released, compromised, settled or transferred in the Plan or any other Final Order, the Debtor, Committee and the Litigation and Distribution Trustee, as applicable, expressly reserve such claim or Cause of Action for later pursuit by the Litigation and Distribution Trustee, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon, after, or as a result of the Confirmation Date or Effective Date of the Plan, the Disclosure Statement, the Plan or the Confirmation Order. In addition, the Debtor and the Litigation and Distribution Trustee, as applicable, expressly reserve the right to pursue or adopt any claims (and any defenses) or Causes of Action of the Debtor, not so specifically and expressly waived, relinquished, released, compromised, settled or transferred that are alleged in any lawsuit in which

the Debtor is a defendant or an interested party, against any Person, including, without limitation, the plaintiffs or codefendants in such lawsuits.

Any Person to whom the Debtor has incurred an obligation (whether on account of services, purchase or sale of goods, tort, breach of contract or otherwise), or who has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor should assume that such obligation, transfer, or transaction may be reviewed by the Litigation and Distribution Trustee subsequent to the Effective Date and may, to the extent not theretofore waived, relinquished, released, compromised, settled or transferred, be the subject of an action or claim or demand after the Effective Date, whether or not (a) such Person has filed a proof of claim against the Debtor in the Chapter 11 Case, (b) such Person's proof of claim has been objected to, (c) such Person's Claim was included in the Debtor's Schedules, or (d) such Person's scheduled Claim has been objected to by the Debtor, the Litigation and Distribution Trustee or has been identified by the Debtor as disputed, contingent, or unliquidated.

**No Person may rely on the absence of a specific reference in the Plan or this Disclosure Statement to any Cause of Action against them as any indication that the Debtor or the Litigation and Distribution Trustee will not pursue any and all available Causes of Action against them.  The Debtor and the Litigation and Distribution Trustee, and the Estate expressly reserve all rights to prosecute any and all Causes of Action against any Person, <u>except</u> as otherwise explicitly provided in the Plan**.

The retained claims and Causes of Action, include, without limitation:

• Causes of Action, including Avoidance Actions (the Plan Proponents and their successors do not intend to initiate any direct Avoidance Actions against Claim holders, but reserve the right to assert Avoidance Actions as a defense to any Claims) and Tort Claims, as defined in the Plan;

• Objections to Claims under the Plan;

• Any and all litigation, claims, or Causes of Action of the Debtor and any rights, suits, damages, remedies, or obligations, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, relating to or arising from the acts, omissions, activities, conduct, claims, or Causes of Action listed or described in the Plan, Disclosure Statement, or the Confirmation Order;

• Actions against insurance carriers relating to coverage, indemnity or other matters;

• Counterclaims and defenses relating to notes or other obligations;

• Contract, tort, or equitable claims which may exist or subsequently arise;

• Any claims of the Debtor arising under Section 362 of the Bankruptcy Code;

• Equitable subordination claims arising under Section 510 of the Bankruptcy Code or other applicable law;

• Any and all claims arising under chapter 5 of the Bankruptcy Code and all similar actions under applicable law, including, but not limited to, preferences under Section 547 of the Bankruptcy Code, turnover Claims arising under Sections 542 or 543 of the Bankruptcy Code, and fraudulent transfers under Section 548 of the Bankruptcy Code, including but not limited, to any transfers listed the Debtor's Statements of Financial Affairs;

• Any derivative Causes of Action, of the Debtor pursuant to the Bankruptcy Code or any other statute or legal theory or theory under equity, including all claims included within the suit styled, *Doug Smith, Individually and on Behalf of First NBC Bank Holding Company v. Ashton J. Ryan, et al. and First NBC Bank Holding Company*, Case No. 16-17001, U.S. District Court, Eastern District of Louisiana.

• Any claims asserted in the litigation styled, *Eric R. Kinzler, Individually and on Behalf of All Others Similarly Situated, v. First NBC Bank Holding Company, Ashton J. Ryan, Jr. and Mary Beth Verdigets*, Case No. 16-04243, U.S. District Court, Eastern District of Louisiana.

• Any and all claims against Ernst & Young, LLP, its insurer(s), and against any other entities which provided professional services to the Debtor prior to the Petition Date.

Without limiting, and in addition to, the foregoing reservations of claims and Causes of Actions, the Liquidation and Distribution Trust/Liquidation and Distribution Trustee expressly reserves and retains any and all past and present legal and equitable claims and Causes of Action (including any derivative Causes of Action) against any former or current director or officer of the Debtor, as well as direct action or other claims against its liability insurers, arising under state or other non-bankruptcy law or arising under the Bankruptcy Code, in this Chapter 11 Case, or in any way related to this Chapter 11 Case, or under and/or pursuant to any statute or legal or equitable theory that is in any manner arising from, connected with or related to any act or omission of such director or officer that occurred prior to the Petition Date, including but not limited to, claims and Causes of Action for breach of fiduciary duty, violations of applicable federal or state securities law, negligence, gross negligence, willful misconduct, misrepresentation, omission, mismanagement, waste, fraud, bad faith, tortious interference with contract, detrimental reliance, including but not limited to, any damages allowed by law or equity, including compensatory, punitive and anticipated future damages, plus all costs including attorney's fees, court costs, and expert witness fees. Such claims and Causes of Action include those arising in connection with or relating to any and all claims directly or indirectly related to the letters to the Debtors' insurers from the Committee attached to the Disclosure Statement.

*Notwithstanding the foregoing reservations of claims and Causes of Action for the benefit of the Litigation and Distribution Trust and its beneficiaries, the following are specifically preserved and shall re-vest in the Debtor: (a) any objections to Claims other than Class 2 Claims; and, (b) any claims or Causes of Action, whether legal, equitable or statutory in nature that may affect the Reorganized Debtor's ability to utilize or have recognized with any taxing authority any Tax Assets that may exist, whether known or unknown to the Debtor prior to the Effective Date.*

Due to the size and scope of the Debtor's business operations, there may be numerous other claims and Causes of Action that currently exist or may subsequently arise, in addition to the claims and Causes of Action identified above. The Debtor and Committee are also continuing to

26

investigate and assess which claims and Causes of Action may be pursued. The Debtor and the Litigation and Distribution Trustee do not intend, and it should not be assumed that because any existing or potential claims or Causes of Action have not yet been pursued or do not fall within the list above, that any such claims or Causes of Action have been waived.

**THIS PLAN SHALL BE INTERPRETED SO AS TO AFFORD, FOR THE BENEFIT OF ALL HOLDERS OF ALLOWED CLAIMS, THE GREATEST OPPORTUNITY FOR MAXIMUM RECOVERY BY THE LIQUIDATION AND DISTRIBUTION TRUSTEE ON THE ASSETS, TORT CLAIMS, AND RIGHTS IN AND PROCEEDS OF ANY INSURANCE POLICIES**.

**6.9    Establishment of the Litigation and Distribution Trust and Appointment of the Litigation and Distribution Trustee.**

The Litigation and Distribution Trust shall be established and the Litigation and Distribution Trustee shall be appointed as set forth below in Article VII. In addition to the Litigation and Distribution Trust Assets transferred to the Litigation and Distribution Trust, the Reorganized Debtor shall issue a Senior Debt Instrument to the Litigation and Distribution Trust in the principal amount of $300,000 on the Effective Date.

**6.10    Vesting of the Tort Claims and Insurance Policies.**

On the Effective Date, the Estate's interest in any Tort Claims and rights in and proceeds of any Insurance Policies necessary for the prosecution of all such Claims shall be transferred to and vest in the Litigation and Distribution Trust. The Litigation and Distribution Trustee shall have standing and be authorized to institute and prosecute through final judgment or settle the Tort Claims. Upon entry of a final judgment or settlement, the relevant proceeds of the Tort Claims and relevant Insurance Policies shall be property of the Litigation and Distribution Trust for the benefit of holders of Allowed Class 2 claims in accordance with the provisions of this Plan. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan shall not discharge, impair or otherwise affect or other obligations of the Insurance Policies such that the full benefits of all such policies can be realized for the Litigation and Distribution Trust Beneficiaries.

**6.11    Sources of Cash for Plan Distributions.**

All Cash necessary for the Debtor or Reorganized Debtor to make payments and Plan Distributions under the Plan by the Debtor shall be made (or reserved) from its available Cash prior to the transfer of the remaining Estate Cash to the Litigation and Distribution Trust; and, from the First Round Investment. All Plan Distributions to be made by the Litigation and Distribution Trustee shall be obtained from the liquidation of Litigation and Distribution Trust Assets (including the proceeds of any Tort Claims and related Insurance Policies).

**6.12    Continued Corporate Existence and Vesting of Assets in the Debtor.**

On and after the Effective Date, the Reorganized Debtor will continue to exist as a corporation and shall retain all of the powers of corporations under applicable non- bankruptcy law, and without prejudice to any right to amend its charter, dissolve, merge or convert into

another form of business entity, or to alter or terminate its existence. As of the Effective Date, the Debtor's Articles of Incorporation shall be deemed amended to conform to the requirements of Section 1123(a)(6) of the Bankruptcy Code. Furthermore, as of the Effective Date, the Debtor shall have taken such steps as may be necessary to delist and deregister its common stock under the Securities Exchange Act of 1934; and, thereafter, shall take appropriate action to assure compliance with applicable securities laws.

