**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **In re:** | **Case No. 17-11213** |
| **First NBC Bank Holding Company,** | **Section "A"** |
| **Debtor.** | **Chapter 11** |

**UNITED STATES' OBJECTION TO CONFIRMATION OF THE SECOND
AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION AS
IMMATERIALLY MODIFIED THROUGH AUGUST 30, 2019**

**NOW INTO COURT**, comes the United States on behalf of its Department of

the Treasury (the "United States"), and hereby objects to confirmation of the Second

Amended Joint Chapter 11 Plan of Reorganization as Immaterially Modified through

August 30, 2019 (the "Modified Plan") (P-741, Ex. A).[1]

**Introduction**

1.  In this objection ("Modified Objection"), the United States objects to

confirmation of the Modified Plan, which changes the treatment of the Series D Preferred

Equity (Class 8) held by the United States compared to the treatment under the Second

Amended Joint Chapter 11 Plan of Reorganization ("Unmodified Plan") (P-621).

**Background**

2.  Debtor claimed its *Unmodified* Plan would not impair the Series D Preferred

Equity, Second Amended Disclosure Statement at 23 (P-622 at 26), arguing that this

equity interest would have been left with unaltered "legal, equitable, and contractual

---

[1] The Debtor made a motion (P-741) — which has not yet been ruled on—for an order approving immaterial modifications ("Modifications") to the Second Amended Joint Chapter 11 Plan.  This Objection assumes that the Modifications will be approved by the Court.  To the extent that the Modifications are not approved by the Court, the United States hereby incorporates by reference its prior Objection (P-669) ("United States' Objection") and the United States' Supplemental Brief (P-691).

rights, all as set forth in the Articles of Amendment to the Articles of Incorporation." *Id.* at 35 (P-622 at 38). The United States objected to the Unmodified Plan on the basis that it was not feasible, as leaving Series D Preferred Equity's rights unaltered would require redemption of the shares for approximately $38 million due to a covenant[2] contained in the Securities Purchase Agreement between the Debtor and the United States ("Purchase Agreement"). United States' Objection at 3 (P-669 at 3). Additionally, the United States objected on the basis that failing to redeem the Series D Preferred Equity would mean that Class 8 is impaired, and that the Unmodified Plan would violate the absolute priority rule as common equity—a junior class—would be left with unaltered rights. *Id.* at 4.

3. Judge Magner ordered supplemental briefing on whether the covenants in the Purchase Agreement were binding. United States' Supplemental Brief at 1 (P-691 at 1). Following supplemental briefing, Judge Magner advised the parties that the United States' Objection presented very complex issues and that she could not rule on it prior to expiration of her term. She encouraged the parties to attempt to consensually resolve the United States' Objection.

4. For several weeks, the parties attempted to consensually resolve the United States' Objection, but were unsuccessful. During these negotiations, the Debtor moved for approval of Modifications to the Unmodified Plan.

5. The Modifications state, in part, that in addition to the rights applicable to the Series D Preferred Equity under the amendment to the Articles of Incorporation (the "Articles"), the rights under the Purchase Agreement would be left unaltered. (P-741,

---

[2] This covenant ("BHC Covenant") requires redemption of Series D Preferred Equity when the Debtor is no longer a bank holding company. United States Objection at 2 (p-669 at 2). Debtor lost its status as a bank holding company shortly before the bankruptcy petition was filed. *Id.*

Ex. A at 28).  Additionally, the Modifications state that the Series D Preferred Equity will be redeemed once permitted under applicable law.  *Id.*  In essence, the Modifications acknowledge that the covenants contained in the Purchase Agreement apply, and that the Series D Preferred Equity must be redeemed as the Debtor is no longer a bank holding company.

