**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE:

**FIRST NBC BANK HOLDING COMPANY**                    CASE NO. 17-11213

                                                                                                                      SECTION A

**DEBTOR**                                                                   CHAPTER 11

**PLAN PROPONENTS' SUPPLEMENTAL MEMORANDUM IN RESPONSE TO
UNITED STATES' OBJECTION TO CONFIRMATION OF THE
SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION**

MAY IT PLEASE THE COURT:

      This Supplemental Memorandum is respectfully submitted by First NBC Bank Holding Company ("Debtor" or "FNBC") and the Official Committee of Unsecured Creditors ("Committee"; and, with the Debtor, the "Plan Proponents") in response to the *Objection to Confirmation of the Second Amended Joint Chapter 11 Plan of Reorganization* [Doc. 669] ("Treasury Objection") and the *Supplemental Brief* ("Supplemental Objection") in support thereof [Doc. 691], filed by the United States on behalf of its Department of Treasury ("Treasury"); and, pursuant to the Bankruptcy Court's order [Doc. 766] entered on October 2, 2019. Based on the transition of this case to a new court, the Plan Proponents respectfully submit a brief *Background of the Debtor and Case Summary* as Exhibit A[1] hereto.

---

[1] All words not defined in this Supplemental Memorandum shall have the meanings ascribed to them in Exhibit A.

## LAW AND ARGUMENT

### Summary of Argument

"It must be remembered that in the bankruptcy context, the interests of creditors [are] paramount." <u>Matter of Texas Extrusion Corp.</u>, 844 F.2d 1142, 1159 (5th Cir. 1988). Yet, Treasury, an equity interest holder, has objected to confirmation of the Plan [Doc. 621] on the basis of feasibility; or, alternatively, on the basis that the Plan violates the absolute priority rule, notwithstanding that Treasury will receive nothing if the Plan is not confirmed and may receive nearly $38 million if the Plan is confirmed. Whatever else the "paramount" interests of creditors means, it cannot mean that, absent a strong showing that the Plan is not confirmable, Treasury can defeat confirmation where, as here, the Plan clearly is in the best interests of creditors.

Such a showing is lacking here. The Plan separately classifies Treasury's equity interest in Class 8 and deems that equity interest to be unimpaired under 11 U.S.C. §1124(1) since the Plan "leaves unaltered the legal, equitable, and contractual rights to which such…interest entitles the holder of such…interest." Because Treasury's interest is unimpaired, it is deemed to have accepted the Plan. 11 U.S.C. §1126(f). Also, because Treasury's interest is unimpaired, the requirements of Section 1129(a)(8) are satisfied as to Class 8. 11 U.S.C. §1129(a)(8)(B).

Notwithstanding the unambiguous language in the Plan, Treasury has objected to confirmation arguing that, under the Securities Purchase Agreement[2] ("<u>SPA</u>"), entered into with the Debtor in connection with the issuance of the Series D Preferred, "the Series D Preferred Equity must be redeemed by the Debtor if the Debtor is no longer a bank holding company." *Treasury Objection*, 2. Therefore, Treasury argues, the Plan is not feasible since it believes that the Debtor will be unable to redeem the equity interest for the purported redemption price of nearly $38

---

[2] A copy of the Securities Purchase Agreement, as submitted by Treasury in its Objection [Doc. 669-2], is attached hereto as <u>Exhibit B</u> for the Court's reference.

million. Alternatively, Treasury argues that if its Series D Preferred (Class 8) is not redeemed as described above, then its equity interests are impaired and, because Common Stock, a junior interest, remains unaffected, the Plan violates the Absolute Priority Rule.

Treasury's arguments are without merit and the Objection should be overruled and the Plan confirmed. The alleged "feasibility" issue is a red herring since the Debtor cannot be required to redeem the Series D Preferred because (a) the amendments to FNBC's articles of incorporation (required by the SPA) specifically state that Treasury has no right to require redemption of its stock; and, (b) redemption would result in the insolvency of the Debtor, and therefore is prohibited by law - *not by the Joint Plan*. Likewise the "absolute priority" argument fails because, if any right to require redemption existed under the SPA, such right was converted from an equity interest to a claim when any such mandatory redemption period expired, *i.e.*, when FNBC ceased being a bank holding company prior to the Petition Date; or, at the latest, when the Debtor rejected the SPA in July, 2019. However, Treasury never filed a proof of claim for any such alleged obligation despite having at least two separate opportunities to do so. Therefore, if such an obligation ever existed, it will be discharged by confirmation of the Plan. Simply put, nothing *in the Plan* adversely affects any rights of Treasury as the sole holder of Series D Preferred stock. The Plan recognizes and preserves those rights as set forth in the Debtor's amended articles of incorporation. If Treasury had a right of redemption under the SPA (which is denied), that right could not have been exercised by Treasury regardless of whether the Debtor had filed bankruptcy or not.

