UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | NO.: 17-11213 |
| | * | |
| FIRST NBC BANK HOLDING COMPANY | * | CHAPTER 11 |
| | * | |
| Debtor | * | |
| | * | |

**************************************************************************

### L. BLAKE JONES'S MOTION FOR AN ORDER FOR RELIEF FROM THE AUTOMATIC STAY, TO THE EXTENT APPLICABLE, WITH AUTHORITIES IN SUPPORT

L. Blake Jones ("Movant"), a former director of First NBC Bank Holding Company ("Debtor"), by and through his undersigned counsel, files this motion (the "Motion") for entry of an Order of the Court authorizing Zurich American Insurance Company ("Zurich" or the "Insurer") to advance and /or reimburse Movant's defense costs and other Loss[1] (including any settlement amounts and/or judgments) incurred or to be incurred in defense of pending litigation naming Movant and others as defendants, in accordance with and subject to the terms and conditions of a certain directors and officers liability insurance policy issued by the Insurer to the Debtor for the benefit of the directors and officers of Debtor and of the bank which was Debtor's wholly owned subsidiary, and more particularly described herein.  In support of this Motion, Movant states as follows:

### I. JURISDICTION

1.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  To the extent that this dispute involves property of the estate or the extent of a debtor's property, this is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this

---

[1] Zurich's Financial Institutions Select™ Insurance Policy Management Liability Coverage Part and Lender Liability Coverage Part define "Loss" to include "damages (including punitive, exemplary or multiple damages), judgments, any award for pre-judgment and post-judgment interest with respect to covered damages, settlements" and Defense Costs. *See* **Exhibit A-1** at pdf pp. 28, 55.

Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are Sections 105 and 362 of Title 11 of the United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules) 4001(a) and 9014.

## II.  **GENERAL BACKGROUND**

2.      On May 11, 2017 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Louisiana.  The Debtor is operating as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3.      The Debtor is a holding company entity whose primary asset prior to commencement of the case was its 100% ownership interest in First NBC Bank (the "Bank").

4.      On Friday, April 28, 2017, the Bank was closed by the Louisiana Office of Financial Institutions.  Subsequently, the Federal Deposit Insurance Corporation was named Receiver for the Bank.  The Debtor's bankruptcy case commenced with the support of the holders of the Debtor's outstanding debt to protect the value of the Debtor's remaining assets and certain tax attributes.

5.      Pursuant to the authority granted under Section 1102 of the Bankruptcy Code, the Acting United States Trustee for Region 5 of the Eastern District of Louisiana appointed an Official Committee of Unsecured Creditors for the Debtor's Chapter 11 case on May 18, 2017.

6.      The Movant is a former director of Debtor and of the Bank who has been defending certain claims made against him in a case removed to the United States District Court for the Eastern District of Louisiana, *330 Magazine Street, LLC v. B.M. Hotels, LLC et al*, Civil Action No. 17-6709, Section R-4 (E.D.La.), which was originally filed in the Civil District Court for the Parish of Orleans, State of Louisiana on June 27, 2013, Proc. No. 2013-6137, Div. L (the

"Litigation Matter").  The Litigation Matter is a tort action filed against Movant (identified therein and in Movant's capacity as a director of Debtor and the Bank), the Bank, B.M. Hotels, LLC and Zurich wherein the plaintiff alleged that one or more of the defendants made decisions (including lending decisions) which deprived plaintiff of a hotel purchase business opportunity.

7.      The Litigation Matter has not been stayed as a result of the filing of Debtor's bankruptcy case.

8.      Movant, an insured under the insurance policy identified below, has already incurred significant attorneys' fees and costs to date in defense of the claims pending in the Litigation Matter ("Defense Costs").   On or about November 14, 2019, a settlement in the Litigation Matter was reached but has not yet been finalized.  On November 18, 2019, the District Judge in the Litigation Matter signed a 60 day Order of Dismissal.

### III.  THE DIRECTORS AND OFFICERS LIABILITY POLICY

9.      Prior to the Petition Date, the Debtor purchased a "claims-made" Financial Institutions Select™ Insurance Policy (DOP XXXXX03-01) (the "Policy") issued by Zurich.[2]  The Policy issued by Zurich is attached hereto as **Exhibit A-1** (the policy document issued on June 9, 2012) and as **Exhibit A-2** (an endorsement extending the policy period), which **Exhibits A-1 and A-2** are incorporated herein.

