## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **FIRST NBC BANK HOLDING COMPANY,** | ) | |
| | ) | **Case No. 17-11213** |
| | ) | |
| Debtor. | ) | Section "A" |
| _____ | ) | |

### MOTION TO INCREASE THE SOFT CAP

**NOW INTO COURT**, through undersigned counsel, come William D. Aaron, Jr., Herbert Anderson, Jr., Dale Atkins, John C. Calhoun, William Carrouche, Jimmy Fitzmorris, Leander J. Foley, III, John F. French, Leon Giorgio, Jr., Grish Roy Pandit, Shivan Govindan, Lawrence Blake Jones, Louis Lauricella, Mark Merlo, Hermann Moyse, III, James Roddy, Dr. Charles Teamer, Sr., Joseph Toomy, Richard M. Wilkinson, David W. Anderson, R. Brad Calloway, Mary Beth Verdigets, Marsha Crowle, William Burnell, Peter Babin, Stephen Petagna, and Ashton J. Ryan (the "D&Os"); and respectfully move this court to increase the $12 million soft cap, established in the Court's March 26, 2020 Order, to $17 million. In support of this motion, the D&Os show as follows:

1.     Previously, certain former Directors and Officers of First NBC Bank, the subsidiary of First NBC Bank Holding Company (the "Debtor"), filed the *Motion and Incorporated Memorandum for (1) Declaratory Relief that the Proceeds of the Directors' and Officers' Liability Insurance Policies Are Not an "Asset of the Estate" or (2) Alternatively, for Relief from the Automatic Stay to Permit the Payment and Advancement of Defense Costs and Other Loss From the Proceeds of the Directors' and Officers' Liability Insurance Policies*. R. Doc. 178. Those former Directors and Officers filed various motions and joinders seeking a comfort order to satisfy

{N4128999.4}

1

the insurance company that it could pay defense costs for the Directors and Officers.  R. Docs 62, 70, 185, 224 and 244. Although an objection was filed by Lead Plaintiffs, Oakland County Employers' Benefit Association, Plymouth County Retirement System, and Central Laborers Pension Fund (the "Lead Plaintiffs"), ultimately, the issues were resolved and resulted in entry of the *Agreed Order Granting, In Part, Motions for an Order Finding that Directors' and Officers' Liability Insurance Policy Proceeds are Not Property of the Estate or, Alternatively, for Relief from the Automatic Stay* ("First Order"), which provided for a "soft cap" on fees and costs of $5 million.  R. Doc. 325. At the end of 2018, the insurance company advised that the soft cap had been reached and would have to be raised so that defense costs could be paid.  As a result, the Debtor, FDIC, and D&Os agreed to have the soft cap raised from $5 million to $9 million.  The D&Os filed a motion to have the soft cap increased (R. Doc. 506), and the Creditors' Committee withdrew its objection at the hearing.  The Lead Plaintiffs maintained their opposition, which they argued before Judge Dodd on March 11, 2019.  The Court then issued an Order extending the soft cap from $5 million to $9 million.  R. Doc. 531.

2.      Thereafter, on February 24, 2020, counsel for the insurer advised that the $9 million "soft cap" had been reached and needed to be extended by either: (1) agreement among the Debtor, Creditors' Committee, all directors and officers, the FDIC-R, and the Lead Plaintiffs; or (2) a further order of the Court, through a motion and hearing.  On March 11, 2020, the D&Os filed a motion to increase the soft cap to $12 million.  R. Doc. 830.  On March 17, 2020, the Lead Plaintiffs filed their *Conditional Objection to Second Motion to Increase the "Soft Cap."*  R. Doc. 835.  On March 26, 2020, the Court issued the *Order Granting Motion to Increase the Soft Cap Established in the Agreed Order Granting, In Part, Motions for an Order Finding the Directors' and Officers' Liability Insurance Policy Proceeds Were Not Property of the Estate, or Alternatively, For Relief*

*from the Automatic Stay ("R. Doc. 325") from $9,000,000 to $12,000,000* ("Second Order"),

granting an extension of the soft cap to $12 million, subject to terms and conditions. R. Doc. 840.