Except as otherwise provided for in the Plan, on and after the Effective Date, all assets and property of the Debtor and its Estate, including any Tax Assets and any other assets of the Debtor but excluding the Litigation and Distribution Trust Assets, will re-vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, and other encumbrances.

On and after the Effective Date, the Reorganized Debtor shall be permitted to conduct its business without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules. The Reorganized Debtor shall be authorized, without limitation, to use and dispose of assets of the Debtor other than the Litigation and Distribution Trust Assets, as the representative of Debtor's Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, to acquire and dispose of other property, and to otherwise administer its affairs. It is anticipated that, in addition to the funds available to the Reorganized Debtor from the First Round Investment, First Round Investors and/or additional investors will provide capital to the Reorganized Debtor to enable the Reorganized Debtor to acquire assets after the Effective Date and that the Reorganized Debtor will have future business operation.

**6.13    Cancellation of Instruments.**

On the Effective Date, except as otherwise specifically provided for in Article VI of this Plan: (1) the obligations of the Debtor under the Indenture and any other certificate, share, note, bond, indenture, purchase right, option, warrant, existing management incentive plan or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor giving rise to any Claim or Equity Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtor that are specifically left unaltered by the Plan), shall be cancelled, and the Reorganized Debtor shall not have any continuing obligations thereunder; and (2) the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the membership interests, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtor that are specifically left unaltered by the Plan) shall be released and discharged; provided, however, notwithstanding confirmation of this Plan or the occurrence of the Effective Date, any agreement that governs the rights of the holder of a Claim shall continue in effect solely for purposes of (1) allowing holders to receive Plan Distributions as provided herein and (2) allowing the Indenture Trustee to exercise its charging liens for the payment of its fees and expenses and for indemnification as provided in the applicable Indenture; provided, further, notwithstanding confirmation of this Plan or the occurrence of the Effective Date, the Indenture shall continue in effect solely for the purposes of allowing the Bondholder Claims under this Plan; provided, further, however, that the preceding proviso shall

not affect the discharge of Claims or Equity Interests pursuant to the Bankruptcy Code, the Confirmation Order or this Plan, or result in any expense or liability to the Reorganized Debtor or Bondholders. Notwithstanding anything to the contrary herein, no instruments or rights shall be deemed cancelled to the extent the preservation or non-cancellation of such instruments is necessary to preserve unimpaired any and all Causes of Action and to permit the Litigation and Distribution Trustee to assert any and all Causes of Action pursuant to this Plan.

**6.14** **Amendment of Indenture and Preservation of Trustee Rights.**

On the Effective Date, and without further order of the Court, i) the Indenture shall be, automatically and without further act, amended to delete Section 107 and Section 510 thereof to remove references to the Trust Indenture Act and effectuate automatic resignation of the Trustee and appointment of a successor trustee; (ii) the Indenture shall be, automatically and without further act, amended to revise sections 509 thereof to permit and effectuate the resignation of the Trustee, including in its role as Registrar and Paying Agent, and the appointment of a Successor Trustee, as set forth herein; (iii) the Trustee will be deemed to have resigned as Trustee, Registrar and Paying Agent and any other role it may have under the Indenture in accordance with Section 509(2) of the Indenture; (iv) [ insert name of Successor Trustee ] will be automatically and without further act appointed as successor trustee, registrar and paying agent (the "Successor Trustee") under the Indenture and will be deemed to have accepted such appointment under the Indenture; (v) except as otherwise expressly set forth herein, all rights, duties and obligations of the Trustee under the Notes, the Indenture and such other agreements, instruments and other documents related thereto, including those related to the Trustee's resignation, will be deemed fully and finally satisfied, released and discharged. The Trustee will be relieved of and have no further responsibility for the exercise of rights and powers or for the performance of the duties and obligations vested in the Trustee under the Indenture and the Successor Trustee will become vested with all the rights, powers, trusts and duties of the retiring Trustee. Notwithstanding anything herein to the contrary, the amendment of the Indenture will not impair in any way (i) the rights of the Trustee to the Trustee's claims under the [Plan of Reorganization], or (ii) the indemnification rights of the Trustee or the indemnification obligations of the Company under the Indenture, as the same existed immediately prior to the Effective Date.

**6.15** **Dissolution of the Committee.**

Upon the Effective Date, the Committee shall be deemed to have transferred and conveyed to the Litigation and Distribution Trust/Litigation and Distribution Trustee all of its rights, interests, and standing to assert the Tort Claims; and, shall thereafter dissolve automatically, whereupon its members, professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except with respect to applications for Fee Claims or reimbursement of expenses incurred as a member of the Committee.

**6.16** **Delisting of Stock.**

Promptly upon the occurrence of the Effective Date, the Reorganized Debtor shall take all actions necessary to delist the Debtor's pre-confirmation common stock by having the Financial Industry Regulatory Authority ("FINRA") remove the Debtor's trading symbol from FINRA's quotation system.

# ARTICLE VII.

## THE LITIGATION AND DISTRIBUTION TRUST

**7.1** **Establishment of Litigation and Distribution Trust.**

On the Effective Date, the Litigation and Distribution Trust shall be established pursuant to the Litigation and Distribution Trust Agreement for the purposes of administering the Litigation and Distribution Trust Assets and making all distributions to Litigation and Distribution Trust Beneficiaries as provided for under this Plan. The Litigation and Distribution Trust Agreement shall be substantially in the form provided in the Plan Documents.

The beneficial interests in the Litigation and Distribution Trust shall not be certificated, unless otherwise provided in the Litigation and Distribution Trust Agreement. The issuance of any beneficial interests of the Litigation and Distribution Trust satisfies the requirements of section 1145 of the Bankruptcy Code and, therefore, such issuance is exempt from registration under the Securities Act and any state or local law requiring registration.

**7.2** **Execution of the Litigation and Distribution Trust Agreement.**

The Litigation and Distribution Trust Agreement, in a form reasonably acceptable to the Debtor and the Committee, shall be executed on or before the Effective Date, and all other necessary steps shall be taken to establish the Litigation and Distribution Trust and the beneficial interests therein, which shall be for the benefit of holders of Allowed Class 2 Claims as set forth in the Litigation and Distribution Trust Agreement. This Article VII sets forth certain of the rights, duties and obligations of the Litigation and Distribution Trustee. In the event of any conflict between the terms of this Article VII and the terms of the Litigation and Distribution Trust Agreement, the terms of the Plan shall govern.

**7.3** **Litigation and Distribution Trust Assets.**

7.3.1     Except as otherwise provided in the Litigation and Distribution Trust Agreement, on the Effective Date, in accordance with section 1141 of the Bankruptcy Code, all of the Litigation and Distribution Trust Assets, as well as the rights, privileges (including, but not limited to, the attorney-client privilege), and powers of the Debtor and its Estate applicable to the Litigation and Distribution Trust Assets, shall automatically vest in the Litigation and Distribution Trust, free and clear of all Claims and Equity Interests for the benefit of the Litigation and Distribution Trust Beneficiaries. For the avoidance of doubt, (i) in no event shall the term "Litigation and Distribution Trust Assets" be deemed to include any released claims against any Exculpated Parties, and (ii) the Litigation and Distribution Trust shall not have the right to assert any released claims against any Exculpated Parties. Upon the transfer of Litigation and Distribution Trust Assets to the Litigation and Distribution Trust, the Litigation and Distribution Trust shall succeed to all of the Debtor's and Estate's rights, title and interest in such Litigation and Distribution Trust Assets, and the Debtor shall have no further interest in or with respect to such Litigation and Distribution Trust Assets.

The Confirmation Order shall constitute a determination that the transfers of assets to the Litigation and Distribution Trust are legal and valid and consistent with the laws of the State of Louisiana.

All parties shall execute any documents or other instruments necessary to cause title to the Litigation and Distribution Trust Assets to be transferred to the Litigation and Distribution Trust. The Litigation and Distribution Trust Assets will be held in trust for the benefit of all holders of Allowed Class 2 Claims pursuant to the terms of the Plan and Litigation and Distribution Trust Agreement.

7.3.2    As more fully set forth in Section 7.9 hereof, the transfer of each of the Litigation and Distribution Trust Assets to the Litigation and Distribution Trust shall be treated for U.S. federal income tax purposes as a transfer of the Litigation and Distribution Trust Assets to the Litigation and Distribution Trust Beneficiaries, who will immediately thereafter be deemed to have automatically transferred all such Assets to the Litigation and Distribution Trust.

**7.4    Governance of Litigation and Distribution Trust.**

The Litigation and Distribution Trust shall be governed and administered by the Litigation and Distribution Trustee and the Oversight Committee, as provided under the Litigation and Distribution Trust Agreement.  The Litigation and Distribution Trustee and the Oversight Committee shall act in furtherance of, and consistent with, the purpose of the Litigation and Distribution Trust and shall act in the best interests of the Litigation and Distribution Trust Beneficiaries.