6.  During negotiations regarding the United States' Objection, the Debtor asserted that under L.A. Rev. Stat. Ann. § 12:1-640, the Debtor/Reorganized Debtor could not redeem the Series D Preferred Equity in a manner that would cause it to be unable to pay its debts as debts became due in the usual course of business.  On that basis, the Debtor/Reorganized Debtor will not be able to redeem the Series D Preferred Equity in full for at least several years as it currently cannot pay approximately $38 million to do so subject to L.A. Rev. Stat. Ann. § 12:1-640—assuming it could ever do so at all.

7.  The Debtor also represented that following confirmation, the Reorganized Debtor would be able to comply with all covenants in the Purchase Agreement, except for three:  (a) the BHC covenant that requires the Series D Preferred to be redeemed if the Debtor is no longer a bank holding company; (b) a covenant that the Debtor remain "predominantly engaged in financial activities" while the United States owns Series D Preferred Equity; and (c) a covenant that the Debtor meet the minimum capital requirements of the "Appropriate Federal Banking Agency."  These covenants are ¶ 3 (e), ¶ 3 (f), and ¶ 3 (g) of the Purchase Agreement, respectively.  (P-669-2 at 28).

8.  In particular, the BHC covenant requires the Debtor to "maintain its status as a" bank holding company as long as the United States owns any Series D Preferred

Equity shares.  Purchase Agreement, ¶ 3 (e) (P-669-2 at 28).  That covenant also requires

the Debtor to redeem all Series D Preferred Equity shares owned by the United States

before termination of bank holding company status.  *Id.*  The United States owns 37,935

shares of Series D Preferred Equity, and their redemption price is at least $1,000 per

share for a total of at least $37,935,000.  *See* United States Objection at 2-3 (P-669 at 2-

3).

**Argument**

**I. Despite the Language of the Modified Plan, the United States Series D Preferred Equity Is Impaired, and Consequently, the Modified Plan Violates the Absolute Priority Rule.**

9.  Generally, a class is not impaired in a bankruptcy plan within the meaning of

11 U.S.C. § 1124 unless "'the plan' itself alters a claimant's 'legal, equitable, [or]

contractual rights.'"  *In re Ultra Petroleum Corp.*, 913 F.3d 533, 540 (5th Cir. 2019).

Under § 1124, any alteration of rights, "no matter how minor, constitutes 'impairment.'"

*In re Village at Camp Bowie I, L.P.*, 710 F.3d 239, 245 (5th Cir. 2013).  Although § 1124

allows a debtor to cure a default that triggers an acceleration clause, "any other change in

the [contractual] arrangement" constitutes impairment.  *In re Elijah*, 41 B.R. 348, 350

(Bankr. W.D. Mo. 1984).

10.  On its face the Modified Plan purports to leave "unaltered the legal,

equitable, and contractual rights" of the Series D Preferred Equity under the Articles and

the Purchase Agreement.  (P-741, Ex. A at 28).  However, under the Modified Plan, the

United States would be required to hold preferred equity in an entity that is not a bank

holding company, s*ee* (P-741, Ex. A at 28), contrary to the terms of the BHC covenant in

the Purchase Agreement.  *See* Purchase Agreement, ¶ 3 (e) (P-669-2 at 28).  The

4

Modified Plan thus alters the United States' rights, and consequently, impairs Class 8 under § 1124.  The United States would be impaired even though Louisiana law may prohibit the Debtor/Reorganized Debtor from redeeming the United States' Series D Preferred Equity in full until its financial condition improves.  Under the Modified Plan, full redemption of the Series D Preferred Equity would be delayed indefinitely—and might never occur—notwithstanding the Debtor/Reorganized Debtor's loss of bank holding company status.

11.  In addition, under the Modified Plan, the United States would be required to hold preferred equity in an entity that does not hold capital as required by the capital covenant in ¶ 3 (g) of the Purchase Agreement (P-669-2 at 28), which also constitutes impairment.

12.  Moreover, if the Reorganized Debtor would not be a "predominantly financial" entity within the meaning of ¶ 3 (f) of the Purchase Agreement (P-669-2 at 28), the United States' Series D Preferred Equity would be impaired on that basis as well.