**I.      Confirmation of the Joint Plan is not likely to be followed by further liquidation or reorganization since no redemption requirement exists.**

As set forth in the introductory paragraph of the SPA, the Series D Preferred were issued in conjunction with FNBC's participation in Treasury's Small Business Lending Fund program ("SBLF"). In 2011, Treasury acquired the Series D Preferred from FNBC in exchange for

providing SBLF funding to FNBC. The SPA is comprised of multiple documents, identified as Annex A – Annex K. Particularly relevant to this Supplemental Memorandum are *Annex C: General Terms and Conditions* and *Annex F: Form of Certificate of Designation*. Neither document provides Treasury with a right of redemption of the Series D Preferred.

      A. <u>The Debtor cannot be required to redeem the Series D Preferred under the express terms of its charter.</u>

In support of its purported right to redemption of the Series D Preferred, Treasury relies *solely* on a covenant ("<u>BHC Covenant</u>") contained in *Annex C: General Terms and Conditions* of the SPA:

> "<u>Bank and Thrift Holding Company Status</u>. If the Company is a Bank Holding Company or a Savings and Loan Holding Company on the Signing Date, then the Company shall maintain its status as a Bank Holding Company or Savings and Loan Holding Company, as the case may be, for as long as Treasury owns any Preferred Shares. The Company shall redeem all Preferred Shares held by Treasury prior to terminating its status as a Bank Holding Company or Savings and Loan Holding Company, as applicable."

<u>Exhibit B</u>, Annex C, §3.1(e).

Treasury attempts to equate such covenant with a "put right" or other right of redemption. Other provisions contained in the SPA, specifically those in Annex F, squarely contradict Treasury's position. As a condition to closing under the SPA, the Debtor was required to file with the Louisiana Secretary of State and deliver to Treasury an amendment to its articles of incorporation in the form identified as *Annex F: Form of Certificate of Designation* ("<u>Amended Articles</u>"). <u>Exhibit B</u>, Annex C, §1.3(d). It is undisputed that FNBC complied with this closing condition. The Amended Articles, *which Treasury required the Debtor to file*, set forth all existing rights and obligations of the parties with respect to, *inter alia*, redemption of the Series D Preferred. Under Louisiana law, a corporation may redeem shares subject to **restriction by the articles of incorporation.** LA R.S. §12-1-640(A). Pursuant to Section 5(b) of the Amended Articles, holders

of Series D Preferred shall ***"have no right to require redemption or repurchase of any shares of [Series D] preferred Stock."*** <u>Exhibit B</u>, Annex F §5(b).

Through its Supplemental Objection, Treasury unsuccessfully attempts to reconcile the clear conflict between the Amended Articles' express prohibition against Treasury's right to require redemption and the alleged requirement of the Debtor, under the BHC covenant, to redeem the Series D Preferred. In doing so, Treasury simply states that the two provisions are different because the BHC Covenant's redemption requirement is driven by the occurrence of a specific event in the Debtor's control, *i.e.*, the Debtor's ceasing to be a bank holding company, while the prohibition against requiring redemption, found in the Amended Articles, is driven by a demand made by Treasury. These purported differences in the events triggering redemption cannot overcome the clear prohibition against Treasury requiring the Debtor to redeem the Series D Preferred.

First, the BHC Covenant itself is moot; at best, by its terms, FNBC agreed to redeem the Series E Preferred "prior to terminating" its status as a Bank Holding Company." FNBC did not do so prior to its "loss of bank holding company status". Assuming arguendo, as Treasury avers, that FNBC's status as a Bank Holding Company was involuntarily terminated prior to the Petition Date, then, at best, FNBC breached its "obligation" to redeem the Series D Preferred prepetition, which, as argued below, gives rise to no more than a monetary claim for damages for which Treasury failed to timely file a proof of claim.