10.      The initial policy period of the Policy was from June 9, 2012 to June 9, 2013.  The policy period was modified and extended by the aforesaid endorsement to cover the period from June 9, 2012 to June 23, 2013.

---

[2] All capitalized terms not defined herein shall have the meaning ascribed to them in the Policy.

11.     For claims covered by the Policy, the Policy provides coverage in the amount of $10 million for the benefit of the Insured Persons, including Movant, under the Management Liability Coverage Part of the Policy (**Exhibit A-1** at pdf pp. 6, 26 *et seq.*) and in the amount of $5 million for the benefit of the Insured Persons, including Movant, under the Lender Liability Coverage Part of the Policy (**Exhibit A-1** at pdf pp. 7, 54 *et seq.*).

12.     Movant and Zurich agree that the Lender Liability Coverage Part of the Policy is applicable to Movant's Claim under the Policy, though Movant does not agree with Zurich's position that the Retention (in laymen's terms, a deductible) aspect of coverage under the Lender Liability Coverage Part of the Policy is applicable to Movant's Claim under the Policy. Likewise, Movant does not agree with Zurich's position that the Management Liability Coverage Part of the Policy does not provide any coverage of Movant's Claim under the Policy. Ultimately, as set forth below, these limited areas of disagreement are not relevant or material to a determination of whether this Motion should be granted.

13.     Movant reserves Movant's rights against Zurich regarding the aforesaid limited areas of disagreement as to which types of coverage are applicable under the Policy and the amounts of coverage that are applicable to Movant's Claim under the Policy. Movant recognizes that Zurich's rights regarding the aforesaid limited areas of disagreement as to which types of coverage are applicable under the Policy and the amounts of coverage that are applicable to Movant's Claim under the Policy are likewise reserved.

14.     What is not in dispute is that under the Lender Liability Coverage Part of the Policy, Zurich as Insurer is obligated to pay Loss incurred by Movant, in an amount determined under and otherwise in accordance with the Policy, which Loss includes without limitation Movant's Defense

Costs, Movant's obligation to pay under the aforesaid settlement of the Litigation Matter, and any judgment against Movant in the Litigation Matter.  **Exhibit A-1**, pdf. p. 55.

15.     The Policy (in Section XIV) contains a "Payment Priority" provision (the "Order of Payments Provision") pursuant to which the Losses of all Insured Persons are to be paid before the covered Loss of the Debtor, if any.   *See* **Exhibit A-1**.[3]  The Movant's rights, as an Insured Person, to the Policy proceeds are thus expressly superior to any contingent rights of the Debtor to the Policy proceeds up to the Limit of Liability under the Policy.

16.     The Policy (in Section XVII) also contains a "Bankruptcy or Insolvency" provision that requires the Debtor as the "Company" to: "(1) waive and release any automatic stay or injunction which may apply in such proceeding to this policy or its proceeds under such bankruptcy law or due to the entry into conservatorship or receivership; and (2) agree not to oppose or object to any efforts by the Insurer, the Company or any Insured to obtain relief from any such stay or injunction." **Exhibit A-1**, pdf p.25.

17.     Upon information and belief, to date, no payments have been made under the Policy to any of the Insured Persons. Movant has not received reimbursement for his Defense Costs, from

---

[3] Section XIV of the Policy states:

    If the **Loss** due and owing by the Insurer under a **Liability Coverage Part** exceeds the then-remaining Limit of Liability applicable to such **Loss**, the Insurer shall pay such **Loss**, subject to the applicable Limits of Liability, in the following priority:

        A.  First, the Insurer shall pay such **Loss** which is incurred by **Insured Persons**, other than **Employees** and **Independent Contractors**, and which is not indemnified by the **Company** or an **Outside Entity**;

        B.  Second, the Insurer shall pay such **Loss** which is incurred by **Employees** and which is not indemnified by the **Company** or an **Outside Entity**;

        C.  Third, the Insurer shall pay all other **Loss** covered under the **Liability Coverage Part**. Subject to the foregoing Paragraph, the Insurer shall, upon receipt of a written request from the **Policyholder**, delay any payment of Loss due and owing to the **Company** until such time as the **Policyholder** designates, provided the Insurer's liability with respect to any such delayed **Loss** payment shall not be increased, and shall not include any interest, on account of such delay.