3.      On November 23, 2020, similar to the event above, counsel for the insurer advised

that the $12 million "soft cap" was approaching its limit and could only be extended through the

same two methods. As a result, the D&Os file this motion.

4.      An increase in the "soft cap" is necessary to pay ongoing defense costs. The denial

of the increase of the "soft cap" will irreparably injure the relevant D&Os, particularly those who

now are defending themselves from criminal charges stemming from the First NBC Bank failure.

Moreover, per the policy, payment of defense costs for the directors and insureds takes priority

over retaining the funds for payouts following the end of all litigation.

5.      D&Os previously stated that there was an ongoing investigation by the Department

of Justice, enforcement proceedings being conducted by the FDIC-C related to the enforcement of

the FDIC's supervisory authority, and proceedings being prosecuted by the FDIC-R regarding its

receivership of the former First NBC Bank's assets. The FDIC-C and FDIC-R proceedings

continue and the Department of Justice's investigation has led to multiple indictments against some

of the insureds. Accordingly, an extension of the "soft cap" at this point carries additional

importance because of the nature of the criminal charges. Considering that the D&Os are

requesting an extension of the "soft cap" within the policy limits, denial of that extension,

especially in light of the criminal indictments, will injure irreparably those facing criminal charges.

*See XL Specialty Ins. Co. v. Level Global Investors, L.P.*, 874 F. Supp. 2d 263, 272 (S.D.N.Y.

2012) ("The failure to receive defense costs under a professional liability policy at the time they

are incurred 'constitutes an immediate and direct injury' sufficient to satisfy the irreparable harm

requirement."); *see also United States v. Stein*, 435 F. Supp. 2d 330, 371 (S.D.N.Y. 2006) (stating

that the "proper" defense of a case involving allegations of financial fraud with "millions of pages of documents" and "scores of witnesses" requires "substantial financial resources"), *vacated to extent it found jurisdiction over the complaint against KPMG, Stein v. KPMG, LLP*, 486 F. 3d 753, 764 (2d. Cir. 2006).[1]

6.      Specifically, on July 10, 2020, a grand jury indicted Ashton J. Ryan, William J. Burnell, and R. Brad Calloway.  As in *XL Specialty Ins. Co.*, Messrs. Ryan, Burnell, and Calloway, as insureds under the policy, would sustain irreparable harm if advancement of their defense costs was terminated after indictment, which is a "critical juncture for the defense" of a criminal case." *See* 874 F. Supp. 2d at 273.  Furthermore, as in *Stein*, these indictments mark the result of a multi-year investigation after reviewing "millions of pages of documents" and "interviewing scores of witnesses."  *See Stein, 435* F. Supp. 2d at 371.  Thus, "properly defending" this case will require "substantial financial resources."  *Id.; see also XL Specialty Ins. Co.*, 874 F. Supp. 2d at 275 (in a complex financial criminal case, "a diligent defense counsel can be expected to investigate numerous potential defenses.").  To the extent that the indicted individuals' potential prejudice is relevant, "demonstrating prejudice after the fact would be all but impossible" in this circumstance because "the defendant's counsel, after conviction, would have to do the work that the defendant could not afford to have done in the first place."  *Id.*  Moreover, defendants' potential prejudice in this case would be heightened by the fact that denial of defense funds here would force them to seek new counsel in the middle of their defense. *XL Specialty Ins. Co.*, 874 F. Supp. 2d at 274 ("The potential injury to a criminal defendant or an investigative subject of losing counsel in

---

[1] In *Stein*, the court determined there was a Sixth Amendment violation when the defendants were barred from using money that stemmed from a company policy in their criminal defense. *Id.* at 367.

midstream cannot be minimized."). Accordingly, the Court should extend the soft cap to $17 million.