**7.5    Litigation and Distribution Trustee.**

In accordance with the Litigation and Distribution Trust Agreement, and subject to the rights and powers of the Oversight Committee, the Litigation and Distribution Trustee shall be authorized to exercise and perform the rights, powers, and duties held by the Debtor and the Estate with respect to the Litigation and Distribution Trust Assets upon their transfer to the Litigation and Distribution Trust, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting in the capacity of a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee or any similar official who has been appointed to take control of, manage, and to provide for the prosecution, settlement, adjustment, retention, and enforcement of the Litigation and Distribution Trust Assets.

7.5.1    Responsibilities of Litigation and Distribution Trustee.

The responsibilities of the Litigation and Distribution Trustee shall be subject to the rights and powers of the Oversight Committee and shall be as set forth in the Litigation and Distribution Trust Agreement and shall include, but shall not be limited to: (i) the receipt, management, supervision, and protection of the Litigation and Distribution Trust Assets on behalf of and for the benefit of the beneficiaries of the Litigation and Distribution Trust; (ii) pursuit of objections to, and estimations and settlements of certain Contested Claims; (iii) investigation, analysis, prosecution, and, if necessary and appropriate, compromise of the claims and Causes of Action included among the Litigation and Distribution Trust Assets, including, without limitation, the Avoidance Actions and any other claims and Causes of Action transferred to the Litigation and

Distribution Trust pursuant to the Plan; (iv) calculation and implementation of all distributions to be made by the Litigation and Distribution Trustee under the Plan to the beneficiaries of the Trust; (v) filing all required federal, state, and local tax returns and paying taxes and all other obligations of the Litigation and Distribution Trust; and (vi) such other responsibilities as may be vested in the Litigation and Distribution Trustee pursuant to the Plan, the Litigation and Distribution Trust Agreement, orders of the Bankruptcy Court, or as necessary and proper to carry out the provisions of the Plan.

The Liquidation and Distribution Trustee shall provide an annual reporting to Litigation and Distribution Trust Beneficiaries which shall include: the current status of any pending litigation of the Litigation and Distribution Trust; the Litigation and Distribution Trust's income and expenses for the prior fiscal year, and the number of Litigation and Distribution Trust Beneficiaries and outstanding Claim amounts.

The Litigation and Distribution Trustee shall maintain good and sufficient books and records of account relating to the Litigation and Distribution Trust Assets, the management thereof, all transactions undertaken by the Litigation and Distribution Trustee, all expenses incurred by or on behalf of the Litigation and Distribution Trustee, and all distributions to Litigation and Distribution Trust Beneficiaries contemplated or effectuated under the Plan.

       7.5.2      <u>Authority and Powers of Litigation and Distribution Trustee.</u>

           (a) The powers of the Litigation and Distribution Trustee are set forth in full in the Litigation and Distribution Trust Agreement and subject to the rights and powers of the Oversight Committee shall include, among other things, the right, without any further approval from the Bankruptcy Court, to: Subject to any limitations contained in the Plan and Litigation and Distribution Trust Agreement, including subject to the rights and powers of the Oversight Committee, pay, compromise, settle, adjust, agree to, investigate, pursue, or contest any and all claims and Causes of Action transferred to the Litigation and Distribution Trust as provided in the Plan and Litigation and Distribution Trust Agreement;

           (b) Pay all taxes, expenses and obligations of the Litigation and Distribution Trust out of the Litigation and Distribution Trust Assets;

           (c) Investigate, prosecute and, if necessary, litigate, any and all Avoidance Actions and Causes of Action that may belong to the Debtor or its Estate that are transferred to the Litigation and Distribution Trust pursuant to the Plan, including any Avoidance Action or any other claims or Causes of Action brought by the Debtor or the Unsecured Creditors' Committee on behalf of the Debtor prior to the Effective Date, which Causes of Action, rights to payment and claims as of the Effective Date shall vest solely and exclusively in the Litigation and Distribution Trustee, for the benefit of the Litigation and Distribution Trust, pursuant to the terms of the Plan;

32

(d) And, additionally:

(i) Invest funds; (ii) make distributions; (iii) pay taxes and other obligations owed by the Litigation and Distribution Trust or incurred by the Litigation and Distribution Trustee; (iv) subject to Sections 4.3 and 4.9 of the Litigation and Distribution Trust Agreement, engage and compensate from the Litigation and Distribution Trust Assets, consultants, agents, employees, and professional persons (including, without limitation, attorneys on a contingency fee basis) to assist the Litigation and Distribution Trustee with respect to the Litigation and Distribution Trustee's responsibilities; (v) liquidate and dispose of the Litigation and Distribution Trust Assets; (vi) compromise and settle Claims and Causes of Actions; (vii) act on behalf of the Debtor, its Estate, and the Committee in all civil actions, judicial proceedings, administrative proceedings, adversary proceedings and contested matters (including, without limitation, the Avoidance Actions) pending in the Bankruptcy Court and in all actions and proceedings pending elsewhere; (viii) commence and/or pursue any and all actions involving Litigation and Distribution Trust Assets that could arise or be asserted at any time, unless otherwise waived or relinquished in the Plan; (ix) utilize Litigation and Distribution Trust Assets to purchase appropriate insurance to insure the acts and omissions of the Litigation and Distribution Trustee; and (x) act and implement the Plan, the Litigation and Distribution Trust Agreement, and orders of the Bankruptcy Court.

The authority of the Litigation and Distribution Trustee and the Oversight Committee will commence as of the Effective Date and will remain and continue in full force and effect until all of the Litigation and Distribution Trust Assets have liquidated in accordance with the Plan, the funds in the Litigation and Distribution Trust have been completely distributed in accordance with the Plan, all tax returns and any other required filings or reports have been filed with the appropriate state or federal regulatory authorities, and the Order closing the Chapter 11 Case is a Final Order.

7.5.3    Litigation and Distribution Trustee as Successor in Interest to the Debtor and Committee.

Solely with respect to the Litigation and Distribution Trust Assets, the Litigation and Distribution Trustee is the successor in interest to the Debtor and the Committee, and thus, after the Effective Date, to the extent the Plan requires an action by the Debtor or the Committee with respect to any of the Litigation and Distribution Trust Assets, the action shall be taken by the Litigation and Distribution Trustee on behalf of the Debtor or the Committee, as applicable.

7.5.4    Retention of Professionals by Litigation and Distribution Trustee.

As set forth in Section 7.5.2 of this Plan and the Litigation and Distribution Trust Agreement, subject to the rights and powers of the Oversight Committee, the Litigation and Distribution Trustee may, without further order of the Bankruptcy Court, employ various Persons on behalf of the Litigation and Distribution Trust, including, but not limited to, attorneys, consultants and financial advisors, as needed to assist him/her in fulfilling his/her obligations under the Litigation and Distribution Trust Agreement and this Plan, and on whatever fee arrangement he/she deems appropriate, including, without limitation, contingency fee arrangements. For the avoidance of doubt, the Litigation and Distribution Trustee may retain professionals who represented parties in interest in the Chapter 11 Case.

Professionals engaged by the Litigation and Distribution Trustee shall not be required to file applications with the Bankruptcy Court in order to receive compensation for services rendered and reimbursement of actual out-of-pocket expenses incurred, and all such compensation and reimbursement shall be paid from the Litigation and Distribution Trust with Litigation and Distribution Trust Assets. Notwithstanding the foregoing, all invoices for such Professionals will be submitted to the Litigation and Distribution Trustee and the Oversight Committee for review prior to payment. If the Litigation and Distribution Trustee and a majority of the members of the Oversight Committee do not object to a submitted invoice, the invoice will be paid. If the Litigation and Distribution Trustee or a majority of the members of the Oversight Committee object to the invoice, the parties will work in good faith to resolve the objection. If the parties cannot resolve the objection, one or more of the parties may raise the dispute to the Bankruptcy Court for resolution.

       7.5.5      <u>Compensation of Litigation and Distribution Trustee</u>.

In addition to reimbursement for actual out-of-pocket expenses incurred by the Litigation and Distribution Trustee, the Litigation and Distribution Trustee shall be entitled to receive reasonable compensation for services rendered on behalf of the Litigation and Distribution Trust on terms to be established by the Oversight Committee, and all such compensation and reimbursement shall be paid from the Litigation and Distribution Trust using Litigation and Distribution Trust Assets and their proceeds.

All invoices for the Litigation and Distribution Trustee will be submitted to the Oversight Committee for review prior to payment. If a majority of the members of the Oversight Committee do not object to a submitted invoice, the invoice will be paid. If a majority of the members of the Oversight Committee object to the invoice, the parties will work in good faith to resolve the objection. If the parties cannot resolve the objection, one or more of the parties may raise the dispute to the Bankruptcy Court for resolution.