13.  Under the absolute priority rule, a plan cannot be confirmed when an impaired class has not voted to accept the plan unless:  (a) the impaired class's claim/interest is paid in full; or (b) classes that are junior to the impaired class receive no recovery.  *In re IDEARC, Inc.,* 423 B.R. 138, 170 (Bankr. N.D. Tex. 2009) (citing 11 U.S.C. § 1129 (b)(2)).  Under § 1129 (b)(2)(C), before junior interests can receive or retain any value, a non-consenting impaired equity class must receive—as of the effective date—the greatest of any liquidation preference, fixed redemption price, or value of the impaired shares.  *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 152 (Bankr. S.D.N.Y. 1984).  The United States was deemed to be unimpaired and did not vote on the

Unmodified Plan.

14.  The fixed redemption price for the Series D Preferred Equity due upon the Debtor's loss of bank holding company status is at least $37,935,000.  Under the Modified Plan, the United States' Series D Preferred Equity will not be redeemed in full upon the effective date, and may never be redeemed at all.  Despite that, under the Modified Plan, common equity—a class junior to Series D Preferred Equity—would be left with unaltered "legal, equitable, and contractual rights." (P-741, Ex. A at 27). However, the absolute priority rule requires that common equity receive no recovery if the Series D Preferred Equity will not receive its fixed redemption price.  Accordingly, the Modified Plan violates the absolute priority rule and cannot be confirmed.

**II.  Additionally, the Modified Plan Should Not Be Confirmed Due to Lack of Feasibility.**

15.  To obtain confirmation, the Debtor "must show by a preponderance of the evidence that its plan is feasible," or in other words, "not likely to be followed by . . . liquidation, or the need for further financial reorganization."  *In re Save Our Springs Alliance, Inc.*, 632 F.3d 168, 172 (5th Cir. 2011) (citing 11 U.S.C. § 1129 (a)(11)). Feasibility does not need to be shown to certainty, but rather to "a reasonable assurance of commercial viability."  *Id.*  While there is a commonly used six factor test for feasibility, a court does not need to consider all six factors.  *Id.* at 173.  Among the six factors is consideration of "any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan."  *Id.* at 173 n. 6.

16.  In this case, the requirement to redeem the Series D Preferred Equity—for at least $37,935,000—makes the Modified Plan unfeasible.  To demonstrate that the

Modified Plan is feasible, the Debtor would need to show to a reasonable assurance of commercial viability that the Reorganized Debtor will redeem the Series D Preferred Equity at a cost of at least $37,935,000 subject to L.A. Rev. Stat. Ann. § 12:1-640. It is doubtful that the Debtor could meet that burden.

## Conclusion

17. For the reasons stated herein, and in the United States' Supplemental Brief and the United States' Objection, the United States respectfully requests that this Court deny confirmation of the Modified Plan.

Dated: October 23, 2019

**JOSEPH H. HUNT**
Assistant Attorney General
Civil Division

**PETER G. STRASSER**
United States Attorney

**GLENN SCHREIBER**
Assistant United States Attorney

 /s/ *Serajul F. Ali*
**RUTH A. HARVEY**
**LLOYD H. RANDOLPH**
**SERAJUL F. ALI** (D.C. Bar No. 478505)
Attorneys
U.S. Department of Justice, Civil Division
Commercial Litigation Branch
P.O. Box 875
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 307-0488
Facsimile: (202) 514-9163
E-mail: serajul.ali@usdoj.gov

**Attorneys for the United States**

## <u>CERTIFICATE OF SERVICE</u>

On October 23, 2019, I caused a copy of the foregoing UNITED STATES' OBJECTION

TO CONFIRMATION OF THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF

REORGANIZATION AS IMMATERIALLY MODIFIED THROUGH AUGUST 30, 2019 to be

served electronically through the Court's ECF system upon those who have consented to service

in that manner.


Dated:  October 23, 2019                          _/s/ Serajul F. Ali_
                                                 Serajul F. Ali