Second, while Section 5(b) of the Amended Articles definitively states that no right of redemption exists, any uncertainty concerning the significance or effect of the BHC Covenant is resolved through Section 14 of the Amended Articles:

> "<u>Other Rights</u>. The Shares of *[Series D] Preferred Stock shall not have any rights*, preferences, privileges or voting powers or relative,

> participating, optional or other special rights, or qualifications, limitations or restrictions thereof, ***other than as set forth herein or in the Charter or as provided by applicable law.***"

Exhibit B, Annex F, §14.

The Amended Articles unequivocally provide that Treasury, as holder of Series D Preferred, shall have no rights other than those set forth in the Amended Articles or as provided by law. The BHC Covenant is found in neither. Instead, the Amended Articles expressly eliminate any right of Treasury to demand redemption. Given the express limitation of Series D Preferred rights, set forth in the Amended Articles, there can be no ambiguity as to Treasury's right to require redemption – no such right exists.

B. The Debtor cannot be required, under state and common law, to redeem the Series D Preferred while insolvent or if redemption would render it insolvent.

While the Amended Articles clearly preclude any right of Treasury to require redemption of the Series D Preferred, even without such express limitations, redemption of the Series D Preferred cannot be required given the financial status of the Debtor. Redemption rights of shareholders are not guaranteed, but instead are dependent on the solvency of the corporation. *Carrieri v. Jobs.com, 393 F.3d 508 (5th Cir. 2004), citing In re Revco D.S., Inc., 118 B.R. 468, 474 (Bankr. N.D. Ohio 1990)* (holding that the mandatory redemption provision of convertible preferred stock is an equity interest and not a claim); *In re Joshua Slocum, Ltd., 103 B.R. 610, 623 (Bankr. E.D. Pa. 1989)* (stating that the rights of shareholders to recover dividends or to redeem stock is dependent on the financial solvency of the corporation) *See also*, *TCV VI, L.P. v. TradingScreen Inc.*, No. CV 10164-VCN, 2015 WL 1598045, at *5, 2015 Del. Ch. LEXIS 108 (Del. Ch. Feb. 26, 2015), *appeal den.*, 115 A.3d 1216 (Del. 2015) ("case law spanning the last century makes clear that "***in addition*** to the strictures of [statutes such as R.S. 1-640], the undoubted weight of authority teaches that a corporation cannot purchase its own shares of stock

when the purchase diminishes the ability of the company to pay its debts, or lessens the security of its creditors.") (emphasis in original). Louisiana law echoes this common law principle:

> "C. No distribution[3] may be made if, after giving it effect, either of the following conditions would exist:
>
> (1) The corporation would not be able to pay its debts as they become due in the usual course of business.
>
> (2) The corporation's total assets would be less than the sum of its total liabilities plus, unless the articles of incorporation permit otherwise, the amount that would be needed, if the corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution." LA R.S. §12:1-640

As indicated in the Background and Case Summary (Exhibit A hereto), monthly operating reports filed in the Chapter 11 Case, and the Joint Plan, the Debtor currently has now and will have upon the Plan's Effective Date limited cash available to it and certainly cash insufficient to redeem the Series D Preferred (and pay any debts as they become due). Thus, even if the express limitations on redemption rights were not unambiguously stated in the Amended Articles (which they are), the Debtor is prohibited by law from redeeming the Series D Preferred.

Examining the exact facts outside the context of a bankruptcy, FNBC would still be prohibited both by L.A.R.S. §12:1-640(C) and common law from redeeming the Series D Preferred. The Plan, which provides that the Series D Preferred will be redeemed when redemption is permissible by law, affords Treasury exactly the same rights it has outside of bankruptcy. Had FNBC never filed the Chapter 11 Case, Treasury would have no right today to require FNBC to redeem the Series D Preferred. Since the Plan does not alter Treasury's rights as holder of Series D Preferred, its interests are thus unimpaired. "[A] creditor is impaired under § 1124(1) only if *'the plan'* itself alters a claimant's legal, equitable, [or] contractual rights." *Ultra Petroleum Corp.*

---

[3] Under LA R.S. §12:1-140(6)(b), redemption or acquisition of shares is a form of "distribution".