**Exhibit A-1**, pdf p. 24 (emphasis in original).

Zurich as Insurer, from the Debtor or the Bank, or from any other person, at any time prior to the filing of this Motion.

18.     Zurich has made it clear that it will not advance the Defense Costs or make any other payments due under the Policy, unless Movant obtains an Order of this Court permitting Zurich to do so, including granting Zurich relief from the automatic stay if appropriate.

19.     Although Movant believes that the allegations against him in the Litigation Matter are baseless, Movant has been exposed to significant and increasing costs of defense, as well as the portion of the aforesaid settlement which Movant will be obligated to pay if and when the settlement becomes final, and the remote potential of a judgment against Movant if the aforesaid settlement does not become final.  Movant, as an Insured Person, seeks entry of an Order permitting the Insurer to reimburse Movant and to fund his defense costs, Movant's portion of the aforesaid settlement, and any judgment in the Litigation Matter, in accordance with the provisions of the Policy, in order to avoid the harm to Movant and potentially the Debtor, resulting from Movant's potential inability to mount and/or to complete a sufficient defense in the Litigation Matter.

## IV.   ENTRY OF AN ORDER PERMITTING THE INSURER TO FUND MOVANT'S DEFENSE COSTS AND LOSSES UNDER THE POLICY IS WARRANTED

20.     As stated above, under the Order of Payments Provision, the Debtor only has a contingent, residual interest in the proceeds of the Policy which is subject to payment of Movant's Loss.  Accordingly, the proceeds of the Policy that cover Movant's Defense Costs and Losses are *not property of the Debtor's bankruptcy estate* rendering them subject to access by Movant.

21.     Nevertheless, in an abundance of caution, Movant seeks an Order by this Court permitting the contractually-required payments under the Policy, including for relief from the automatic stay for "cause" under section 362(d)(1) of the Bankruptcy Code, so that the Insurer

may make payments and/or advances of Defense Costs and other Loss to Movant in accordance

with the terms and conditions of the Policy, and therefore, allow Movant to pursue his separate

and independent rights under the Policy.

### A. __The Proceeds of the Policy are Not Property of the Debtor's Estate__.

22.     While insurance policies are considered property of a debtor's bankruptcy estate it

does not follow that the *proceeds* of those policies are owned by a debtor rendering them subject

to Section 541.  *See First Fidelity Bank v. McAteer*, 985 F.2d 114, 117 (3rd Cir. 1993).  Put another

way, "the estate's legal and equitable interests in property rise no higher than those of the debtor."

*In re Gagnon*, 26 B.R. 926, 928 (Bankr. M.D. Pa. 1983).  The estate in bankruptcy only includes

property to which the debtor would have had a right if the debtor were insolvent.  *In re Louisiana*

*World Exposition, Inc.*, 832 F.2d 1391, 1401 (5th Cir. 1987).

23.     Against this back-drop, it is well-settled that if directors and officers insurance

includes an express priority of payments provision that requires that the policy proceeds be paid

to directors and officers coverage ahead of any entity or corporate coverage, the proceeds of that

policy payable on account of directors and officers are *not* property of the debtor's estate.  See *In*

*re Equinox Oil Co., Inc.*, 300 F.3d 614, 618 (5th Cir. 2003); *In re Louisiana World Exposition, Inc.*,

832 F.2d 1391, 1400 (5th Cir. 1987) ("[T]he liability proceeds payable to the directors and officers

are not part of the bankruptcy estate.");[4] *In re World Health Alternatives, Inc.*, 369 B.R. 805, 811

(Bankr. D. Del. 2007) ("[T]he proceeds of the Debtor's [D&O] insurance policy are not property