7.     Moreover, even if the former Directors and Officers did not face irreparable injury from the denial of the increase in the "soft cap," they would still be entitled to the increase as, per the policy, the payment of defense costs takes priority over retaining funds for future settlement purposes. *See In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 193 (Bankr. S.D.N.Y. 2012) (citing cases) (recognizing that "courts have given effect to priority of payment provisions in authorizing access to policies to advance defense costs to individual insureds.").[2] Thus, based on the Priority of Payments Clause of the Zurich primary D&O policy, Section XIV.A., and case law, the D&Os are entitled to an increase in the soft cap.[3]

**WHEREFORE**, D&Os pray that after due notice and such hearing as this Court deems appropriate, that this Court enter an Order extending the soft cap to $17 million and maintain all of the reporting requirements, reservations of rights and privileges contained in the Second Order.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

---

[2] In fact, the FDIC-R has argued that the policy proceeds are not estate property. *See* R. Doc. 269, ¶ 11.

[3] Because the Zurich policy has a $15 million limit, this request will affect the first layer of excess – Illinois National Ins. Co. Policy #01-415-73-85; however that policy's Insuring Agreement follows form of the Zurich primary D&O policy and ". . . shall provide coverage in accordance with the same terms and conditions as the followed policy [Zurich American Ins. Co. Policy #9311203-29] . . ." and is, thus, subject to Section XIV.A. Priority of Payments Clause.

Respectfully submitted,

 */s/ Jan M. Hayden*
Jan M. Hayden (#06672)
Nancy Scott Degan (#01819)
Brian M. Ballay (#29077)
**BAKER DONELSON BEARMAN
  CALDWELL & BERKOWITZ**
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000
jhayden@bakerdonelson.com
ndegan@bakerdonelson.com
bballay@bakerdonelson.com
*Attorneys for William D. Aaron, Jr., Herbert
Anderson, Jr., Dale Atkins, John C. Calhoun,
William Carrouche, Leander J. Foley, III, John F.
French, Leon Giorgio, Jr., Grish Roy Pandit,
Shivan Govidan, Lawrence Blake Jones, Louis
Lauricella, Mark Merlo, Hermann Moyse, III,
James C. Roddy, Dr. Charles Teamer, Sr., Joseph
Toomy, and Richard M. Wilkinson*


 */s/   Elizabeth J. Futrell*
R. Patrick Vance (#13008)
Robert B. Bieck, Jr. (#3066)
Elizabeth J. Futrell (#05863)
Michael W. Magner (#01206)
Alexander N. Breckinridge V (#36155)
**JONES WALKER, LLP**
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana  70170-5100
Telephone:  (504) 582-8000
Facsimile:  (504) 589-8260
pvance@joneswalker.com
rbieck@joneswalker.com
efutrell@joneswalker.com
mmagner@joneswalker.com
abreckinridge@joneswalker.com
*Attorneys for David W. Anderson and
R. Brad Calloway*

{N4128999.4}

 */s/ Edward Castaing, Jr.*
Edward Castaing, Jr. (Bar #4022)
***CRULL CASTAING & LILLY***
601 Poydras Street, Suite 2323
New Orleans, Louisiana 70130
Telephone: (504) 581-7700
ecastaing@cclhlaw.com
*Attorney for Ashton J. Ryan*


*/s/ Brian J. Capitelli*
Brian J. Capitelli (Bar #27398)
***CAPITELLI & WICKER***
1100 Poydras Street, Suite 2950
New Orleans, Louisiana 70163
Telephone: (504) 582-2425
brian@capitelliandwicker.com
*Attorney for William J. Burnell*


*/s/ Richard T. Simmons, Jr.*
Richard T. Simmons, Jr. (Bar #12089)
***HAILEY, MCNAMARA, L.L.P.***
One Galleria Boulevard, Suite 1400
P.O. Box 8288
Metairie, Louisiana 70001
Telephone: (504) 836-6500
rsimmons@hmhlp.com
*Attorney for Peter Babin and Stephen Petagna*