**7.6**      **<u>Oversight Committee.</u>**

       7.6.1      <u>Appointment of the Oversight Committee</u>. On the Effective Date, the Oversight Committee shall be formed. The Oversight Committee shall have members in an amount determined by majority vote of the members of the Oversight Committee to advise, assist, supervise and direct the Litigation and Distribution Trustee in the administration of the Litigation and Distribution Trust pursuant to the Litigation and Distribution Trust Agreement. The initial members of the Oversight Committee shall be Vikaran Ghei, Michael Zaitzeff and Donna Ennis. Members of the Oversight Committee constituting a majority of the total number of members of the Oversight Committee then in office shall have the right to direct and remove the Litigation and Distribution Trustee, and shall have such other rights to operate and manage the Litigation and Distribution Trust as are not inconsistent with the Confirmation Order, the Plan and the terms of the Litigation and Distribution Trust Agreement. No other Litigation and Distribution Trust Beneficiary shall have any approval rights whatsoever in respect of management and operation of the Litigation and Distribution Trust. A member of the Oversight Committee may from time to time consult with the Litigation and Distribution Trust Beneficiary that appointed such member subject to such confidentiality provisions as required by the Oversight Committee.

7.6.2     Authority of the Oversight Committee.  The Oversight Committee shall have the authority and responsibility to advise, assist, supervise, and direct the Litigation and Distribution Trustee in the administration of the Litigation and Distribution Trust and shall have the authority to remove the Litigation and Distribution Trustee. The Litigation and Distribution Trustee shall consult with and provide information to the Oversight Committee in accordance with and pursuant to the terms of the Litigation and Distribution Trust Agreement and the Plan. The Oversight Committee shall have the authority to select and engage such professionals as the Oversight Committee deems necessary and desirable to assist the Oversight Committee in fulfilling its obligations under the Litigation and Distribution Trust Agreement and the Plan, and the Litigation and Distribution Trust shall pay the reasonable and documented fees of such advisors (including on an hourly, contingency, or modified contingency basis) and reimburse such advisors for their reasonable and documented out-of-pocket costs and expenses consistent with the terms of the Litigation and Distribution Trust Agreement.

7.6.3     Regular Meetings of the Oversight Committee.  Meetings of the Oversight Committee are to be held with such frequency and at such place as the Litigation and Distribution Trustee and the members of the Oversight Committee may determine in their reasonable discretion.

7.6.4     Special Meetings of the Oversight Committee. Special meetings of the Oversight Committee may be held whenever and wherever called for by the Litigation and Distribution Trustee or any member of the Oversight Committee, subject to reasonable notice.

7.6.5     Manner of Acting.

A majority of the total number of members of the Oversight Committee then in office shall constitute a quorum for the transaction of business at any meeting of the Oversight Committee. The affirmative vote of a majority of the members of the Oversight Committee present and entitled to vote at a meeting at which a quorum is present shall be the act of the Oversight Committee except as otherwise required by law or as provided in the Litigation and Distribution Trust Agreement or the Plan. Any or all of the members of the Oversight Committee may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all Persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.

Any member of the Oversight Committee participating in a meeting by this means is deemed to be present in person at the meeting. Voting (including on negative notice) may, if approved by the majority of the members at a meeting, be conducted by electronic mail or individual communications by the Litigation and Distribution Trustee and each member of the Oversight Committee. Any member of the Oversight Committee who is present and entitled to vote at a meeting of the Oversight Committee when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Oversight Committee, unless: (i) such member of the Oversight Committee objects at the beginning of the meeting (or promptly upon his or her arrival) to holding it or transacting business at the meeting; (ii) his or her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he or she delivers written notice (including by electronic or facsimile transmission) of his or her dissent or abstention to the

35

Oversight Committee before its adjournment. The right of dissent or abstention is not available to any member of the Oversight Committee who votes in favor of the action taken.

Prior to the taking of a vote on any matter or issue or the taking of any action with respect to any matter or issue, each member of the Oversight Committee shall report to the Oversight Committee any conflict of interest such member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including disclosing any and all financial or other pecuniary interests that such member might have with respect to or in connection with such matter or issue, other than as a Litigation and Distribution Trust Beneficiary). A member who has or who may have a conflict of interest shall be deemed to be a "conflicted member" who shall not be entitled to vote with respect to such matter or issue (however such member shall be counted for purposes of determining the existence of a quorum and may engage in the Oversight Committee's discussions on such matter or issue); the vote or action with respect to such matter or issue shall be undertaken only by members of the Oversight Committee who are not "conflicted members." Notwithstanding anything to the contrary set forth herein, no member of the Oversight Committee shall be deemed to be a "conflicted member" solely as a result of (i) such member's affiliation with a Person that is a Litigation and Distribution Trust Beneficiary or (ii) such member's affiliation with any Person that is, or is adverse to, a defendant in any action or proceeding to which the Litigation and Distribution Trustee is a party.

7.6.6    <u>Liquidating Oversight Committee's Action Without a Meeting.</u>    Any action required or permitted to be taken by the Oversight Committee at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Oversight Committee as evidenced by one or more written consents describing the action taken, signed by all members of the Oversight Committee and recorded in the minutes or other transcript of proceedings of the Oversight Committee.

7.6.7    <u>Tenure, Removal, and Replacement of the Members of the Oversight Committee.</u> The authority of the members of the Oversight Committee will be effective as of the Effective Date and will remain and continue in full force and effect until the Litigation and Distribution Trust is terminated. The service of the members of the Oversight Committee will be subject to the following:

7.6.7.1 The members of the Oversight Committee will serve until disability, death, resignation or removal;

7.6.7.2 A member of the Oversight Committee may resign at any time by providing a written notice of resignation to the remaining members of the Oversight Committee. Such resignation will be effective upon the date received by the Oversight Committee or such later date specified in the written notice;

7.6.7.3 A member of the Oversight Committee may be removed by the majority vote of the other members of the Oversight Committee, a written resolution of which shall be delivered to the removed Oversight Committee member; provided, however, that such removal may only be made for cause;

7.6.7.4 In the event of a vacancy on the Oversight Committee (whether by removal, disability, death or resignation), a new member shall be appointed to fill such position by the remaining members of the Oversight Committee. Immediately upon the appointment of any successor member of the Oversight Committee, all rights, powers, duties, authority, and privileges of the predecessor member of the Oversight Committee hereunder will be vested in and undertaken by the successor member of the Oversight Committee without any further act; and the successor member of the Oversight Committee will not be liable personally for any act or omission of the predecessor member of the Oversight Committee; and

7.6.7.5 Every successor member of the Oversight Committee appointed hereunder shall execute, acknowledge and deliver to the Litigation and Distribution Trustee and other members an instrument accepting the appointment under the Litigation and Distribution Trust Agreement and agreeing to be bound thereto, and thereupon the successor member of the Oversight Committee without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of the retiring member.

7.6.8   Compensation and Reimbursement of Expenses of the Oversight Committee. The Litigation and Distribution Trust will reimburse the members of the Oversight Committee for all reasonable and documented out-of-pocket expenses incurred by such members in connection with the performance of their respective services hereunder, without duplication, upon demand for payment thereof. All fees and expenses of the members of the Oversight Committee shall be paid solely from Litigation and Distribution Trust Proceeds.

**7.7** **Special Governance Provisions Regarding Prosecution and Settlement of Causes of Action.** All decisions concerning whether to prosecute or settle any Causes of Action shall be made by the Oversight Committee in good faith and in the best interests of the Litigation and Distribution Trust. The settlement of any of the Causes of Action shall require the approval of a majority vote of the members of the Oversight Committee, Rights of Oversight Committee Paramount. The rights and powers of the Oversight Committee to direct the Litigation and Distribution Trustee as set forth in the Litigation and Distribution Trust Agreement shall govern and be paramount, notwithstanding anything to the contrary herein.

**7.8** **Indemnification.**

From and after the Effective Date, the Litigation and Distribution Trustee, the members of the Oversight Committee serving at any time in such capacity and all Persons retained by the Litigation and Distribution Trust (collectively, the "Litigation and Distribution Trust Indemnified Parties" and each a "Litigation and Distribution Trust Indemnified Party") shall be, and hereby are, indemnified by the Litigation and Distribution Trust through the Litigation and Distribution Trust Assets, to the fullest extent permitted by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, causes of action, bonds, covenants, judgments, damages, attorneys' fees, defense costs, and other assertions of liability arising out of any such Litigation

and Distribution Trust Indemnified Party's good faith exercise of what such Litigation and Distribution Trust Indemnified Party reasonably understands to be its powers or the discharge of what such Litigation and Distribution Trust Indemnified Party reasonably understands to be its duties conferred by the Litigation and Distribution Trust Agreement, the Plan, or any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law, or otherwise (except only for actions or omissions to act to the extent determined by a Final Order to be due to its own fraud, self-dealing, intentional misrepresentation, gross negligence or willful misconduct), including, but not limited to, acts or omissions concerning pursuing or not pursuing the Litigation and Distribution Trust Assets, on and after the Effective Date. The foregoing indemnification shall also extend to matters directly or indirectly in connection with, arising out of, based on, or in any way related to (a) the Plan; (b) the Litigation and Distribution Trust Agreement; (c) the services to be rendered pursuant to the Plan or Litigation and Distribution Trust Agreement; (d) any document or information, whether verbal or written, referred to herein or supplied to the Litigation and Distribution Trustee; or (e) proceedings by or on behalf of any creditor or Debtor. The Litigation and Distribution Trust shall, on demand, advance or pay promptly out of the Litigation and Distribution Trust Assets, on behalf of each Litigation and Distribution Trust Indemnified Party, reasonable and documented attorneys' fees and other expenses and disbursements to which such Litigation and Distribution Trust Indemnified Party would be entitled pursuant to the foregoing indemnification obligation; provided, however, that any Litigation and Distribution Trust Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance if a court of competent jurisdiction ultimately determines that such Litigation and Distribution Trust Indemnified Party is not entitled to indemnification hereunder due to the fraud, self-dealing, intentional misrepresentation, gross negligence or willful misconduct of such Litigation and Distribution Trust Indemnified Party. In any matter covered by the first two sentences of this subsection, any Person entitled to indemnification shall have the right to employ such Person's own separate counsel reasonably acceptable to the Litigation and Distribution Trustee, at the Litigation and Distribution Trust's expense, subject to the foregoing terms and conditions.