*v. Ad Hoc Comm. of Unsecured Creditors of Ultra Res., Inc. (In re Ultra Petroleum Corp.)*, 913 F.3d 533, 540 (5th Cir. 2019) (emphasis in original) (alteration in original). The Fifth Circuit in *Ultra* continued, stating that "[w]here a plan refuses to pay funds disallowed by the Code, the Code—not the plan—is doing the impairing." *Id.* at 542

Moreover, Louisiana law resolves Treasury's feasibility allegations since redemption may only occur if, as and when FNBC has sufficient funds to do so without impairing its ability to continue operating and pay creditors. The legal prohibition found in LA R.S. §1-640(C) that redemption can only occur when the company is sufficiently solvent to do so without impairing its operations and ability to pay creditors, completely refutes the notion that confirmation of the Plan is likely to be followed by liquidation or the need for further financial reorganization.

**II. Alternatively, any right to redemption which may have existed was converted from equity to a claim and is discharged under the Plan.**

As discussed above, Treasury's alleged right to require redemption of the Series D Preferred hinges on the BHC Covenant contained in the SPA, *Annex C: General Terms and Conditions*. Such covenant is contained only in Annex C and was not reproduced or included in the Amended Articles.

A. TREASURY'S EQUITY INTEREST WAS CONVERTED INTO A CLAIM WHEN THE MANDATORY REDEMPTION PERIOD EXPIRED.

Through its Supplemental Objection, Treasury argues that its right to redemption should be classified as an equity interest and not a claim. This argument fails for two reasons: (1) no right to require redemption was provided to Treasury; and, (2) even if such redemption right existed, it was converted to a claim.[4]

---

[4] Section 510(b) of the Bankruptcy Code recognizes claims for breach of agreements such as the SPA may arise, and indeed, subordinates such claims to the claims of general unsecured creditors. Moreover, as set forth below, Treasury's subordinated claim is disallowed because Treasury failed to file a proof of claim. Finally, Treasury's subordinated, disallowed claim under the SPA is discharged pursuant to the Plan.

1. The Series D Preferred securities contain no right to required redemption.

In its Supplemental Brief, Treasury argues that its "redemption rights" are equity interests and not a claim, citing *Carrieri v. Jobs.com* (stating that the right to demand repurchase of stock is properly classified as an equity interest, and is not transformed into a claim based on a right to payment). *Carrieri v. Jobs.com, 393 F.3d 508 (5th Cir. 2004).* Here, however, **unlike the facts in Carrieri**, neither the Purchase Agreement nor the Amended Articles (the form of which is attached as Annex F to the Purchase Agreement) grants Treasury *a right to demand* repurchase or redemption of Series D Preferred. Instead, the Amended Articles specifically state the opposite with respect to rights of Treasury. ***While in Carrieri, the warrant (equity) holders were afforded specific rights to require redemption,*** the Amended Articles definitively state that holders of Series D Preferred were not: holders of Series D Preferred shall ***"have no right to require redemption or repurchase of any shares of [Series D] preferred Stock."*** Exhibit B, Annex F, §5(b). ***Any rights attributable to the BHC Covenant may have formed the basis for a claim for breach of contract, but no such rights were incorporated into the Series D Preferred securities themselves. Accordingly, such rights could only be claims – not equity interests***.

2. Even if redemption rights were determined to exist, such rights were converted to a claim prior to the Petition Date.

While the Debtor agrees with Treasury, that, *in general*, prior to expiration or maturity thereof, it is appropriate to classify a right to redemption as an equity interest, once such right expires or matures, it becomes a claim. Through both its original and Supplemental Objection, Treasury argues that its purported right to require redemption of the Series D Preferred is triggered by change of the Debtor's status as a bank holding company. Notably, Treasury does not quote verbatim the BHC Covenant, but instead, alleges that the Debtor is required to redeem the stock "if" or "when" it is no longer a bank holding company. The exact language of the BHC Covenant