---

[4] In *Louisiana World Exposition*, the creditors committee sought an injunction and enforcement of the automatic
stay barring further payments to the directors and officers under the D&O Policy.  *In re Louisiana World Exposition,*
*Inc.*, 832 F.2d at 1394.   The policy at issue included director and officer liability and corporate reimbursement
coverage with an aggregate limit of $20,000,000.  *Id.*  The creditors' committee argued that if it succeeded in its suit
against the directors and officers, it would be entitled to the liability proceeds, which will have been diminished due
to payment of the directors' and officers' legal defense costs.  *Id.*  The court held that the policy was not property of
the estate because it only benefited the directors and officers, not the corporation, either by covering directly the
officers and directors, or indirectly by reimbursing the corporation for its indemnification of the expenses incurred
by the officers and directors.  *Id.*

of the estate."); *In re Allied Digital Technologies Corp.*, 306 B.R. 505 (Bankr. D. Del. 2004); *In re Daisy Sys. Sec. Litig.*, 132 B.R. 752, 755 (N.D. Cal. 1991) ("[T]he proceeds of the three DOL policies in this case are not simply assets of Daisy's bankruptcy estate.").

24.    As explained by the Fifth Circuit Court of Appeals in *Houston v. Edgeworth* (*In re Edgeworth*), 993 F.2d 51 (5th Cir. 1993):

> The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim.  When payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate.   In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.

*Id.* at 55-56.  Applying this analysis to the Policy confirms that the proceeds of the Policy are not the Debtor's property.

25.    In the event of applicability of the Management Liability Coverage Part, the situation is not one in which "the debtor's estate is worth more with them than without them." *Minoco Group of Cos., Ltd. v. First State Underwriters Agency of New Engl. Reins. Corp.* (*In re Minoco Group of Cos., Ltd.*), 799 F.2d 517, 519 (9th Cir. 1986) (citation omitted).   Side A Coverage under the Management Liability Coverage part of the Policy does not insure judgments against or losses of the Debtor, nor would Side B Coverage under the Management Liability Coverage Part of the Policy be implicated given that the Debtor's bankruptcy filing makes it highly unlikely that the Debtor will indemnify Movant from his Defense Costs and Losses.  *See In re Adelphia Communications Corp.*, 298 B.R. 49, 54 (S.D.N.Y. 2003) (holding that while debtors have potential claim under D&O policy to extent that debtors advanced funds to their officers and directors pursuant to an indemnification obligation imposed by debtors' by-laws, the debtors did

not, prior to having made any such advances, have property interest in policy proceeds such that proceeds were included in "property of the estate" and protected by automatic stay).

26.    Because the Movants do not seek to obtain "possession of property of the estate or of property from the estate or to exercise control over property of the estate" as is addressed by 11 U.S.C. §362(a)(3), the automatic stay does not apply, nor serve to prohibit the Insurer from advancing and/or reimbursing Defense Costs and other Loss to or for the benefit of Movant in accordance with and subject to the terms and conditions of the Policy.

**B.  Even if the Proceeds of the Policy are Property of the Debtor's Estate, Sufficient Cause Exists to Grant Relief from the Automatic Stay.**

27.    While Movant has demonstrated that the proceeds of the Policy are *not* property of the estate, to the extent that the Court finds otherwise, there is ample "cause" to lift the automatic stay for the limited purpose described in the Motion pursuant to Section 362(d) of the Bankruptcy Code.

28.    "Section 362(d)(1) authorizes the bankruptcy court broad discretion to grant relief from the automatic stay imposed under § 362(a) for 'cause.'"  *In re MILA, Inc.*, 423 B.R. 537, 542 (9th Cir. 2010).  In cases involving D&O policy proceeds, the bankruptcy court should balance the harm to the debtor if the stay is modified with the harm to the directors and officers if they are prevented from executing their rights to defense costs.  *Id.* at 543-44 (citing *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 514 (Bankr. D. Del. 2004); *In re CyberMedica, Inc.*, 2280 B.R. 12, 18 (Bankr. D. Mass. 2002)).  Relief from stay should be granted "to allow the insurer to advance defense costs payments when the harms weigh more heavily against the directors or officers than the debtor."  *In re MILA, Inc.*, 423 B.R. at 544.

29.    Here, there is ample cause in support of Movant's request.  Undeniably, Movant will be subject to substantial risk of irreparable harm if payment or advancement of all Loss under

the Policy are not allowed.  Without a Court order authorizing the Insurer to advance or reimburse the Defense Costs, Movant has been compelled to pay, and will continue to be compelled to pay, substantial legal fees and expenses defending the allegations made against him in connection with the Litigation Matter despite the fact that the Policy was obtained for the benefit of Debtor's officers and directors such as Movant.  *See, e.g. Laminate Kingdom*, 2008 WL 1766637, at \*4 ("D&O policies are obtained for the protection of individual directors and officers . . . in essence and at its core, a D&O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection.") (citation omitted).