**7.9    LT Reserves.**

The Litigation and Distribution Trustee may establish one or more LT Reserves on account of Class 2 Contested Claims, the holders of which would be Litigation and Distribution Trust Beneficiaries were such Class 2 Contested Claims ultimately Allowed. The amount held back in the LT Reserve(s) shall be equal to the amount necessary to satisfy the Plan Distributions to which the holders of the relevant Contested Claims would be entitled if all such Contested Claims were to be subsequently Allowed.

**7.10    Discharge of Litigation and Distribution Trustee and Dissolution.**

The Litigation and Distribution Trustee and the Litigation and Distribution Trust shall be discharged or dissolved, as the case may be, at such time as (i) all assets of the Litigation and Distribution Trust have been liquidated and (ii) all distributions required to be made by the Litigation and Distribution Trustee under the Plan have been made, but in no event shall the Litigation and Distribution Trust be dissolved later than five (5) years from the Effective Date; provided, however, that the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Litigation and Distribution Trust for a finite period if (i) such extension is necessary to

the purpose of the Litigation and Distribution Trust, (ii) the Litigation and Distribution Trustee receives an opinion of counsel or a ruling from the IRS stating that such extension would not adversely affect the status of the Litigation and Distribution Trust as a liquidating trust for federal income tax purposes, and (iii) such extension is obtained within the six (6) month period prior to the Litigation and Distribution Trust's fifth (5th) anniversary or the end of the immediately preceding extension period, as applicable. Upon dissolution of the Litigation and Distribution Trust, any remaining Cash on hand and other assets, with the exception of any Causes of Action will be distributed to the Litigation and Distribution Trust Beneficiaries in accordance with the Litigation and Distribution Trust Agreement. Upon the dissolution of the Litigation and Distribution Trust, all remaining Causes of Action shall be deemed void and abandoned and no Litigation and Distribution Trust Beneficiary shall have any right, title or interest in or to any such Cause of Action.

At such time as the Litigation and Distribution Trust has been fully administered (i.e., when all things requiring action by the Litigation and Distribution Trustee – including the liquidation of all Litigation and Distribution Trust Assets and the making of all distributions required under the Plan – have been done, and the Plan has been substantially consummated), the Liquidating Trustee shall file an application for approval of his final report and the entry of a final decree with the Bankruptcy Court.

## 7.11    Taxes.

For federal income tax purposes, (i) all parties (including, without limitation, the Debtor, the Litigation and Distribution Trustee, and the Litigation and Distribution Trust Beneficiaries) shall treat the Litigation and Distribution Trust as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684, (ii) the transfer of assets of the Debtor to the Litigation and Distribution Trust under the Plan shall be treated as a deemed transfer to the Litigation and Distribution Trust Beneficiaries in satisfaction of their Claims followed by a deemed transfer of the Litigation and Distribution Assets by the Litigation and Distribution Trust Beneficiaries to the Litigation and Distribution Trust, (iii) the Litigation and Distribution Trust Beneficiaries will be deemed to be the grantors and owners of the Litigation and Distribution Trust and its assets, and (iv) the Litigation and Distribution Trust will be taxed as a grantor trust within the meaning of sections 671-677 of the Internal Revenue Code owned by the Litigation and Distribution Trust Beneficiaries.   The Litigation and Distribution Trust will file federal income tax returns as a grantor trust under Internal Revenue Code section 671 and Treasury Regulation section 1.671-4 and report, but not pay tax on, the Litigation and Distribution Trust's tax items of income, gain, loss deductions and credits ("Tax Items").   The Litigation and Distribution Trust Beneficiaries will report such Tax Items on their federal income tax returns and pay any resulting federal income tax liability.   All parties will use consistent valuations of the Litigation and Distribution Trust Assets transferred to the Litigation and Distribution Trust for all federal income tax purposes.   The Litigation and Distribution Trust Assets shall be valued based on the Litigation and Distribution Trustee's good faith determination of their fair market value.

The Litigation and Distribution Trustee may, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), (i) make an election pursuant to Treasury Regulation section 1.468B-9 to treat the LT Reserve(s) as a "disputed ownership fund"

within the meaning of that section, (ii) allocate taxable income or loss to the LT Reserve(s), with respect to any given taxable year (but only for the portion of the taxable year with respect to which such Claims are Contested Claims), and (iii) distribute assets from the LT Reserve(s) as, when, and to the extent, such Contested Claims either become Allowed or are otherwise resolved. The Litigation and Distribution Trust Beneficiaries shall be bound by such election, if made by the Litigation and Distribution Trustee, and as such shall, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), report consistently therewith.

For federal and applicable state income tax purposes, all parties (including, without limitation, the Debtor, the Litigation and Distribution Trustee, and the Litigation and Distribution Trust Beneficiaries) shall treat the transfers of Litigation and Distribution Trust Assets to the Litigation and Distribution Trust in accordance with the terms of the Plan as a sale by the Debtor and/or its Estate of such Litigation and Distribution Trust Assets to the Litigation and Distribution Trust at a selling price equal to the fair market value of such Litigation and Distribution Trust Assets on the date of transfer. The Litigation and Distribution Trust shall be treated as the owner of all Litigation and Distribution Trust Assets that it holds.

**ARTICLE VIII.**

**INJUNCTIONS, EXCULPATION AND LIMITATION ON LIABILITY**

**8.1    Term of Bankruptcy Injunction or Stays.**

All injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

Except as otherwise provided in the Plan or the Confirmation Order, or to the extent necessary to enforce the terms and conditions of the Plan, the Confirmation Order, or a separate Order of the Bankruptcy Court, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against in the Debtor or the Estate are, with respect to any such Claims, permanently enjoined after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, the Estate, the Reorganized Debtor, or any of the assets of the Debtor or its Estate, whether remaining with the Reorganized Debtor or being transferred to the Litigation and Distribution Trust, or any successor to any of the foregoing Persons or any property of any such successor; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtor, the Estate, the Reorganized Debtor or any of the assets of the Debtor or its Estate, whether remaining with the Reorganized Debtor or being transferred to the Litigation and Distribution Trust, or any successor to any of the foregoing Persons or any property of any such successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Reorganized Debtor, the Estate or any of the assets of the Debtor or its Estate, whether remaining with the Reorganized Debtor or being

40

transferred to the Litigation and Distribution Trust, or any successor to any of the foregoing Persons or any property of any such successor; (iv) commencing or continuing in any manner or in any place, any suit, action or other proceeding on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released, satisfied, or otherwise addressed pursuant to the Plan or the Confirmation Order, including, but not limited to, through the releases and exculpations provided under the Plan; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the fullest extent permitted by applicable law; and (vi) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of this Plan. Each holder of an Allowed Claim shall be deemed to have specifically consented to the injunctions set forth herein.

The foregoing injunctions shall extend for the benefit of the Litigation and Distribution Trustee, and any successors of the Debtor or the Reorganized Debtor, and to any property and interest in property subject to this Plan.

**8.2    Discharge.**

Except as otherwise provided in the Plan or in the Confirmation Order, rights afforded in, and all consideration distributed under, this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtor or any of its assets or properties, except as to the Litigation and Distribution Trust Assets. Upon the Effective Date, except as otherwise provided for in the Plan or Confirmation Order, FNBC shall be deemed discharged and released under section 1141(d)(l)(A) of the Bankruptcy Code from any and all Claims, including, without limitation, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Claim based upon such debt is Allowed under Section 501 of the Bankruptcy Code, or (b) a Claim based upon such debt is Allowed under Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based upon such debt accepted this Plan. Nothing in the Plan or Confirmation Order constitutes a determination as to the applicability of 11 U.S.C. §1141(d)(6)(A) and the rights of a domestic governmental unit under such section are preserved.