states that FNBC "shall redeem all Preferred Shares held by Treasury *prior to terminating its status as a Bank Holding Company*". <u>Exhibit B</u>, Annex C, §3.1(e). Accordingly, under the terms of the BHC Covenant, the mandatory redemption right would have required redemption *prior* to the Bank Closure which occurred in April 2017, one month before the Petition Date. Thus, the purported mandatory redemption right would have matured or expired prior to the Petition Date, at which time Treasury's equity interests would have transformed into a right to payment or unsecured claim, albeit subject to subordination, against the Debtor's estate. *See Carrieri, 393 F.3d 508, 522* "[w]arrants with redemption provisions….are equity interests until their expiration (or until the right to receive a cash payment properly matures on or before the petition date)", citing *Duel Glass v. Search Fin. Servs. (In re Search Fin. Servs. Acceptance Corp*.), 2000 U.S. Dist. LEXIS 2654, 2000 WL 256889, at *3 (N.D. Tex. 2000). At most, this claim, which is disallowed due to the failure of Treasury to file a proof of claim, is discharged under the Plan.

In the *Carrieri* case, the Fifth Circuit found that, although the redemption rights would have otherwise matured prior to the bankruptcy filing, those redemption rights did not mature because the company was unable to timely redeem the shares as redemption would have rendered the company insolvent. *Carrieri,* 393 F.3rd 508, 522*.* Thus, due to the insolvency prohibition, the Court found that the holder of such rights maintained its equity interests despite the stated maturity of the security. Here, however, Treasury has continued to argue that, *under no circumstances*, can Treasury maintain the Series D Preferred because the Debtor is no longer a holding company. *See* Supplemental Objection, "*shares must be redeemed when the issuer is no longer a bank holding company"* and *"Series D Equity simply cannot be left in place when the debtor is no longer a bank holding company*" *Supplemental Objection*, p.4. If this representation is correct, then any redemption right must have matured prior to the Petition Date and would be properly classified as

a pre-petition claim. Pursuant to Bankruptcy Code section 510(b), Treasury's claim is subject to subordination to claims of unsecured creditors. Treasury's failure to file a proof of claim means that its subordinated claim is disallowed. The Plan discharges Treasury's subordinated and disallowed claim, if one exists, under the SPA. *See* n.3, *supra*.

B. IF ANY REDEMPTION REQUIREMENT EXISTED UNDER THE SPA, BUT DID NOT EXPIRE PRIOR TO THE PETITION DATE, SUCH REQUIREMENT BECAME A CLAIM FOR DAMAGES AFTER REJECTION OF THE SPA.

On July 8, 2019, the Bankruptcy Court entered the Rejection Order which encompassed rejection of the SPA. Upon entry of such order, any redemption rights would have become a claim for damages for the redemption price. As the Amended Articles did not include the BHC Covenant, any right to redemption would have ceased upon rejection of the SPA and, thereafter, become a claim for damages.

Through its Supplemental Objection, Treasury argues that its alleged redemption rights under the SPA were somehow maintained as equity interests following entry of the Rejection Order. Treasury asserts that the following language found in its stock certificate[5] incorporates the BHC Covenant into the terms of the security itself:

> "This instrument is issued subject to the restrictions on transfer and other provisions of a securities purchase agreement between the issuer of these securities and the Secretary of the Treasury, a copy of which is on file with the issuer. The securities represented by this instrument may not be sold or otherwise transferred except in compliance with said agreement. Any sale or other transfer not in compliance with said agreement will be void."

Treasury mistakenly argues, through LA R.S. §10:8-202[6], that the above language essentially incorporates each and every provision of the SPA as additional rights of the holder of Series D

---

[5] The stock certificate for the Series D Preferred was attached as Exhibit [Doc. 691-2] to the Supplemental Objection.
[6] "(a) Even against a purchaser for value and without notice, the terms of a certificated security include terms stated on the certificate and terms made part of the security by reference on the certificate to another instrument, indenture, or document or to a constitution, statute, ordinance, rule, regulation, order, or the like, to the extent the terms referred to do not conflict with terms stated on the certificate. A reference under this subsection does not of itself charge a

Preferred Shares, contrary to the clear language of the Amended Articles which deny any such additional rights exist.

1. <u>Reference to the SPA on the Stock Certificate was intended to apply to transfer restrictions of the Series D Preferred</u>.