30.     For this reason, even when courts find that insurance proceeds under D&O policies are property of the estate, they *consistently* lift the stay to allow payment of individual co-insureds' defense costs because "[w]ithout funding, the [defendants] will be prevented from conducting a meaningful defense . . . and may suffer substantial and irreparable harm.  The directors and officers bargained for this coverage."  *Allied Digital*, 306 B.R. at 514 (recognizing that the harm to the directors and officers from not lifting the stay was real—the directors and officers had incurred $200,000 in defense costs for which they were entitled to coverage—whereas the harm to the estate was purely hypothetical); *In re Beach First Nat'l Bancshares, Inc.*, 451 B.R. 406, 411 (Bankr. D. S.C. 2011) (finding cause to lift automatic stay to allow corporate chapter 7 debtor's officers and directors to access policy proceeds even though debtor was covered by same policy); *In re Laminate Kingdom, LLC*, 2008 WL 1766637, at \*4 ("[N]umerous courts have granted relief from the automatic stay to permit the advancement of defense costs to a debtor's directors and officers— even though the insurance policies also provided direct coverage to debtor.").  It would be inappropriate in this circumstance to deprive the Movant of his rights as Insured under the Policy.

31.     This is particularly true given that the potential harm to the bankruptcy estate inherent in granting the Movant's relief is negligible, if any, particularly given the high policy limits and ample coverage available.  In fact, any payment of Loss under Insuring Agreement A of the Management Liability Coverage Part of the Policy will remove any indemnification claim Movant would have against the Debtor because the Debtor is entitled to indemnification proceeds under Insuring Agreement B of the Management Liability Coverage Part of the Policy only when and to the extent that the Debtor has indemnified the directors and officers for any Loss.  See **Exhibit A-1**, sec.1.A, at pdf p. 27.  The "balancing test" endorsed in *In re Mila, supra*, tips in favor of Movant.

32.     Based on the foregoing, Movant submits that, to the extent the Policy proceeds are deemed property of the estate, the automatic stay should be lifted to permit the Insurer to fund Defense Costs and Losses for Movant.

33.     Judge Magner lifted the stay under similar circumstances on motion of former director and officer Aston J. Ryan at Doc. 62 (motion for relief from stay) and Doc. 158 (order lifting stay as to primary Zurich D&O policy).

## VI.  <u>NOTICE</u>

34.     Movant will make sure that notice of this Motion is served upon: (i) the office of the United States Trustee; (ii) counsel to the Debtor; (iii) counsel to the Official Committee of Unsecured Creditors; and (iv) the Insurer, and (v) those parties requesting notice pursuant to Federal Rule of Bankruptcy Procedure 2002.  In light of the nature of the relief requested herein, Movant submits that no other or further notice is necessary.

35.     No previous motion for the relief sought herein has been made by Movant to this or any other Court.

36.     Nothing herein shall be a waiver, or deemed consent to personal jurisdiction over Movant by the Court.

**WHEREFORE**, Movant respectfully requests that this Court: (i) enter an Order authorizing and directing the Insurer to advance and to reimburse, as applicable, Defense Costs and any other Loss (including any settlement amounts and/or judgments), subject to the terms and conditions of the Policy, and (ii) grant such other and further relief to Movant as the Court deems just and proper.

Dated: December 23, 2019.

Respectfully Submitted,

**DWYER, CAMBRE & SUFFERN**

/s/ L. Marlene Quarles
_____
STEPHEN I. DWYER (#5130)
J. KENDALL RATHBURN, T.A. (#17763)
KAILEY L. LEBOEUF (#33236)
L. MARLENE QUARLES (#18014)
3000 W. Esplanade Avenue, Suite 200
Metairie, Louisiana  70002
Telephone: (504) 838-9090
Facsimile: (504) 838-9187
Email: sdwyer@dwyercambre.com
Email: krathburn@dwyercambre.com
Email: kleboeuf@dwyercambre.com
Email: mquarles@dwyercambre.com

Counsel for L. Blake Jones