**8.3    Injunction.**

**FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATIONS GRANTED IN THIS PLAN, THE DEBTOR AND ALL PARTIES IN INTEREST SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION, OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN.**

**8.4**     **Exculpation.**

No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any claim, obligation, Cause of Action or liability for any claim in connection with or arising out of, the administration of the Chapter 11 Case, entry into the Litigation and Distribution Trust Agreement, the negotiation and pursuit of this Plan, or the solicitation of votes for, or confirmation of, this Plan, the funding of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, and the issuance of securities under or in connection with this Plan or the transactions contemplated by the foregoing, except for willful misconduct, gross negligence, or intentional fraud as determined by Final Order of the Bankruptcy Court, but in all respects such Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities pursuant to this Plan. The Exculpated Parties have participated in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of any securities pursuant to the Plan, and are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of securities thereunder.

**8.5**     **Limitation on Liability of Litigation and Distribution Trustee.**

The Litigation and Distribution Trustee will not be liable for any act he may do or omit to do as Litigation and Distribution Trustee under the Plan and the Litigation and Distribution Trust Agreement, as applicable, while acting in good faith and in the exercise of his reasonable business judgment; nor will the Litigation and Distribution Trustee be liable in any event, except for willful misconduct, gross negligence, or intentional fraud. The foregoing limitation on liability will also apply to any Person (including any professional) employed by the Litigation and Distribution Trustee and acting on behalf of the Litigation and Distribution Trust in the fulfillment of its respective duties hereunder or under the Litigation and Distribution Trust Agreement.

**8.6**     **D&O Claims and D&O Policies.**

For the avoidance of doubt, and notwithstanding anything to the contrary set forth in this Plan, including this Article VIII, no release, exculpation, injunction, or waiver set forth in this Plan shall apply to any D&O Claims (or claims relating to any D&O Policies) belonging to or pursuable by the Committee or the Litigation and Distribution Trust or Litigation and Distribution Trustee, and all such claims and related Causes of Action are expressly reserved and preserved as set forth in Section 6.3 above.

**8.7**     **SEC Rights Preserved.**

Notwithstanding any provision herein to the contrary, no provision of the Plan or any order confirming the Plan: (i) releases or exculpates any non-debtor person or entity from any claim or cause of action of the U.S. Securities and Exchange Commission ("SEC"); or (ii) enjoins, limits, impairs or delays the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor person or entity in any forum.

42

# ARTICLE IX.

## PLAN DISTRIBUTION PROVISIONS

**9.1**     **Plan Distributions.**

As set forth above, The Debtor or the Reorganized Debtor, as the case may be, shall make all Plan Distributions (or reserve for such Plan Distributions) to Unclassified Claims, Class 1 Claims and Class 3 Equity Interests due or pending as of the Effective Date. The Litigation and Distribution Trustee shall make all Plan Distributions in accordance with the Plan and the Litigation and Distribution Trust Agreement to Class 2 claimants and all U.S. Trustee fees accruing after the Effective Date. In the event that a Plan Distribution shall be payable on a day other than a Business Day, such Plan Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due. Except as otherwise provided herein, Plan Distributions shall be made to the holders of Allowed Claims as reflected in the registry of claims maintained by the Debtor or the Litigation and Distribution Trustee on the Effective Date. **NO DISTRIBUTION SHALL BE MADE PURSUANT TO THIS PLAN TO A HOLDER OF A CLAIM UNLESS AND UNTIL SUCH CLAIM IS OR BECOMES AN ALLOWED CLAIM.** The Litigation and Distribution Trustee and its agents may, but shall have no obligation to, recognize any transfer of a Claim after the Effective Date.

**9.2**     **Timing of Plan Distributions.**

Each Plan Distribution shall be made on the relevant Plan Distribution Date therefor and shall be deemed to have been timely made if made on such date or within ten (10) days thereafter.

**9.3**     **Delivery of Plan Distributions and Undeliverable or Unclaimed Distributions.**

9.3.1     <u>Delivery of Plan Distributions in General</u>. Subject to Bankruptcy Rule 9010, any Plan Distribution to a holder of an Allowed Claim shall be made at the last known address of such holder as set forth (i) in the Schedules, (ii) on the proof of Claim filed by such holder, (iii) in any notice of transfer of claim filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e) or (iv) in any notice served by such holder giving details of a change of address.

9.3.2     <u>Undeliverable and Unclaimed Plan Distributions</u>.

i) <u>General</u>. None of the Debtor, the Reorganized Debtor, or the Litigation and Distribution Trustee, as the case may be, shall have a duty to make distributions to any holder of an Allowed Claim with an undeliverable address as determined by any undeliverable or returned notice to the Debtor, the Reorganized Debtor, or the Litigation and Distribution Trustee, as the case may be, unless and until the Debtor, the Reorganized Debtor, or the Litigation and Distribution Trustee, as the case may be, is notified in writing of such holder's then-current address prior the Plan Distribution Date. If the distribution to any holder of an Allowed Claim is returned to the Debtor, the Reorganized Debtor, or the Litigation and Distribution Trustee, as the case may be, as undeliverable or is otherwise unclaimed, no further Plan Distribution shall be made to such holder unless the Debtor, the Reorganized

43

Debtor, or the Litigation and Distribution Trustee, as the case may be, is notified of such holder's then-current address within six months after such Plan Distribution was returned. After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution, if the Claim is a Class 2 Claim, the unclaimed Distributions will be redistributed on a Pro Rata basis to all known and locatable holders of Allowed Claims in Class 2 if such a Distribution, after expenses of Distribution, would produce an aggregate minimum dividend of $50,000. If such Distribution would produce an aggregate dividend of less than $50,000, the Litigation and Distribution Trustee may donate any remaining Cash allocable to any unclaimed Distributions to a charitable institution. After such donation, the Litigation and Distribution Trustee, and his agents and Professionals will be fully discharged and released from any claims related to the unclaimed Distributions. If the Claim is an Unclassified Claim or a Class 1 Claim, such forfeited amount shall be retained by the Reorganized Debtor, free of any restrictions.

ii) <u>Non-Negotiated Checks</u>. Checks issued in respect of Allowed Claims shall be null and void if not presented within six months after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Debtor, the Reorganized Debtor, or the Litigation and Distribution Trustee, as the case may be, by the holder of the Allowed Claim to whom such check was originally issued. Any claim in respect of such a voided check shall be made within six months after the date of issuance of such check after such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution, and the undeliverable or unclaimed Plan Distribution shall be distributed as set forth in 9.3.2 above.

**9.4**     <u>**Plan Distributions Subject to Withholding and Reporting Requirements.**</u>

All Plan Distributions hereunder shall be subject to all withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities. Notwithstanding the above, each holder of an Allowed Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit, including income, withholding and other tax obligations, on account of such Plan Distribution. **The Debtor, the Reorganized Debtor, and the Litigation and Distribution Trustee have the right to withhold a Plan Distribution until such holder has made arrangements satisfactory to the Debtor, the Reorganized Debtor, or the Litigation and Distribution Trustee, as the case may be, for payment of any such tax obligations, including, without limitation, the provision by the holder of a Claim IRS Form W-9 and any other information determined by the Debtor, the Reorganized Debtor, or the Litigation and Distribution Trustee, as the case may be, to be necessary or appropriate to effect information reporting and tax withholding. If the Debtor, the Reorganized Debtor, or the Litigation and Distribution Trustee, as the case may be, has not received IRS Form W-9 or other requested tax reporting information from the holder of a Claim before the relevant Plan Distribution Date, any property or Cash to be distributed pursuant to this Plan shall, pending receipt of IRS Form W-9 or such other requested information, be treated as an unclaimed distribution under this Plan, as set forth in Section 9.3.2.**

**9.5**      **Manner of Payment Under the Plan.**

Unless the Person receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank. Cash payments to foreign creditors may, in addition to the foregoing, be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**9.6**      **Rounding.**

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent, with one-half cent being rounded up to the nearest whole cent.

**9.7**      **Settlement of Claims and Controversies.**

Pursuant to sections 363 and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of such Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate and holders of Claims and is fair, equitable and reasonable.

**9.8**      **Setoffs and Recoupments.**

The Litigation and Distribution Trustee may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, exercise the right of setoff or recoupment against any Allowed Class 2 Claim and the distributions to be made pursuant to the Plan on account of such Claim (before distribution is made on account of such Claim) of the claims, rights and causes of action of any nature that the Debtor may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Litigation and Distribution Trustee of any such claims, rights and causes of action that the Litigation and Distribution Trust may possess against such holder.

**ARTICLE X.**

**PROCEDURES FOR RESOLVING
AND TREATING CONTESTED CLAIMS**

**10.1**      **Claim Objection Deadline.**

Objections to Class 2 Claims shall be filed by the Litigation and Distribution Trustee with the Bankruptcy Court and served upon the holders of each of the Claims to which an objection is made within 180 days after the Effective Date of this Plan. The time period for filing objections

to Class 2 Claims may be extended by the Court upon motion of the Litigation and Distribution Trustee. Objections to Class 1 Claims shall be filed by the Debtor on or before the Effective Date of the Plan; and objections to Administrative Expense Claims shall be filed by the Debtor within 60 days of the Effective Date or as otherwise provided for by the Bankruptcy Court's Local Rules applicable to the hearing on such holder's motion or application for Allowance of Administrative Expense Claim.