The provisions of LA R.S. §10:8-202 relate to notice to transferees of the securities' terms. Such statute, along with all others contained in Part 2 ("Issue and Issuer") of Chapter 8, Title 10 of the Louisiana Revised Statutes, deal with the *issuance and transfer of securities*. Moreover, *when read as a whole, it is clear that the stock certificate language cited by Treasury is intended to relate simply to transfers of the security*:

> "This instrument is issued subject to the restrictions on transfer and other provisions of a securities purchase agreement between the issuer of these securities and the Secretary of the Treasury, a copy of which is on file with the issuer. *The securities represented by this instrument may not be sold or otherwise transferred except in compliance with said agreement. Any sale or other transfer not in compliance with said agreement will be void*."

This intention becomes clearer when examined in the context of the language's origination, *i.e.*, Section 4.2(a) of the SPA. Such section, entitled "Legends", deals strictly with the transfer and registration of the Series D Preferred. <u>Exhibit B</u>, Annex C §4.2(a).

The stock certificate language is simply a condensed version of the transfer and registration language that Treasury required to be noted on the stock certificate. This reference was necessary simply to put potential transferees on notice of the fact that the Series D Preferred were exempted from registration requirements under applicable securities laws.

If the parties had intended for the terms of Annex C, including the BHC Covenant, to be made part of FNBC's Amended Articles or the Series D Preferred, the BHC Covenant or other provisions of Annex C would or should have been incorporated into the Amended Articles as was

---

purchaser for value with notice of a defect going to the validity of the security, even if the certificate expressly states that a person accepting it admits notice…." LA R.S. §10:8-202.

done with Annex F. Such incorporation did not occur and the transfer language contained on the stock certificate cannot now – 8 years later - be manipulated in an attempt to do so.

> 2. ***The SPA, itself, clearly indicates that its terms are applicable only while Treasury is holder of Series D Preferred*** and thus negates the argument that all of the SPA terms were somehow incorporated as additional rights granted to the holders of the Preferred Shares.

While the Stock Certificate indicates that it is issued subject to the restrictions on transfer and other provisions of (not rights granted by) the SPA, the SPA terms relied upon in the Treasury Objection are nonetheless *not* binding on third parties because: (a) the provisions only apply while Treasury holds the Series D Preferred; and, (b) termination of the SPA is required upon transfer of the Series D Preferred to a third party. Therefore, Treasury's argument that the terms of the SPA were incorporated into the Series D Preferred securities is without merit since a transferee of Treasury would have no such rights.

    a) The BHC Covenant applies only while Treasury is the holder of the Series D Preferred.

As indicated in the express language of the BHC Covenant, relied upon for Treasury's purported redemption rights, such covenant applies ***for as long as Treasury owns any Preferred Shares***. Likewise, the provision regarding the redemption of the Series D Preferred applies specifically to such shares ***held by Treasury***. While the reference to the SPA on the stock certificate puts potential transferees on notice of the SPA's terms related to transfer and sale, the *SPA, itself, specifically limits application of the BHC Covenant to the Debtor and Treasury*; thus, it is evident that such provisions were not intended to be and did not become incorporated into the security itself through reference on the stock certificate.

(b) The SPA terminates in its entirety upon transfer of the Series D Preferred to a third party.

Section 5.1 of the SPA's general terms identifies the triggering events for termination of the SPA ("Termination Language"), and provides in pertinent part:

> "This Agreement shall terminate upon the earliest to occur of:
> …
> (c) the date on which Treasury has transferred all of the preferred Shares to third parties which are not Affiliates of Treasury". Exhibit B, Annex C, §5.1

Under the foregoing provision of the SPA, had Treasury transferred the Series D Preferred to an unrelated third party, the SPA would terminate and its provisions would no longer apply. Thus, if, as Treasury suggests, the reference to the SPA on the stock certificate was intended to put third parties on notice that the BHC Covenant was incorporated therein, why would the SPA specifically state that the SPA terminates upon transfer to any such third party? The Termination Language contained in the SPA refutes Treasury's argument in the Supplemental Objection that the SPA was incorporated into the terms of the Series D Preferred under LA R.S. §10:8-202. It is patently evident that the language cited by Treasury in support of its "incorporation" argument only served to notify third parties of restrictions on transfers due to securities law concerns, but did not vest the holder with any additional rights other than those set forth in the Amended Articles.