## 10.2    Prosecution of Contested Claims.

After the Effective Date, the Litigation and Distribution Trustee may (i) prosecute any objection to a Class 2 Claim filed by the Debtor prior to the Effective Date and (ii) object to the allowance of Class 2 Claims filed with the Bankruptcy Court before, on or after the Effective Date with respect to which liability is Contested. All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 10.3.

## 10.3    Claims Settlement.

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Litigation and Distribution Trustee shall have authority to settle or compromise all claims and Causes of Action without further review or approval of the Bankruptcy Court.

## 10.4    Entitlement to Plan Distributions upon Allowance.

Notwithstanding any other provision of the Plan, except as otherwise agreed by the Litigation and Distribution Trustee or the Debtor, as applicable, no Plan Distribution shall be made with respect to any Claim to the extent it is a Contested Claim, unless and until such Contested Claim becomes an Allowed Claim, subject to the setoff rights as provided in Section 9.9. When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when) the holder of such Allowed Claim shall thereupon become entitled to receive the Plan Distributions in respect of such Claim, the same as though such Claim had been an Allowed Claim on the Effective Date.

## ARTICLE XI.

## CONDITIONS PRECEDENT TO
## CONFIRMATION OF THE PLAN AND
## THE OCCURRENCE OF THE EFFECTIVE DATE

## 11.1    Conditions Precedent to Confirmation.

The following shall be conditions precedent to confirmation of the Plan:

(a)    the Bankruptcy Court shall have entered an Order or Orders (i) approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, (ii) authorizing the solicitation of votes with respect to the Plan, (iii) determining that all votes are binding and have been properly tabulated as acceptances or rejections

of the Plan, (iv) confirming and giving effect to the terms and provisions of the Plan, (vi) determining that all applicable tests, standards and burdens in connection with the Plan have been duly satisfied and met by the Debtor and the Plan, (vii) approving the Plan Documents and (viii) authorizing the Debtor to execute, enter into and deliver the Plan Documents, and to execute, implement and to take all actions otherwise necessary or appropriate to give effect to the transactions and transfer or revesting of assets contemplated by the Plan and the Plan Documents;

(b)      the Confirmation Order, the Plan Documents and the Plan are each in a form and substance satisfactory to the Debtor and the Committee; and

(c)      the Confirmation Order shall include determinations that all of the settlements and compromises contained in the Plan meet the applicable standards under section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 for approval and implementation.

**11.2    Conditions Precedent to the Occurrence of the Effective Date.**

The following shall be conditions precedent to the occurrence of the Effective Date with respect to the Debtor's Estate:

(a)      the Confirmation Order shall have been entered by the Bankruptcy Court, be in full force and effect and not be subject to any stay or injunction;

(b)      the Litigation and Distribution Trustee shall have accepted, in writing, the terms of his service and compensation, and such terms and compensation shall have been approved by the Bankruptcy Court in the Confirmation Order;

(c)      the First Round Investment shall be immediately available for disbursement from escrow for use in accordance with this Plan;

(d)      the disclosures to the Committee regarding the identities and amounts advanced by each of the First Round Investors required by section 6.1 above shall have occurred and been made;

(e)      the form of amendments to the charter and by-laws of the Debtor as required by this Plan shall be reasonably acceptable to the Committee;

(f)      the Litigation and Distribution Trust shall have been established;

(g)      the SPV shall have been established and all documents required for its acquisition of Bondholder Claims shall have been prepared; and,

(h)      Unless waived in writing by the authorized agent of the SPV, the aggregate of the Subordinated Instruments 1, to be issued to Bondholders pursuant to Section 3.3.2(iii)(b) of the Plan, does not exceed $30,000,000.

**11.3    Waiver of Conditions.**

The Debtor, with the written concurrence of the Committee, and the Committee, may waive any one or more of the conditions set forth in Section 11.1 or Section 11.2 (a) through (h) in a

writing without notice or order of the Bankruptcy Court and without notice to any other parties in interest.  SPV, through its authorized agent, may waive the condition set forth in Section 11.2 (i) in a writing to the Debtor and the Committee without notice or order of the Bankruptcy Court and without notice to any other parties in interest.

**11.4** **Effect of Non-Occurrence of the Effective Date.**

If the Effective Date shall not occur (except as provided in Section 11.5 hereof), the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or Equity Interests in the Debtor; (b) prejudice in any manner the rights of the Debtor, including, without limitation, any right to seek propose a new plan; or (c) constitute an admission, acknowledgement, offer or undertaking by the Debtor.

**ARTICLE XII.**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**12.1** **Assumption and Rejection of Executory Contracts and Unexpired Leases.**

(a)     On the Confirmation Date, except to the extent inconsistent with Section 14.5, all executory contracts and unexpired leases of the Debtor, *which have not previously been rejected*, shall be rejected pursuant to the provisions of section 365 of the Bankruptcy Code, except: (i) any executory contracts and unexpired leases that are the subject of separate motions to reject, assume or assume and assign filed pursuant to section 365 of the Bankruptcy Code by the Debtor before the entry of the Confirmation Order; (ii) agreements with third parties regarding preservation of the confidentiality of documents produced by the Debtor.  Any Order entered post-confirmation by the Bankruptcy Court, after notice and a hearing, authorizing the rejection of an executory contract or unexpired lease shall cause such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered pre-confirmation.

(b)     Receipt of this Plan by the counterparties to the executory contracts and unexpired leases of the Debtor rejected pursuant to Section 12.1(a) shall constitute adequate and sufficient notice that (i) any Claims arising under the contract, lease or other agreement or related thereto shall be treated under the Plan as General Unsecured Claims as against the Debtor that was a party to the contract, lease or other agreement, and (ii) the Debtor is no longer bound by, or otherwise obligated to perform, any such obligations, transactions, or undertakings relating thereto or arising thereunder.

(c)     The Plan shall constitute a motion to reject such executory contracts and unexpired leases rejected pursuant to this section 12.1(a), and the Debtor shall have no liability thereunder except as is specifically provided in the Plan.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected agreement, executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtor and its estate.

**12.2    Claims Arising from Rejection, Expiration or Termination.**

Claims created by the rejection of executory contracts and unexpired leases, pursuant solely to   Plan Section 12.1(a), must be filed with the Bankruptcy Court no later than fifteen (15) days after the Confirmation Date. **Any such Claims for which a proof of claim is not filed and served by the deadline set forth above will be forever barred from assertion and shall not be enforceable against the Debtor and the Estate**. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan subject to objection by the Litigation and Distribution Trustee.

<h1 style="text-align:center">ARTICLE XIII.</h1>

<h1 style="text-align:center">RETENTION OF JURISDICTION</h1>

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Case or the Plan or (c) that relates to the following:

(i)    to hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article XII hereof for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable;

(ii)    to hear and determine any and all Claims and any related disputes, including, without limitation, the exercise or enforcement of setoff or recoupment rights, or rights against any third party or the property of any third party resulting therefrom or from the expiration, termination or liquidation of any executory contract or unexpired lease;

(iii)    to determine any and all adversary proceedings, applications, motions and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Litigation and Distribution Trustee after the Effective Date;

(iv)    to hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without express or implied limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow or estimate any Contested Claim in whole or in part;

(v)    to issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

(vi)    to consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(vii)    to hear and determine all Fee Applications and applications for allowances of compensation and reimbursement of any other fees and expenses authorized to be paid or reimbursed under the Plan or the Bankruptcy Code;

(viii)    to hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with the Plan, the Litigation and Distribution Trust Agreement, and any other Plan Documents or their interpretation, implementation, enforcement or consummation;

(ix)    to hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with the Confirmation Order (and all exhibits to the Plan) or its interpretation, implementation, enforcement or consummation;

(x)    to resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Case, the Bar Dates, the hearing on the approval of the Disclosure Statement as containing adequate information, the hearing on the confirmation of the Plan for the purpose of determining whether a Claim is discharged hereunder or for any other purpose;

(xi)    to the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or Cause of Action by, on behalf of or against the Estate;

(xii)    to determine such other matters that may be set forth in the Plan or the Confirmation Order, or that may arise in connection with the Plan or the Confirmation Order;

(xiii)    to hear and determine matters concerning state, local and federal taxes, fines, penalties or additions to taxes for which the Debtor may be liable in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(xiv)    to hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with any setoff and/or recoupment rights of the Debtor, Litigation and Distribution Trustee or any Person under the Plan;

(xv)    to hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with Causes of Action of the Debtor (including Avoidance Actions) commenced by the Litigation and Distribution Trustee, the Debtor, or any third parties, as applicable, before or after the Effective Date;

(xvi)    to enter an order or final decree closing the Chapter 11 Case;

(xvii)    to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order; and

(xviii)    to hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code.