Upon entry of the Rejection Order in July 2019, any rights that may still have existed under the SPA became claims for damages resulting from breach of the SPA. Thus, if any right to require redemption still existed under the SPA (which is denied), such right was converted into a claim, at the latest, upon rejection of the SPA. Through the Disclosure Statement [Doc.622] filed on July 2, 2019, the Debtor specifically identified Treasury's potential claim for damages resulting from rejection of the SPA. Nevertheless, no such damage claim was filed by the deadline established through the Rejection Order.

**III.    The Plan Does Not Violate the Absolute Priority Rule.**

Notwithstanding the clear, unambiguous language of the Plan[7] providing that Treasury's equity interest is unimpaired, Treasury nonetheless argues that its interest is in fact impaired because the Debtor will not redeem the Series D Preferred for $38 million at confirmation. Treasury then argues that, because its interest is allegedly impaired, confirmation of the Plan should be denied because it would violate the absolute priority rule as codified in 11 U.S.C. §1129(b).  This argument also fails.

As argued above, Treasury would have no enforceable right to require FNBC to redeem the Series D Preferred even if the Debtor was not in bankruptcy.  Nothing in the Plan itself purports to limit or in any way adversely affect any rights that Treasury may have as the holder of the Series D Preferred Shares.  Rather, if a right of redemption still exists, state law, not anything in the Plan, prohibits its exercise.  Accordingly, the *Plan* does not alter any rights of Treasury and Treasury's equity interests are unimpaired.  Accordingly, Treasury is deemed to accept the Plan under section 1126(f) of the Bankruptcy Code; and, as to Class 8 (Treasury), the requirement of Section 1129(a)(8)(B) is conclusively met.  Since that requirement is met, as to Treasury and all other classes of unimpaired claims and interests, the Court need not consider the requirements of Section 1129(b) which only apply if the requirements of Section 1129(a)(8) are *not* met.

## CONCLUSION

This lengthy and hard fought case has ultimately lead to the Joint Plan which is designed to maximize the recovery for all creditors, preserve the Tax Assets, and provide for possible recovery by the holders of preferred stock, including Treasury, and common stock from future profits.  The Joint Plan has been accepted by *all* claimants who cast ballots in all classes entitled

---

[7] Which tracks 11 U.S.C. § 1124(1) word for word.

to vote. Treasury, which appears to be arguing against its own economic interests, is the only party who has objected. As set forth above, the arguments made in Treasury's Objection should be rejected by this Court- Treasury's rights as a preferred shareholder are not impaired by the Plan and feasibility is simply a red herring since state law, not the Plan itself, prohibits the Debtor from redeeming the preferred shares *even if a right of redemption continues to exist (which is denied)*. The Proponents respectfully request that the Court overrule Treasury's Objection and confirm the Joint Plan.

        Respectfully Submitted:

        By: /s/ Barbara B. Parsons
        William E. Steffes, #12426
        Barbara B. Parsons, #28714
        **THE STEFFES FIRM, LLC**
        13702 Coursey Boulevard Building 3
        Baton Rouge, LA 70817
        Telephone: (225) 751-1751
        Facsimile: (225) 751-1998
        Email: bparsons@steffeslaw.com
        *Counsel for First NBC Bank Holding Company, Debtor*

        and

        Jeffrey D. Sternklar (MA BBO No. 549561)
        Jeffrey D. Sternklar LLC
        225 Franklin Street, 26th Floor
        Boston, MA 02110
        Telephone: (617) 396-4515
        Fax: (617) 507-6530
        Email: Jeffrey@sternklarlaw.com

        By: /s/ Brandon A. Brown
        P. DOUGLAS STEWART, JR. #24661
        BRANDON A. BROWN #25592
        **STEWART ROBBINS & BROWN, LLC**
        301 Main St., Ste. 1640
        Baton Rouge, Louisiana 70801
        Telephone: 225.231.9998
        Email: bbrown@stewartrobbins.com
        *Counsel to the Official Committee of Unsecured Creditors of First NBC Bank Holding Company*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:

FIRST NBC BANK HOLDING COMPANY     CASE NO. 17-11213

                                                                                                             SECTION A

DEBTOR     CHAPTER 11

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Memorandum in Response to United States' Objection to Confirmation of the Second Amended Joint Chapter 11 Plan of Reorganization* has been served via Email through this Court's CM/ECF Electronic Notification System upon the following parties:

Sam J. Alberts on behalf of Interested Party Federal Deposit Insurance Corporation (FDIC) as Receiver for First NBC Bank sam.alberts@dentons.com

Serajul Ferdows Ali on behalf of Interested Party United States of America/Treasury serajul.ali@usdoj.gov

A. Brooke Watford Altazan on behalf of Creditor Committee Official Unsecured Creditors' Committee
baltazan@stewartrobbins.com

Brian M. Ballay on behalf of Interested Party Directors and Former Directors Group
bballay@bakerdonelson.com

Jerry A. Beatmann on behalf of Interested Party Federal Deposit Insurance Corporation (FDIC) as Receiver for First NBC Bank jay.beatmann@dentons.com

Ward Benson on behalf of Interested Party United States of America on behalf of the Internal Revenue Service
ward.w.benson@usdoj.gov, southern.taxcivil@usdoj.gov

Nicholas H. Berg on behalf of Interested Party Lawrence Blake Jones nberg@reasonoverllc.com

Brandon A. Brown on behalf of Creditor Committee Official Unsecured Creditors' Committee
bbrown@stewartrobbins.com

Christopher T. Caplinger on behalf of Creditor Lead Plaintiffs in Securities Class Action ccaplinger@lawla.com

Edward Castaing, Jr. on behalf of Interested Party Ryan J. Ashton ecastaing@cclhlaw.com

Robin B. Cheatham on behalf of Creditor Florida Parishes Bank cheathamrb@arlaw.com

Leo D. Congeni on behalf of Interested Party Doug Smith, derivatively and on behalf of First NBC Bank Holding Company leo@congenilawfirm.com

Nancy Scott Degan on behalf of Interested Party Directors and Former Directors Group
ndegan@bakerdonelson.com

Jonathan Edwards on behalf of Interested Party Mary Beth Verdigets and Jonathan.Edwards@alston.com

Elizabeth J. Futrell on behalf of Creditor David W. Anderson efutrell@joneswalker.com

Amanda Burnette George on behalf of U.S. Trustee Office of the U.S. Trustee amanda.b.george@usdoj.gov

Aaron Benjamin Greenbaum on behalf of Interested Party Mary Beth Verdigets aaron.greenbaum@pjgglaw.com

Jan Marie Hayden on behalf of Interested Party Lawrence Blake Jones jhayden@bakerdonelson.com

John M. Landis on behalf of Creditor Gregory St. Angelo jlandis@stonepigman.com

Michael E. Landis on behalf of Creditor Renewal Capital Company, LLC mlandis@gamb.law

Alysson Leigh Mills on behalf of Interested Party Ryan J. Ashton amills@fishmanhaygood.com

Andrew M Reidy on behalf of Interested Party Federal Deposit Insurance Corporation (FDIC) as Receiver for First NBC Bank areidy@lowenstein.com

Ryan James Richmond on behalf of Creditor Committee Official Unsecured Creditors' Committee
rrichmond@stewartrobbins.com

Lacey E Rochester on behalf of Interested Party Directors and Former Directors Group
lrochester@bakerdonelson.com

David Rubin on behalf of Other Prof. Interested Party drubin@kswb.com

Susan R. Sherrill-Beard on behalf of Interested Party U.S. Securities and Exchange Commission
sherrill-beards@sec.gov

Paul Douglas Stewart, Jr. on behalf of Creditor Committee Official Unsecured Creditors' Committee
dstewart@stewartrobbins.com

Office of the U.S. Trustee USTPRegion05.NR.ECF@usdoj.gov

R. Patrick Vance on behalf of Creditor David W. Anderson pvance@joneswalker.com

Stephen L. Williamson on behalf of Creditor Renewal Capital Company, LLC swilliamson@gamb.law

And upon the following by depositing same in the United States Mail, postage prepaid

and properly addressed to:

Serajul F. Ali, Trial Attorney
U.S. Department of Justice – Civil Division
PO Box 875
Ben Franklin Station
Washington, DC 20044

Office of the US Trustee
Attn: Amanda B. George
400 Poydras Street
Suite 2110
New Orleans, LA 70130

Baton Rouge, Louisiana, this 5th day of November, 2019.

<u>/s/Samantha J. Chassaing</u>
Samantha J. Chassaing