## ARTICLE XIV.

## MISCELLANEOUS PROVISIONS

**14.1    Satisfaction of Claims.**

Subject to the occurrence of the Effective Date, except as otherwise provided in the Plan, including Article VI hereof, as of the Effective Date, the Debtor shall be discharged of any debt and/or obligation that arose before entry of the order confirming of the Plan to the full extent provided by 11 U.S.C. § 1141(d); and, except as provided for in Article VI herein, **all Persons shall be precluded from asserting against the Debtor, the Reorganized Debtor, the Litigation and Distribution Trustee or their respective successors or property, any other or further Claims, debts, rights, Causes of Action, liabilities or Equity Interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date, including any Claims or Equity Interests that are not placed in a Class under the Plan.**

**14.2    Special Provisions Regarding Insurance Policies and Insured Claims.**

14.2.1    Insurance Policies. For the avoidance of doubt, the Debtor's and Estate's rights with respect to all Insurance Policies (including all Insurance Policies that may have expired prior to the Petition Date, all Insurance Policies in existence on the Petition Date, and all Insurance Policies under which the Debtor holds rights to make, amend, prosecute and benefit from claims) shall be deemed be transferred to the Litigation and Distribution Trust from the Effective Date until its dissolution.

Notwithstanding anything to the contrary in the Plan, any Insurance Policy in effect as of the Effective Date shall continue in effect after the Effective Date pursuant to its terms and conditions. Nothing in the Plan shall relieve any insurer from performing its obligations under the Insurance Policies, regardless of whether such obligations arise prior to or after the Effective Date.

Notwithstanding any default by the Debtor with respect to any of the Insurance Policies, nothing in this Plan shall be construed or applied to modify, impair, or otherwise affect the enforceability of the Insurance Policies or any coverage thereunder with regard to any claims or Causes of Action. The Plan shall be liberally construed to protect the interests of all creditors in all Causes of Action and to limit any Claims against the Estate.

14.2.2    Notwithstanding anything to the contrary in this Plan or any Plan Supplement, including, but not limited to, the Litigation and Distribution Trust Agreement, nothing herein or in such Plan Supplement shall: (a) affect, impair, modify, or otherwise alter the terms and conditions of any insurance policies, including the D&O Policies, that provide coverage to Debtor's and its subsidiaries' directors and officers, including, without limitation, the priority of payments set forth therein or with respect to any D&O Claim; or (b) constitute a finding or conclusion that the proceeds of such policies are property of the Estate or otherwise subject to the control of the Debtor or the Litigation and Distribution Trustee. All of the Debtor's and its subsidiaries' directors' and officers' rights in and to such policies are hereby preserved. For the avoidance of doubt, the insurance policies to which this paragraph relates include the D&O Policies as defined herein.

14.2.3    Insured Claims shall be satisfied from the proceeds of any applicable Insurance Policy.  Insured Claims are not classified and, pursuant to Section 9.10(b), are not entitled to any distributions under the Plan until the relevant holder has exhausted all remedies with respect to the applicable Insurance Policy.   To the extent an Insured Claim is not satisfied in full from the proceeds of the applicable Insurance Policy, any Claim remainder shall be classified in the applicable Class under the Plan and, if allowed, treated in accordance with the treatment of Claims in that Class under the Plan.  Nothing in this Section 14.3.2 shall constitute a waiver of any claim, right or cause of action the Debtor or the Estate may hold against any Person, including any insurer. Pursuant to section 524(e) of the Bankruptcy Code, nothing in the Plan shall release or discharge any insurer from any obligations to any Person under applicable law or any policy of insurance under which the Debtor is an insured or beneficiary or for purposes of any insurance recovery.

**14.3    Third Party Agreements; Subordination.**

The Plan Distributions to the various classes of Claims hereunder shall not affect the right of any Person to levy, garnish, attach or employ any other legal process with respect to such Plan Distributions by reason of any claimed subordination rights or otherwise.  All such rights and any agreements relating thereto shall remain in full force and effect, except as otherwise compromised and settled pursuant to the Plan.

Plan Distributions shall be subject to and modified by any Final Order directing distributions other than as provided in the Plan.  The right of the Debtor or the Litigation and Distribution Trustee to seek subordination of any Claim pursuant to section 510 of the Bankruptcy Code is fully reserved, and the treatment afforded any Claim that becomes a subordinated Claim at any time shall be modified to reflect such subordination.  Unless the Confirmation Order provides otherwise, no Plan Distributions shall be made on account of a subordinated Claim.

**14.4    Service of Documents.**

Any notices, requests and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

if to the Debtor:

> **THE STEFFES FIRM, LLC**
> 13702 Coursey Blvd., Bldg. 3
> Baton Rouge, Louisiana 70817
> Facsimile: (225) 751-1998
> Attn: William E. Steffes

if to the Committee:

**JEFFREY D. STERNKLAR, LLC**
 26th Floor
225 Franklin Street
Boston, MA 02110
(617) 507-6530
Attn: Jeffrey D. Sternklar

and

**STEWART, ROBBINS & BROWN, LLC**
301 Main Street, Suite 1640
P. 0. Box 2348
Baton Rouge, LA 70821-2348
Facsimile: (225) 709-9467
Attn: Paul Douglas Stewart, Jr.

## 14.5    Headings.

The headings used in the Plan are inserted for convenience only, and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

## 14.6    Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Louisiana, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents.

## 14.7    Exemption from Transfer Taxes.

Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under or in connection with the Plan, including the creation of any mortgage, deed of trust, lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.  To effectuate the terms of this Section, the Bankruptcy Court may enter any order necessary or appropriate to implement this provision of the Plan.

## 14.8    Notice of Entry of Confirmation Order and Relevant Dates.

Promptly upon entry of the Confirmation Order, the Debtor shall serve on all known parties in interest and holders of Claims and Equity Interests, notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan, including, but not limited to, the deadline for filing rejection damage Claims.

**14.9    Interest and Attorneys' Fees.**

Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in this Plan, the Confirmation Order, or as otherwise required by the Bankruptcy Court or by applicable law.

**14.10   Modification of the Plan.**

As provided in section 1127 of the Bankruptcy Code, modification of the Plan may be proposed in writing by the Debtor, with the written concurrence of the Committee, at any time before confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Plan Proponents shall have complied with section 1125 of the Bankruptcy Code.  The Debtor, with the written concurrence of the Committee, may modify the Plan at any time after confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

**14.11   Revocation of Plan.**

The Debtor, with the written concurrence of the Committee reserves the right to revoke and withdraw the Plan and/or to adjourn the Confirmation Hearing prior to the occurrence of the Effective Date.  If the Plan Proponents revoke or withdraw the Plan, or if the Effective Date does not occur, then the Plan and all settlements and compromises set forth in the Plan and not otherwise approved by a separate Final Order shall be deemed null and void and nothing contained herein and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims against or Equity Interests in the Debtor or to prejudice in any manner the rights of the Debtor or the Committee or any other Person in any other further proceedings involving the Debtor or the Committee.

**14.12   Compliance with Tax Requirements.**

In connection with the Plan, the Debtor and the Litigation and Distribution Trustee, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities.

**14.13   Binding Effect.**

The Plan shall be binding upon the Debtor, the holders of all Claims and Equity Interests, parties in interest, Persons and their respective successors and assigns.  Except as specifically provided in the Plan, to the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of the Plan, the terms of the Plan shall be binding and conclusive.

Nothing in this Plan affects, modifies or otherwise alters the rights, claims, interests or defenses of the FDIC as Receiver for First NBC (the "FDIC-R") as receiver for First NBC Bank, a) under the terms of the Settlement Agreement, as approved by order entered on December 19, 2017 [Doc. 297] b) against any non-Debtor person or entity or c) against any insurance policy under which First NBC Bank or the Debtor is named insured or any insurance policy that may cover any claim that is asserted by the FDIC-R or First NBC Bank or that is property of the Debtor's bankruptcy estate; additionally, for the avoidance of doubt, nothing in this Plan shall be deemed to preclude the FDIC-R from or otherwise affect the FDIC-R's right, if any, to pursue or defend a claim to ownership of claims or causes of action, including any claims or causes of action brought or otherwise prosecuted by the Debtor or the Liquidating Trustee; provided further, that this sentence does not alter or affect an exculpation granted to an Exculpated Party hereunder for work conducted from the Petition Date to the Effective Date.

## 14.14  Rates.

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.  Where a Claim has been denominated in foreign currency on a proof of Claim, the Allowed amount of such Claim shall be calculated in legal tender of the United States based upon the conversion rate in place as of the Petition Date and in accordance with section 502(b) of the Bankruptcy Code.

## 14.15  Extensions of Time.

For cause shown, any deadlines herein which are applicable to the Debtor, its Estate, or the Litigation and Distribution Trust and which are not otherwise specifically extendable as provided in the Plan may be extended by the Bankruptcy Court.

## 14.16  No Admissions.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER PROCEEDINGS CONCERNING CAUSES OF ACTION OR THREATENED CAUSES OF ACTION, THIS PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS PLAN SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES AND OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTOR IN THE CHAPTER 11 CASE.

Dated:  June 21, 2019

Respectfully submitted by:

/s/ Barbara B. Parsons
WILLIAM E. STEFFES (#12426)
BARBARA B. PARSONS (#28714)
**THE STEFFES FIRM, LLC**
13702 Coursey Boulevard, Bldg. 3
Baton Rouge, Louisiana 70817
Telephone: (225) 751-1751
Fax: (225) 751-1998
Email: bparsons@steffeslaw.com

*Counsel for Debtor*